William N. Lobel, State Bar No. 93202
wlobel@lwgfllp.com
Alan J. Friedman, State Bar No. 132580
afriedman@lwgfllp.com
Beth E. Gaschen, State Bar No. 245894
bgaschen@lwgfllp.com
**LOBEL WEILAND GOLDEN FRIEDMAN LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Telephone 714-966-1000
Facsimile 714-966-1002

Attorneys for Debtor and Debtor-in-Possession and Specially Appearing for Defendant, John Jean Bral

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

IN RE:

JOHN JEAN BRAL,

Debtor and Debtor-in-Possession.

BARRY BEITLER,

Plaintiff,

v.

JOHN JEAN BRAL,

Defendant

**Case No. 8:17-bk-10706-SC**

**Chapter 11 Proceeding**

**Adv. 8:17-ap-01092-SC**

**DECLARATION OF JOHN J. BRAL IN SUPPORT OF MOTIONS TO BIFURCATE ISSUES OF LIABILITY AND DISCHARGEABILITY IN ADVERSARY, OR TO STAY ADVERSARY UNTIL UNDERLYING LIABILITY ON CLAIMS IS DETERMINED IN ANOTHER PROCEEDING**

**DATE:** [TO BE SET]
**TIME:** [TO BE SET]
**PLACE:** 411 West Fourth Street
Santa Ana, CA 92701
Courtroom 5C

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

**DECLARATION OF JOHN J. BRAL**

I, John J. Bral, hereby declare and state as follows:

1. I am over the age of eighteen years.

2. The facts stated herein are within my personal knowledge and if called upon to testify to the same I could and would testify competently thereto.

3. Prior to February 24, 2017 (the "Petition Date"), Barry Beitler ("Beitler") and I held membership interests in a series of single purpose entities (collectively the "SPEs"). Each entity owned an individual property.

4. The SPEs in which we held interests included Mission Medical Investors, LLC ("Mission"), Westcliff Investors, LLC ("Westcliff"), Javaher Investors, LLC ("Javaher"), Ocean View Medical Investors, LLC ("Ocean View"), Harbor Medical Investors, LLC ("Harbor"), and Eye Street Medical Investors, LLC ("Eye")[1].

5. Over time, Beitler used his substantially greater financial resources to try to gain economic advantages over me and other members in the SPEs, and to bring about my financial ruin. For example when the SPEs' loans fell into default, Beitler would acquire these loans (through newly formed LLC's 100% owned and controlled by Beitler) and then foreclose upon the properties owned by the SPEs and to the detriment of his former co-members. Worse, the entities controlled by Beitler then sought recourse against me on the guarantees that I executed securing these loans, while ignoring the co-guarantees that Beitler and his related entities executed.

---

[1] The interests in Javaher and Eye are held via Westcliff.

6. Beitler's actions, and the blizzard of litigation that Beitler initiated against me prior to the Petition Date, ultimately forced me to seek relief under Chapter 11 of the bankruptcy code.

7. After the Petition Date, Beitler caused the following three adversary proceedings to be filed against me: Adversary Case No. 8:17-ap-01092-SC ("Adversary 92), Adversary Case No. 8:17-ap-01094-SC ("Adversary 94) and Adversary Case No. 8:17-ap-01095-SC ("Adversary 95") (collectively the "Adversaries"). The facts relating to each of the Adversaries are described below.

**Adversary No. 92**

8. On April 21, 2014, Beitler and Beitler & Associates, Inc. ("BAI"), a Beitler controlled entity (together the "Beitler Parties"), filed a complaint in California Superior Court for the County of Orange, Case No. BC543510 (the "State Court Action No. 1"). The named defendants in this action were Venture RE Group ("Venture") (owned 50% by me and 50% by Beitler), Bral Realty Advisors, Inc. ("BRAI") (owned 100% by me), and myself (collectively the "Defendants").

9. On or about June 6, 2017, Beitler and/or BAI caused to be filed Proofs of Claim No. 11 and No. 9 in this chapter 11 case. True and correct copies of these proofs of claims are attached hereto as Exhibit "A". A copy of the complaint filed in State Court Action No. 1 is attached to each of said proof of claim.

10. In State Court Action No. 1, the Beitler Parties alleged that the Defendants: a) failed to allocate to Beitler his proper percentage interest in the SPEs as provided for in the SPEs' operating agreements; b) made distributions from the SPEs that denied Beitler his allocable share; and c) paid commissions and management fees to me from the SPEs' funds without authorization. I and the other Defendants dispute these allegations.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

11. The claims alleged in State Court Action No. 1 are inherently fact intensive, they encompass a period of many years, they involve the rights of four of five different entities, each of which has a separate operating agreement, separate records and different investors and the resolution of said claims will be governed exclusively by the application of state law. In order to resolve whether or not the Beitler Parties have any claims, the presiding court will have to resolve a host of difficult legal issues and weigh the merits of competing forensic accounting reports and testimony.

12. After I filed bankruptcy, Beitler replicated in large part the claims alleged in State Court Action No. 1 in Adversary 92. Beitler admits this in Proof of Claim No. 11. See, page 52 attached hereto.

13. In the First Claim for Relief alleged in Adversary 92, Beitler contends that I made a series of promises in the SPE operating agreements, and in other agreements, that I never intended to perform, and that Beitler was damaged by this course of conduct.

14. In the Second-Fourth Claims for Relief in Adversary 92, Beitler contends that I improperly distributed funds to myself and my entities from the SPEs that should have been distributed to the Beitler Parties. Beitler also asserts that I committed larceny and/or embezzlement.

15. The claims alleged in Adversary 92 are very similar to claims alleged in Proof of Claim No. 11[2], and are based on a common set of facts and allegations.

16. I dispute all of the claims alleged by Beitler in Proof of Claim No. 11 and Adversary 92, and contend that no liability is owed to Beitler.

---

[2] The Beitler Parties also filed Proof of Claim Nos. 10, 12, 13, and 15. However, these claims are not encompassed within the Adversaries.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

**Adversary 94**

17. The plaintiff in Adversary 94 is Beitler & Associates, Inc. ("BAI"), but the claims alleged therein are based upon the same allegations that appear in State Court Action No. 1 and in Adversary 92. The only material difference is the damage prayer[3]. Where Beitler is alleging that it suffered "at least $1,000,000[4]" in damages in connection with Adversary 92, BAI is alleging in Adversary 94 that it suffered "at least $ 300,000" in damages.

18. The claims alleged in Adversary 94 are very similar to claims alleged in Proof of Claim No. 9, and are based on a common set of facts and allegations.

19. I dispute the claims alleged in Proof of Claim No. 9 and Adversary 94 and contend that no liability is owed to BAI.

**Adversary 95**

20. Adversary 95 was filed by Steward Financial, LLC ("Steward"), an entity 100% owned and controlled by Beitler.

21. The SPE at issue in Adversary 95, and in Claim No. 19 filed by Steward, is Ocean View. A true and correct copy of Claim No. 19 is attached hereto as Exhibit "B".

22. Ocean View's primary asset was the real property commonly known as 441 Old Newport Road, Newport Beach, California (the "OV Property").

23. The OV Property was encumbered by a deed of trust held by First Regional Bank ("FRB") that secured a loan in the approximate amount of $4.5 million (the "Loan").

---

[3] Adversary 94 also omits the claims based on embezzlement and larceny.

[4] Adversary 92 also asserts damages in the amounts of $1,200,000 and $1,500,000.

24. When the Loan fell into default, Beitler acquired it, through Steward, and initiated a foreclosure against the OV Property, instead of working to protect the rights of Ocean View's members.

25. In an effort to protect the rights of Ocean View's members, I filed a bankruptcy case for this entity that was dismissed on the grounds that it was not authorized.

26. On February 5, 2016, Steward filed a complaint in California Superior Court for the County of Orange commencing Case No 30-2016-00834111-CU-BT-CJC ("State Court Action No. 2"). I and several other individuals were named as defendants.

27. In State Court Action No. 2, Steward contends that it was damaged by Ocean View's voluntary bankruptcy filing, and by a later involuntary bankruptcy filing. According to Steward, this filing voided a Steward-initiated foreclosure sale pursuant to which Steward alleges it would have acquired the property owned by Ocean View (the "OV Property") for $3.0 million.

28. After Ocean View's bankruptcy case was dismissed, Steward contends that it was forced to conduct a second foreclosure sale, and it was forced to pay $4.1 million for the OV Property at this later sale, instead of $3.0 million.

29. In State Court Action No. 2, Steward alleges, on various legal theories, that it is entitled a damage judgment against me in the amount of the $1.1 million differential between its first credit bid and its later successful credit bid. I dispute the merits of Steward's claim.

30. After I filed bankruptcy, Steward replicated the claims alleged in State Court Action No. 2 in Adversary 95. Steward acknowledged this in Proof of Claim No. 19. See page 91, attached hereto.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

31. The claims alleged in Adversary 95 are the same claims alleged in Proof of Claim No. 19. Steward admits this in Proof of Claim No. 19. See, page 91 attached hereto.

**The Importance of Objecting To The Beitler Parties' and Steward Claims**

32. I am familiar with the claims alleged in the Adversaries. Such claims lack merit and should be disallowed on various grounds. I also believe that the bankruptcy estate hold claims against Beitler.

33. In addition to the claims being asserted by the Beitler Parties and Steward, there are other substantial claims against my estate (the "Additional Claims"). The Additional Claims will share pro rata in all distributions made by my estate with any claims ultimately allowed that are held by the Beitler Parties and Steward. The merits of the disputed claims of the Beitler Parties and Steward have not been resolved. I believe that the claims being asserted by the Beitler Parties and Steward lack merit and must be opposed so that the other creditors of my estate are not forced to share distributions with holders of non-meritorious claims.

34. I have been advised that assets of the estate can be utilized to defend the claims being asserted by the Beitler Parties and Steward, either in connection with the pending state court litigation, or in connection with the claims adjudication process in this Court. I have also been advised that assets of the estate cannot be utilized to defend the dischargeability issues raised in the Adversaries, only the liability issues (the latter issues are the same presented for resolution in the state court litigation, and in the proofs of claims discussed above).

35. I presently lack the means to defend any aspect of the Adversaries without recourse to estate funds. As a result, the Adversaries could likely result in default

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

judgments being entered against me unless the resolution of the liability issues is separated from the resolution of the dischargeability issues. I have also been advised that the default process can proceed much quicker than either the claims adjudication process or litigation in the state court. If I am not allowed to use estate funds to object to and/or otherwise resolve the liability aspect of the claims (as opposed to the dischargeability issues) in the Adversaries, or if the Adversaries are not stayed while the merits of the Beitler Parties' and Steward's claims are resolved, I will lack the means of opposing said claims, which means they will be allowed by default. If this occurs, the rights of the other creditors of the estate will be unjustly damaged, since they will receive smaller distributions.

I declare that the foregoing is true and correct under the penalty of perjury.

Executed this 18th day of September, in Orange County, California.

John J. Bral

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

# EXHIBIT “A”

# POC NO. 9

**Fill in this information to identify the case:**

Debtor 1 JOHN JEAN BRAL

Debtor 2 (Spouse, if filing) ____________

United States Bankruptcy Court for the: Central District of California

Case number 8:17-BK-10706-SC

Official Form 410

# Proof of Claim

4/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents**; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

Beitler & Associated, Inc. dba Beitler Commercial Realty Services
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor ____________

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? ____________

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent? (if different)** |
|---|---|
| Name: Gary E. Klausner, Esq. | Name: Beitler & Associates, Inc. c/o Barry Beitler |
| Number Street: 10250 Constellation Blvd., Suite 1700 | Number Street: 825 Barrington Avenue |
| City: Los Angeles State: CA ZIP Code: 90067 | City: Los Angeles State: CA ZIP Code: 90048 |
| Contact phone (310) 229-1234 | Contact phone ____________ |
| Contact email GEK@LNBYB.COM | Contact email bbeitler@beitler.com |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) ______ Filed on ______ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? ____________

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$ To be determined. **Does this amount include interest or other charges?**

☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Claims in Case No. BC 543410 in Los Angeles County Superior Court

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: ____________

**Basis for perfection:** ____________

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $__________

**Amount of the claim that is secured:** $__________

**Amount of the claim that is unsecured:** $__________ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $__________

**Annual Interest Rate** (when case was filed)______%

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $__________

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: ____________

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check all that apply:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $ |

* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 06/15/2017
MM / DD / YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

Name: Barry Beitler (First name / Middle name / Last name)

Title: Authorized Agent

Company: Beitler & Associates, Inc. dba Beitler Commercial Realty Services
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 825 Barrington Avenue (Number Street)
Los Angeles (City) CA (State) 90049 (ZIP Code)

Contact phone ____________ Email bbeitler@beitler.com

**ATTACHMENT TO PROOF OF CLAIM OF BEITLER & ASSOCIATES, INC. dba
BEITLER COMMERCIAL REALTY SERVICES BASED ON CLAIMS ALLEGED IN
LOS ANGELES COUNTY SUPERIOR COURT CASE NO. BC 543410**

On April 21, 2014, Barry Beitler ("Beitler") and Beitler & Associates, Inc. dba Beitler Commercial Realty Services ("BCRS" or "Claimant") filed an action against, among others, John Bral ("Bral") in Los Angeles County Superior Court, Case No. BC 543410. A copy of the Complaint that Beitler filed in that action is attached hereto as Exhibit "A".

As set forth in the Complaint, BCRS alleged various claims for damages against Bral for unjust enrichment, intentional misrepresentation, negligent misrepresentation, breach of oral contract and breach of implied contract. These claims are based on, among other things, allegations that:

- Beitler and Bral formed several specific purpose entities as limited liability companies (collectively, "SPEs") to hold, operate and manage real property investments in which they each held a membership interest.
- The SPEs' operating agreements controlled whether, to whom and under what circumstances the SPEs could pay commissions and property management fees with respect to the real properties.
- Beitler and Bral agreed to form Venture RE Group ("Venture") to act as a development company for the SPEs, with Beitler and Bral holding equal ownership interests in Venture.
- Beitler and Bral also agreed that (i) Venture would provide property management services to the SPEs, (ii) Beitler and Bral would equally divide all of Venture's revenues, (iii) Beitler would place his real estate broker's license with Venture, (iv) Venture would operate as an affiliate of BCRS, which was the authorized broker named in the SPE operating agreements, and (v) while BCRS would remain the broker for the SPEs, commissions from lease and sale transactions brokered by Venture would be split equally between BCRS and Venture.
- Notwithstanding these agreements, Bral, among other things, (a) formed and operated Venture without providing for Beitler to receive his interest therein, (b) failed to share Venture's revenues with Beitler, (c) without Beitler's or the SPEs' authorization, diverted Venture's business to an entity Bral created, Bral Realty Advisors, Inc. ("BRAI"), and (d) retained, directly or through BRAI or Venture, management fees and commissions payable to Beitler and/or BCRS.
- Bral also breached his agreement to reimburse BCRS for advances that BCRS made to or on behalf of Bral, Venture or agents acting under Venture for their expenses, including without limitation payments for errors and omissions insurance.

The case remains pending in Los Angeles County Superior Court but has been stayed as a result of this bankruptcy case. BCRS' pending adversary action herein, Adversary No. 8:17-ap-01094, is based in part on allegations raised in the foregoing state court action.

The damages and other relief recoverable by BCRS in the state court case remain subject to proof, as Bral, Venture and BRAI control, among other things, the information concerning management fees and commissions they received that were payable to Beitler and BCRS. On February 23, 2017, the day before Bral filed this bankruptcy case, the discovery referee in the state court action issued a Report and Recommendation, a copy of which is attached hereto as Exhibit "B", recommending that the Superior Court order Bral to produce (a) QuickBooks data in native format and (b) tax returns for Venture and BRAI within 10 days, with the Court to consider imposing terminating sanctions if Bral does not timely comply. Due to the bankruptcy stay, the Superior Court has not yet entered an order on the referee's recommendation.

**Reservation of Rights**

Claimant reserves the right to (i) amend, update and/or supplement this Proof of Claim at any time and in any respect, (ii) file additional proofs of claim for additional claims which may be based on the same or additional documents or other liability or indebtedness of the Debtor to Claimant (iii) file a request for payment of administrative expenses in accordance with 11 U.S.C. §§ 503 and 507.

In addition to the foregoing, Claimant reserves all rights with respect to (a) any indebtedness owed to Claimant by any non-debtor affiliate or other entity related to the Debtor, and (b) any other amounts that may be owing to Claimant in respect of interest, fees, indemnities, costs and expenses to the extent permitted by applicable law.

Nothing contained in this Proof of Claim shall be construed as limiting Claimants rights, remedies and interests.

The filing of this proof of claim is not: (i) a waiver or release of Claimant's rights against any person, entity or property; (ii) a waiver of the right to move to withdraw the reference, or otherwise to challenge the jurisdiction of this Court, with respect to the subject matter of this Proof of Claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving this Proof of Claim, or to assert that the reference has already been withdrawn with respect to the subject matter of this claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving this Proof of Claim; (iii) an election of remedy; or (iv) a waiver of any past, present or future defaults or events of default. Claimant specifically preserves all of Claimant's procedural and substantive defenses and rights with respect to any claim that may be asserted against Claimant by the Debtor or any of its debtor or non-debtor affiliates, or by any trustee for this estate.

# EXHIBIT A

Case 8:17-bk-10706-SC Claim 9 Filed 06/16/17 Desc Main Document Page 7 of 38

LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations
TOM LALLAS (SBN 66512)
815 Moraga Drive
Los Angeles, California 90049-1633
Telephone: (310) 471-3000
Facsimile: (310) 471-7990

Attorneys for Plaintiffs
BARRY A. BEITLER and
BEITLER & ASSOCIATES, INC.,
doing business as
Beitler Commercial Realty Services

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

APR 21 2014

Sherri R. Carter, Executive Officer/Clerk
By Shaunya Bolden, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

FILED BY FAX

BARRY A. BEITLER, an individual, and BEITLER & ASSOCIATES, INC., a California corporation doing business as Beitler Commercial Realty Services,

Plaintiffs,

vs.

JOHN BRAL, an individual; VENTURE RE GROUP, a California corporation; BRAL REALTY ADVISORS, INC., a California corporation; and DOES 1 through 50, inclusive,

Defendants.

Case No. BC543410

**COMPLAINT FOR:**

1) **BREACH OF FIDUCIARY DUTY**
2) **ACCOUNTING**
3) **UNJUST ENRICHMENT**
4) **INTENTIONAL MISREPRESENTATION**
5) **NEGLIGENT MISREPRESENTATION**
6) **BREACH OF ORAL CONTRACT**
7) **BREACH OF IMPLIED CONTRACT**

Case 8:17-bk-10706-SC Claim 9 Filed 06/16/17 Desc Main Document Page 8 of 38

Plaintiffs Barry A. Beitler, an individual ("Beitler") and Beitler & Associates, Inc., a California corporation doing business as Beitler Commercial Realty Services ("BCRS") [collectively, "Plaintiffs"], allege as follows:

**I. PARTIES AND JURISDICTION.**

1. Beitler is now, and all times material hereto has been, a resident of, and doing business in, the County of Los Angeles, State of California.

2. BCRS is now, and all times material hereto has been, a corporation in good standing formed under the laws of the State of California. BCRS's principal business office is now, and all times material hereto has been, located in the County of Los Angeles, State of California.

3. Defendant John Bral ("Bral") is now, and at all times material hereto has been, an individual doing business in the County of Los Angeles, State of California.

4. Defendant Venture RE Group ("VREG") is now, and all times material hereto has been, a corporation in good standing formed under the laws of the State of California. Plaintiffs are informed and believe, and based on such information and belief allege, that the Articles of Incorporation for VREG were filed with the Secretary of State of California on or about May 10, 2006. VREG's principal business office is now, and all times material hereto has been, located in the County of Orange, State of California.

5. Defendant Bral Realty Advisors, Inc. ("BRAI") is now, and all times material hereto has been, a corporation in good standing formed under the laws of the State of California. Plaintiffs are informed and believe, and based on such information and belief allege, that the Articles of Incorporation for BRAI were filed with the Secretary of State of California on or about October 8, 2013. BRAI's principal business office is now, and all times material hereto has been, located in the County of Orange, State of California.

6. Plaintiffs do not know the true names or capacities of the persons or entities sued herein as Does 1 through 50, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe, and upon such information and belief allege, that each of the Doe Defendants was in some manner legally responsible for the damages alleged

below. Plaintiffs will amend this Complaint to set forth the true names of capacities of these Defendants when they have been ascertained.

7. Bral, VREG, BRAI and Does 1 – 50, inclusive, shall be collectively referred to as "Defendants".

8. Plaintiffs are informed and believes, and based on such information and belief allege, that at all times herein mentioned, each Defendant was the agent, servant, or employee of the other Defendants and in acting or omitting to act as alleged herein did so within the course and scope of that agency or employment. Each Defendant is sued individually and as an agent and representative of each of the Defendants.

9. Plaintiffs are informed and believes, and based on such information and belief allege, that all of the agreements at issue in this Action, whether written or oral, were made and agreed by the respective parties thereto in the County of Los Angeles.

**II. FACTS**

10. Beitler and Bral formed several specific purpose entities as limited liability companies (collectively, "SPEs") to hold, operate and manage real property investments in which they each held a membership interest.

11. The SPEs of Beitler and Bral included, among others, Mission Medical Investors, LLC ("Mission"), Javaher Investors, LLC ("Javaher"), Ocean View Medical Investors, LLC ("Ocean"), Harbor Medical Investors, LLC ("Harbor"), Eyestreet Medical Investors, LLC ("Eye"), and Westcliff Investors, LLC ("Westcliff").

12. Westcliff was formed in February 2003.

13. Mission was formed in December 2003.

14. Javaher was formed in May 2005.

15. Ocean was formed in June 2005.

16. Harbor was formed in May 2006.

17. Eye was formed in October 2006.

18. Plaintiffs are informed and believe, and based on such information and belief allege, that Beitler and Bral have executed the operating agreements of each of the SPEs.

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

Plaintiffs are further informed and believe and thereon allege that Bral has in his possession and control all of the executed operating agreements of Mission, Javaher, Ocean, Harbor and Eye.

19. Beitler and Bral are managers of Ocean, Harbor and Mission.

20. Bral and Dr. Hootan Daneshmand are managers of Javaher and Eye.

21. Plaintiffs are informed and believe, and based on such information and belief thereon allege, that in each of the SPEs in which both Beitler and Bral are a manager or a managing member, neither Beitler nor Bral is permitted to act unilaterally or independently of each other as Manager or Managing Member, as the case may be, and that the operating agreements of those SPEs require the mutual consent of each manager or managing member.

22. Section 5.9 C. of the Operating Agreements of Ocean, Mission, Javaher and Harbor provides for payment of property management fees:

"There shall be a four percent (4%) of gross income per month fee for property management to a management company chosen by Manager."

23. Section 5.9 D. of the Operating Agreements of Ocean, Mission, Javaher, and Harbor provides for payment to BCRS of sale and leasing broker commissions:

"There shall be sales commission of four percent (4%) paid to Beitler Commercial Realty Services as a listing Broker upon sale .... and leasing commissions shall be paid to Beitler Commercial Realty Services...."

24. Section 5.8 of the Eye Operating Agreement, which was executed after VREG was formed, provides for VREG to act as property manager and sales and leasing broker:

" ... The Company specifically acknowledges that JOHN BRAL is a Manager and is affiliated with Venture RE Group. The Company specifically acknowledges and hires Venture RE Group as leasing and/or listing Broker, when necessary to lease or sell the property, and will pay to Venture RE Group the "Sales Commission" and "Lease Commissions" ... Further, the Company hires Venture RE Group to act as property manager for the Company and its assets and will pay to Venture RE Group the "Property Management Fee"... The Company specifically

acknowledges that Manager or Manager's affiliate shall manage and oversee the construction, development and construction of the tenant improvements ... upon the Property, and the Company shall pay to Manager or Manager's affiliate the "Development and Construction Management Fee"..."

25. Section 5.9 C of the Eye Operating Agreement provides for payment of property management fees to VREG:

"There shall be a four percent (4%) of gross income per month fee ... for property management paid to Venture RE Group...."

26. Section 5.9 D of the Eye Operating Agreement provides for payment of sale and leasing broker commissions to VREG:

"There shall be sales commission of four percent (4%) paid to Venture RE Group ... as a listing Broker upon sale .... and leasing commissions shall be paid to Venture RE Group ...."

27. Section 3.3 in the Westcliff Operating Agreement provides for BCRS to act as broker and for sale and leasing commissions to be split equally between Beitler and Bral:

"At all times, whenever a vacancy in the property becomes available, Beitler Commercial Realty Services shall be hired for the leasing at market commission rates. Bral and Beitler agreed to split equally (50%/50%) any and all commissions for leasing paid if any. The same shall be true of any commission on the future sale of the Property...."

28. Plaintiffs are informed and believe, and based on such information and belief allege, that the Westcliff Operating Agreement does not provide for the appointment of a property manager.

29. Notwithstanding that an operating agreement of any of the SPEs may have granted to the manager or managing member the authority to select a property manager (Ocean, Mission, Javaher and Harbor), or otherwise provided for the appointment of a property manager

Case 8:17-bk-10706-SC Claim 9 Filed 06/16/17 Desc Main Document Page 12 of 38

(Eye), it was agreed to and understood between Beitler and Bral that in each of the SPEs property management fees would be split between them and that the property management would be conducted through an entity owned and controlled by both of them (the "SPE Management Agreement"). Plaintiffs are informed and believe, and based on such information and belief allege, that the SPE Management Agreement amended each respective SPE operating agreement.

30. In or around May 2006, Beitler and Bral formed VREG. Its business purpose was to serve as a development company for their SPEs and any subsequently acquired real property to be developed.

31. At the time that they formed VREG, Beitler and Bral orally agreed to the following material terms with regard to VREG (collectively, "Initial VREG Agreement"):

A. Each would own an equal stock interest in VREG;

B. There would be no other shareholders in VREG;

C. Beitler and Bral would be the only officers and directors of VREG; and

D. VREG would only be used for its intended business purpose.

32. Subsequently, Beitler and Bral orally agreed to use VREG as a property management company for their SPEs. Beitler and Bral orally agreed to add to their Initial VREG Agreement the following additional terms (collectively, "VREG Property Management Agreement"):

A. Bral shall handle the day to day administrative management related to each of the SPEs, but not supersede, conflict, or be delegated as property manager, any of the authority of a Manager of any of the SPEs;

B. Other than property management services and property development services, VREG shall not provide any other service; and

C. Beitler and Bral are to divide equally between them all revenues earned by VREG.

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

33. The VREG Property Management Agreement was an extension of the Initial VREG Agreement, incorporating the terms of the Initial VREG Agreement between Beitler and Bral.

34. Plaintiffs are informed and believe, and based on such information and belief allege, that Bral was the incorporator, or caused the incorporation, of VREG, and at all times material herein, Bral authored and controlled the corporate books, records, minutes of VREG, and filed with the State of California any compliance documents related to VREG.

35. Plaintiffs are informed and believe, and based on such information and belief allege, that at no time did Bral issue and deliver to Beitler shares of stock in VREG in Beitler's name.

36. Plaintiffs are informed and believe, and based on such information and belief allege, that Bral formed a de jure corporation by the filing of Articles of Incorporation for VREG, but failed to document Beitler's rights under VREG as an shareholder, officer and director of VREG as agreed to in the Initial VREG Agreement, including, but not limited to, the execution of bylaws, appointment of directors and officers, first meeting of shareholders and directors, and other corporate formalities establishing Beitler's rights in VRGE. At all times material hereto Bral failed to disclose to Beitler any of the aforementioned acts or omissions.

37. Plaintiffs are informed and believe, and based on such information and belief allege, that Bral, without disclosure to and unbeknownst to Beitler, and in violation of the Initial VREG Agreement, prepared corporate documentation that reflected Bral as the sole director, officer and shareholder of VREG.

38. Plaintiffs are informed and believe, and based on such information and belief allege, that Bral did not disclose or provide to Beitler documentation regarding the formation of VREG or documentation reflecting its annual compliance, if any, with corporate obligations, including meetings of its directors and shareholders.

39. Sometime after the formation of VREG and after Bral and Beitler entered into the VREG Property Management Agreement, Bral asked Beitler to place Beitler's broker's license with VREG, so that VREG could operate as a corporate real estate brokerage, including handling

the leasing and sales for the SPEs. Beitler agreed to place his real estate broker's license with VREG, subject to the following conditions to which Bral orally agreed ("Brokerage Agreement"):

A. Observance of the laws of the State of California, including any administrative regulations or requirements of the California Bureau of Real Estate ("CBRE"), regarding such real estate brokerage matters;

B. VREG is to be operated and managed as an affiliate of BCRS and regulated by BCRS;

C. All commissions are to be split equally between broker and agent, with the broker commission to be paid to BCRS for use by VREG of Beitler's real estate broker's license;

D. Nothing shall modify or affect the SPEs' respective Operating Agreements with regard to their provisions appointing BCRS as listing broker of the SPEs and the commission percentage payable to BCRS as provided therein;

E. All leasing and sales transactions are to be managed and administrated by BCRS as the listing broker, consistent with the SPEs' respective Operating Agreements;

F. Any signs or marketing material listing any of the SPEs are to name BCRS as the listing broker; and

G. All payments and expenses advanced by BCRS to VREG, Bral or any of the agents acting under VREG ("Expense Advances"), including, but not limited to, for errors and omissions insurance, are to be reimbursed to BCRS.

Case 8:17-bk-10706-SC Claim 9 Filed 06/16/17 Desc Main Document Page 15 of 38

40. Notwithstanding that BCRS had maintained an existing office in Orange County, California, VREG also located its office in Orange County, California The co-existence of both offices was not viewed as duplicative or overlapping, because, among other factors, VREG had already existed not as a brokerage but to provide property development and property management services to the SPEs.

41. Subsequent to the formation of VREG, Bral indicated that he required the money earned from the SPEs, including, but not limited to, the property management fees and any commissions, for both the continued operation and management of VREG and his personal use. Bral orally proposed, and Beitler orally agreed, to defer receiving any money from VREG that would otherwise be distributed to Beitler and BCRS, and that Bral would subsequently account for, allocate and pay to Beitler and BCRS the excess money received by Bral that would otherwise have been paid to Beitler and/or BCRS ("Deferral Agreement"). Plaintiffs are informed and believe, and based on such information and belief allege, that the Deferral Agreement was restated and ratified periodically and annually by Beitler and Bral each year after the VREG Property Management Agreement, including calendar year 2013.

42. The Initial VREG Agreement, the VREG Property Management Agreement, the Brokerage Agreement and the Deferral Agreement are hereinafter referred to collectively as the "VREG Agreements".

43. At all times herein mentioned, Beitler was licensed by CBRE as a real estate broker.

44. At all times herein mentioned, VREG listed Beitler as the "Licensed Officer". CBRE License Page – VREG it states Beitler as the Licensed Officer and listing Mariko C. Beaver ("Beaver") and Jon Capristo ("Capristo") as sales persons. Bral is not named as a salesperson under VREG. Plaintiffs are informed and believe, and based on such information and belief allege, that Bral, prior to January 18, 2014, was not listed as salesperson under the VREG.

45. Beaver and Capristo were individuals hired directly by Bral to work with Bral at VREG.

46. Plaintiffs are informed and believe, and based on such information and belief thereon allege, that at all times herein mentioned prior to June 5, 2013, Bral was licensed by the CBRE as a real estate agent.

47. In or about June 5, 2013, Bral was licensed by the CBRE as a real estate broker.

48. Bral, on or about October 8, 2013, formed BRAI; however, Plaintiffs are informed and believe, and based on such information and belief allege, that BRAI did not commence operations concurrent with its formation.

49. On January 9, 2014, Beitler sent Bral an email ("January 9th Email"). The January 9th Email related, among other things, Beitler's requests and demands for: (i) an accounting of VREG management fees earned by VREG and particularly with regard to the SPEs; (ii) payment of BCRS's share of the management fees; (iii) an accounting of all brokerage fees earned by VREG and payment to BCRS of any brokerage fees; (iv) removal of signs posted on the SPE properties that stated VREG as the broker or representative of the SPEs and replacement of those signs with BCRS signs; (v) repayment of any money advanced by BCRS on behalf of VREG, including, but not limited to, premiums related to VREG for errors and omissions insurance; and (vi) the cessation of the continued use of BCRS's broker's license.

50. Neither Bral nor VREG responded to the January 8th Email.

51. On January 24, 2014, as a follow-up to the January 9th Email, Beitler sent Bral an email ("January 24th Email") that related and reiterated, among other things, Beitler's requests and demands for: (i) an accounting and tender of payment for management fees VREG received from the SPEs; (ii) an accounting of commissions VREG received through the use of BCRS's California real estate broker license; (iii) the removal of VREG broker signs and the replacement of such signs with BCRS signs as required under the SPE operating agreements; (iv) the cessation of VREG's use of BCRS's California real estate broker license; and (v) the repayment of fees and expenses that BCRS advanced for VREG.

52. Bral did not respond to the January 24th Email.

53. The license page for BRAI listed on the CBRE website, as of January 28, 2014, set forth Bral as the Licensed Officer and provided that the corporate license was issued on

January 28, 2014. The CBRE web page for BRAI does not list any salespersons. Plaintiffs are informed and believe, and based on such information and belief allege, that BRAI commenced business in or about January 2014 and that both Capristo and Beaver then started doing work for BRAI.

54. BRAI's own web page states that:

"BRAI offers services to cover all Commercial Real Estate, with a specialty in Medical and Office. With over 25 years of experience in the industry and an inventory exceeding $100 million dollars ..."

55. At no time did Bral announce his resignation, separation or disassociation from VREG, or the formation of BRAI. On or about January 12, 2014, Plaintiffs discovered the formation of BRAI through an internet search.

56. At no time did Bral announce the termination or cessation of work by VREG.

57. Plaintiffs are informed and believe, and based on such information and belief allege, that BRAI now occupies the same business office as VREG and utilizes the same telephone numbers.

58. Plaintiffs are informed and believe, and based on such information and belief allege, that Bral transferred to BRAI all of the business of VREG, including the brokerage, property development, and property management.

59. Plaintiffs are informed and believe, and based on such information and belief allege, that Bral, Capristo and/or Beaver have ceased working for VREG.

60. At no time did Bral, Capristo and/or Beaver indicate they resigned, terminated or ceased doing work for VREG.

61. At no time did Bral communicate to Beitler the status of VREG as an ongoing operating entity, as it relates to BRAI and/or as it relates to the SPEs.

62. Plaintiffs are informed and believe, and based on such information and belief allege, that there is no agreement between VREG and BRAI regarding a transfer of business by VREG to BRAI or the assumption by BRAI of VREG's work. Plaintiffs are further informed

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

and believe, and based on such information and belief allege, that all such actions by Bral with regard to the transfer of VREG assets were done without the required corporate approval, including Beitler's approval as a putative shareholder of VREG pursuant to the Initial VREG Agreement.

**FIRST CAUSE OF ACTION**

**FOR BREACH OF FIDUCIARY DUTY**

**(By Beitler Against Bral and Does 1 through 50)**

63. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to 62, inclusive, of this Complaint, and the same are incorporated herein by this reference as though set forth in full herein.

64. Beitler is informed and believes, and based on such information and belief alleges, that at all times material hereto, Bral was a shareholder, corporate officer, and director of VREG.

65. Beitler is informed and believes, and based on such information and belief alleges, that a fiduciary relationship existed between Beitler and Bral, which Bral established through the following: (A) the formation of VREG, in accordance with the Initial VREG Agreement; (B) each of the agreements, as herein alleged, that Bral entered into with Beitler in which he promised to faithfully and in good faith perform and in which as an officer and director of VREG he was obligated to perform in the best interests of VREG, including, but not limited to, the VREG Agreements; and (C) Bral's position as a director and corporate officer of VREG.

66. Beitler is informed and believes, and based on such information and belief alleges, that Bral breached his fiduciary duties to Beitler by, among other things, the following: (A) failing to issue shares in VREG to Beitler; (B) failing to properly document VREG's corporate documents consistent with each of the VREG Agreements; (C) failing to account for VREG revenue; (D) failing to distribute VREG revenue; (E) failing to pay money owed to Beitler and/or to BCRS for Beitler's benefit; (F) misappropriating VREG revenue otherwise to be allocated to Beitler or to BCRS for Beitler's benefit; (G) failing to act in accordance with the State of California and CBRE laws and regulations regarding a California corporate real estate

brokerage; (H) failure to act in the best interests of and in loyalty to the SPEs and VREG and failure to place those interests before his own self-interest; (I) diverting and misappropriating VREG business and assets to BRAI in breach of the VREG Agreements, without authority as provided in the SPEs' operating agreements and without consideration or value; and (J) failing to act in accordance with his duties and obligations as a corporate officer and director of VREG.

67. As a proximate results of Bral's breach of fiduciary duty as herein alleged, Beitler has suffered damage in amount to be determined according to proof at the time of trial, but in no event less than this Court's minimum amount for unlimited civil jurisdiction.

68. Bral's breaches of his fiduciary duty to Beitler are continuing, willful and wrongful, and malicious, and done in conscious disregard for Beitler's rights. Beitler is therefore entitled to an award of punitive damages against Bral in amount according to proof.

**SECOND CAUSE OF ACTION**

**FOR ACCOUNTING**

**(By Plaintiffs Against Bral, VREG, BRAI and Does 1 through 50)**

69. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to 68, inclusive, of this Complaint, and the same are incorporated herein by this reference as though set forth in full herein.

70. The amount of money due to Plaintiffs as result of Defendants' conduct as aforesaid is not fully known to Plaintiffs, and cannot be precisely ascertained without an accounting of the money and assets used and/or received by Defendants with regard to Plaintiffs, and each of them.

71. By reason of the facts herein alleged, Defendants have a duty to account to Plaintiffs, among other things, for all money used and/or received by VREG, all money paid or distributed to Bral by VREG, all assets and business diverted by VREG to BRAI, and all money paid or distributed to Bral by BRAI that would otherwise be received or paid to VREG.

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

**THIRD CAUSE OF ACTION**

**FOR UNJUST ENRICHMENT**

**(By Plaintiffs Against Bral, VREG and BRAI and Does 1 – 50)**

72. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to 62, inclusive, of this Complaint, and the same are incorporated herein by this reference as though set forth in full herein.

73. By reason of the acts and conduct of Defendants as alleged herein, Defendants received a benefit and unjustly retained that benefit at the expense of Plaintiffs, and as a result thereof, Defendants have been unjustly enriched in an amount to be determined according to proof, together with interest thereon at the maximum legal rate, but in no event less than this Court's minimum amount for unlimited civil jurisdiction.

**FOURTH CAUSE OF ACTION**

**FOR INTENTIONAL MISREPRESENTATION**

**(By Plaintiffs Against Bral and Does 1 – 50)**

74. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to 62, inclusive, of this Complaint, and the same are incorporated herein by reference as though set forth in full herein.

75. At all times material hereto, Bral made a series of representations to Plaintiffs. Plaintiffs are informed and believe, and based on such information and belief allege, that the purpose of such representations was to induce Plaintiffs to enter into the VREG Agreements with Bral.

76. The representations made by Bral, included, among others, the following: (A) the VREG Agreements, and each of them, were binding, ongoing and would be faithfully performed by Bral; (B) VREG would equally divide the revenue between Beitler and Bral from the property management fees paid by the SPEs to VREG, and that Bral would not interfere with BCRS's right to be the real estate broker for the SPEs and its right to commissions therefrom; (C) Bral would not undertake any action with regard to the SPEs either as a manager, managing member or member without Beitler's agreement; (D) Bral would not do, or cause anything to be done,

that was in conflict with the requirement of prior approval of Beitler as broker of VREG and as otherwise required by CBRE and the laws and regulations of the State of California for corporate real estate brokerages; (E) Bral would not do, or cause anything to be done, whether directly or indirectly, that would interfere with BCRS's rights of broker representation and to commissions relative to any of the SPEs; (F) Bral would repay any money received by Bral in excess of his equal share; and (G) BCRS would receive its broker commission from any commission appropriately earned by VREG (collectively, the "Representations").

77. Each of the Representations made by Bral was in fact false.

78. Plaintiffs are informed and believe, and based on such information and belief allege, that Bral did not intend to, among other things: (A) divide the revenue from property management and commissions with Beitler, individually and on behalf of BCRS; (B) faithfully perform each of the VREG Agreements; (C) properly pay to Beitler his broker share of any commission related to non-BCRS commission matters; and (D) not interfere with BCRS's rights with regard to any of the SPEs, including the payment of any commissions.

79. Plaintiffs are informed and believe, and based on such information and belief allege, that Bral's real intent was to use the revenue received by VREG to develop the infrastructure of VREG for his singular benefit as an ongoing real estate commercial brokerage without being licensed as a broker under the laws of California and without allocating to Beitler, whether individually or on behalf of BCRS, an equal distribution and/or other payments.

80. Plaintiffs are informed and believe, and based on such information and belief allege, that Bral breached his duty in making the Representations, since Bral did not intend to reasonably perform under the terms of any of the VREG Agreements. Plaintiffs are further informed and believe, and based on such information and belief allege, that Bral was aware that he acted contrary and/or in breach of the VREG Agreements notwithstanding that Bral reaffirmed and ratified each of the VREG Agreements and related to Plaintiffs his purported intent to faithfully perform of each of the VREG Agreements and did so affirm and ratify each calendar year, through and including 2013.

81. Plaintiffs, and each of them, reasonably relied on Bral's Representations and such reliance was both reasonable and justified, since Bral was both a long standing business associate and friend of Beitler prior to the formation of VREG and, therefore, Plaintiffs had no reason to doubt Bral's Representations based on their past history of performance. Plaintiffs had a pre-existing relationship with Bral that on its face and from past practice validated trust. In addition, Bral reaffirmed at all times material hereto each of the VREG Agreements.

82. Had Plaintiffs known the truth of Bral's Representations and his real intent they would not have entered into the VREG Agreements, Beitler would not have placed his real estate broker license with VREG for VREG's use, and BCRS would not have made Expense Advances for VREG or deferred collection of such advances.

83. Plaintiffs did not discover, and were not on notice of, the falsity of Bral's Representations until in or about October 2013.

84. Plaintiffs have been damaged by Bral's failure to perform under each of the VREG Agreements and his misuse of Beitler's real estate broker license.

85. Plaintiffs' reliance on Bral's Representations was a substantial factor in and proximate cause of harm and damage to Plaintiffs.

86. Plaintiffs seeks both general and special damages, including interest at the maximum legal rate, in an amount according to proof at time of trial, but in no event less than this Court's minimum amount for unlimited civil jurisdiction.

87. Bral's Representations were false, willful and malicious, and done in conscious disregard for Plaintiffs' rights. Plaintiffs are therefore entitled to an award of punitive damages against Bral in amount according to proof.

**FIFTH CAUSE OF ACTION**

**FOR NEGLIGENT MISREPRESENTATION**

**(By Plaintiffs Against Bral and Does 1 – 50)**

88. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to 62, inclusive, and paragraphs 74 to 77, inclusive, and paragraphs 81 to 86, inclusive of this

Complaint, and the same are incorporated herein by this reference as though set forth in full herein.

89. In making the Representations to Beitler, Bral had a duty to not make any Representations that were false and did not reflect anything other than his real intent.

90. Plaintiffs are informed and believe, and based on such information and belief allege, that Bral made the Representations without any reasonable grounds or basis for believing them to be true.

91. As a direct and proximate result of Bral's Representations and Plaintiffs' justifiable reliance thereon, Plaintiffs suffered general and special damages, including interest at the maximum legal rate, in an amount according to proof at time of trial, but in no event less than this Court's minimum amount for unlimited civil jurisdiction.

**SIXTH CAUSE OF ACTION**

**FOR BREACH OF ORAL CONTRACT**

**(By Plaintiffs Against Bral and Does 1 – 50)**

92. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to 68, inclusive, of this Complaint, and the same are incorporated herein by this reference as though set forth in full herein.

93. Each of the VREG Agreements is an oral contract.

94. Plaintiffs have performed all of their obligations under the VREG Agreements except those excused, waived, or discharged by Defendants' conduct.

95. In or about November 2013, Bral breached the VREG Agreements, by among other things, failing to perform those promises and undertake those actions as set forth in paragraphs 31, 32, 39, 41, 75 and 76 herein.

96. As a result of Bral's breach of the VREG Agreements, Plaintiffs have suffered general and compensatory damages, and incidental and consequential damages, in an amount according to proof, including interest at the maximum legal rate, but in no event less than this Court's minimum amount for unlimited civil jurisdiction.

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

**SEVENTH CAUSE OF ACTION**

**FOR BREACH OF ORAL CONTRACT**

**(By BCRS Against Bral, VREG and Does 1 – 50)**

97. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to 68, inclusive, of this Complaint, and the same are incorporated herein by this reference as though set forth in full herein.

98. BCRS orally agreed to make Expense Advances on behalf of Bral, VREG and each of the agents acting under VREG, including, but not limited to, errors and omissions coverage, and Bral and VREG orally agreed to reimburse BCRS for all Expense Advances ("Expense Advance Agreement"). The Expense Advance Agreement is part of the Brokerage Agreement.

99. BCRS made Expense Advances on behalf of Bral, VREG and each of the agents acting under VREG, and BCRS has performed all of its obligations under the Expense Advance Agreement except those excused, waived, or discharged by Defendants' conduct.

100. Bral and VREG requested that BCRS defer collection of their repayment of the Expense Advances to a later date, since neither Bral nor VREG purportedly could afford to absorb such costs. BCRS agreed to defer collection of repayment of the Expense Advances.

101. Notwithstanding that Bral and VREG did not pay BCRS for such Expense Advances, Bral and VREG, for each calendar year in which Expense Advances were made, ratified and affirmed their obligations to BCRS under the Expense Advance Agreement to repay all outstanding Expense Advances, including those from prior years. Bral and VREG in calendar year 2013 again ratified and reaffirmed their obligations to BCRS under the Expense Advance Agreement to repay all outstanding Expense Advances.

102. In or about November 2013, Bral and VREG breached the Expense Advance Agreement by failing to repay to BCRS outstanding Expense Advances.

103. As a result of Bral's and VREG's breach of the Expense Advance Agreement, BCRS has suffered general and compensatory damages, and incidental and consequential

damages, in an amount according to proof, including interest at the maximum legal rate, but in no event less than this Court's minimum amount for unlimited civil jurisdiction.

**EIGHTH CAUSE OF ACTION**

**FOR BREACH OF IMPLIED CONTRACT**

**(By Plaintiffs Against Bral and Does 1 – 50)**

104. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 to 68, inclusive, paragraphs 75 and 76, and paragraphs 97 to 103, inclusive of this Complaint, and the same are incorporated herein by this reference as though set forth in full herein.

105. In doing the acts and things hereinabove alleged, Plaintiffs and Bral entered into an implied contract ("Implied Agreement"), on the terms and conditions as alleged herein, pursuant to which, among other things, (i) Beitler and Bral would equally share in the management fees from the SPEs, (ii) BCRS would receive its equal share of brokerage commissions from any non-SPE transactions by or through VREG, (iii) BCRS would be reimbursed by Bral for any fees, costs and other Expense Advances on behalf of VREG and Bral, and (iv) Plaintiffs and Bral would equally share in the commissions earned from the leasing and sale of the SPEs' properties.

106. Plaintiffs performed all of their obligations under the Implied Agreement except those excused, waived, or discharged by Defendants' conduct.

107. In or about November 2013, Bral breached the Implied Agreement by, among other things, failing to perform those promises and undertake those actions as set forth in paragraphs 31, 32, 39, 41, 75, 76, and 98 herein.

108. As a result of Bral's breach of the Implied Agreement, Plaintiffs have suffered general and compensatory damages, and incidental and consequential damages, in an amount according to proof, including interest at the maximum legal rate, but in no event less than this Court's minimum amount for unlimited civil jurisdiction.

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

Case 8:17-bk-10706-SC Claim 9 Filed 06/16/17 Desc Main Document Page 26 of 38

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. FIRST CAUSE OF ACTION

a) General and special damages in an amount according to proof;

b) Interest at the maximum legal rate; and

c) Punitive damages according to proof.

2. SECOND CAUSE OF ACTION

a) For an accounting.

3. THIRD CAUSE OF ACTION

a) General and compensatory damages in an amount according to proof;

b) Incidental and consequential damages according to proof; and

c) Interest at the maximum legal rate.

4. FOURTH CAUSE OF ACTION

a) General and special damages in an amount according to proof;

b) Interest at the maximum legal rate; and

c) Punitive damages according to proof.

5. FIFTH CAUSE OF ACTION

a) General and special damages in an amount according to proof; and

b) Interest at the maximum legal rate.

6. SIXTH, SEVENTH and EIGHTH CAUSES OF ACTION

a) General and special damages in an amount according to proof; and

b) Incidental and consequential damages in an amount according to proof; and

c) Interest at the maximum legal rate.

7. ALL CAUSES OF ACTION

a) For costs of suit incurred herein; and

Case 8:17-bk-10706-SC Claim 9 Filed 06/16/17 Desc Main Document Page 27 of 38

b) For such other and further relief as the court deems just and appropriate.

DATED: April 21, 2014

LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations
TOM LALLAS

By: ______________________
TOM LALLAS
Attorneys for Plaintiffs
BARRY A. BEITLER and
BEITLER & ASSOCIATES, INC., doing business as Beitler Commercial Realty Services

30488

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

20

COMPLAINT

EXHIBIT "A"
Page 36

# EXHIBIT B

Honorable Stephen M. Lachs (Ret.)
ADR SERVICES, INC.
1900 Avenue of the Stars, Suite 250
Los Angeles, California 90067
(310) 201-0010 PH
(310) 201-0016 FAX

ADR SERVICES, INC.

BARRY A. BEITLER and BEITLER & ASSOCIATES INC. dba BEITLER COMMERCIAL REALTY SERVICES,

Plaintiffs,

v.

JOHN BRAL; VENTURE REAL ESTATE GROUP, a California Corporation; and BRAL REALTY ADVISORS, INC.,

Defendants.

ADRS Case No. 16-6581-SML
LASC Case No. BC 543410

**CORRECTED REPORT AND RECOMMENDATION ON MOTIONS 101, 201-207**

Stephen M. Lachs,
Judge of the Superior Court (Ret.)

Hon. Maureen Duff-Lewis
Dept. 38

On October 5, 2016, you appointed me to be a discovery referee in the above-entitled case. Since that time I have had two conference calls with counsel – one to discuss the case and set up a plan for the filing of various motions, and the second was the call that allowed counsel to argue their motions. In the end, Plaintiff filed one motion and Defendants filed three motions, though one of them consisted of four separate motions. However, we all treated it as one motion.

As you may remember, this case is one of a series of cases litigated between these parties. Mr. Beitler and Mr. Bral were once partners in various real estate businesses and have had a falling out, leading to this litigation.

The briefs and exhibits that I reviewed for these motions filled a bankers box. There are references by both sides as to comments made by judges in the other cases, and actions taken by other judges in those cases. I will spare you all of this since they are not really relevant to these discovery motions. Either the parties are doing what they are required to do in this case, or they are not.

The parties numbered their motions to make things easier. The plaintiff used the 100 series and the defendants used the 200 series.

The second conference call, in which the motions were argued, occurred on December 15, 2016. Messrs Lallas and Jordan appeared for the Plaintiff and Messrs Chapman and Hoesly appeared for Defendants. Plaintiff had a court reporter present.

We began our conference call with argument concerning **Plaintiff's** motion, which was **Motion #101**.

This motion seeks an order to compel Defendant Bral to produce certain documents, the imposition of monetary sanctions, and an order that would lead to terminating sanctions as to all defendants if there was a further failure to comply with discovery obligations.

This case involves allegations that Bral transferred money to entities which he controlled, which money should have been shared with Beitler. Bral used QuickBooks for his basic accounting. The information which you enter into QuickBooks and which shows up on your computer, is called either raw data or native files. From that data, a person can produce various reports. While Bral has produced reports for Beitler, he, Beitler, is seeking the raw data from the computer. At this point there is no question that the raw data exists and that it is able be produced.

///

Bral has taken the position that Beitler never requested the raw data in his discovery motions and that the Court never ordered that they be produced.

On July 14, 2016, this Court ordered as follows:

"The court is informed that parties meet (sic) and conferred and agreed after deposition of defendant John Bral that the following documents would be produced as reflected in exhibit 8 of declaration of Christian Jordan which is dated June 02, 2016 letter addressed to Mr. Chapman.

Court orders compliance with production as reflected in exhibit 8 without objection by July 26, 2016."

Thus we should look at the letter of June 2nd, which was Exhibit 8, to see what was ordered produced by the Court.

In that exhibit, at the bottom of the first page, you find Request for Production No. 1. The status, which is what the parties agreed to and which was ordered produced by the Court, says, "Bral will produce all responsive documents not already produced, including, by way of example and without limitation, general ledgers, QuickBooks reports, check registers, and cash receipts and disbursement ledgers."

The language was clear – Bral was to produce all responsive documents and the brief list gave examples but did not limit what was to be turned over to just those items. Clearly The QuickBook native files would fall under this request.

At the July 14th hearing, the Court ordered Plaintiff to give notice. Notice was personally served and faxed on July 21, 2016. In addition, Plaintiff e-mailed a letter to counsel for

Defendants in which Plaintiff took pains to point out that the raw data, or native files, were required to be produced. Obviously Mr. Jordan, for Plaintiff, had no obligation to spell out for Defendant just what "all responsive documents" might include, but he did. And, in this letter, he states that, "QuickBook files, including native files, were also repeatedly referenced in the Application the Court granted today and in the Jordan Declaration in support thereof."

There is no evidence that at any time after receipt of that letter, Defendant ever contended that Jordan was wrong, and that native files were not required to be produced. That is, until Defendant filed his opposition to Motion 101 in which he states on page 8, "**Importantly, there was no mention of the raw data!** (his emphasis). It simply was never discussed or there would have been a reference to it. Because it was not discussed, it need not be produced. Even the Court noted that, including in the October 4 minute order "The 'issue' of "raw" QuickBooks data appears to be new and not argued before."

I do not know the context of the Court's comment, but it was certainly not a statement that Defendant need not produce the raw data. Had Defendant wanted to, in the discussions that resulted in Exhibit 8, he could have insisted that production be limited to only those documents listed. Instead, he agreed that the list was just a list of examples and that he was required to produce everything, whether in the list of examples or not. And he certainly knew for months that Plaintiff was seeking the raw data. At the least, after Mr. Jordan's August 12th e-mail, he could have cleared this up with Mr. Jordan, or, at the most, sought the Court's ruling as to whether it was required to be produced.

I would recommend that the Court order Mr. Bral to produce the raw data from QuickBooks.

In addition, as a safety precaution, Defendant should be ordered to provide a copy of the same raw data under seal to the Court. That way there will be a copy available in the future if either side contends that the other side manipulated the data.

Case 8:17-bk-10706-SC Claim 9 Filed 06/16/17 Desc Main Document Page 33 of 38

Both the copy of the data for Plaintiff and that for the Court should be produced within 10 days of the Court's order.

Plaintiff also requested tax returns for VREG and BRAI for the years 2012, 2013, 2014 and 2015. Defendant's position apparently is that he need only turn over documents that are physically in his possession. The tax returns appear to be in the possession of his accountant. Defendant need only instruct his accountant to provide those returns. He should be ordered to produce the returns within 10 days of the date of the Court's order.

Plaintiff requests a triggering provision that would state that if Defendant failed to comply with the Court's order, terminating sanctions would be imposed. Unfortunately too much can happen in the world for this type of order. Rather, if Plaintiff feels there has been noncompliance, he should be able to seek a date for a hearing on an ex parte motion and Defendant should be given an opportunity at that hearing to explain why he has not complied with the Court's order. If the Court is satisfied that there was noncompliance and there was no valid reason for it, then terminating sanctions will be imposed.

Finally Plaintiff requests an award of monetary sanctions. It is my recommendation that the Court award monetary sanctions to Plaintiff. This motion, in my opinion, was unnecessary and Plaintiff should not have to pay his attorneys for all of the work involved.

**Defendant's Motion #201**

This is Defendant's motion to compel the deposition of Plaintiff along with documents requested in the notice.

Plaintiff suspended the deposition of Defendant because of Defendant's failure to produce documents that were requested of him. The deposition of Plaintiff was noticed after that

Case 8:17-bk-10706-SC Claim 9 Filed 06/16/17 Desc Main Document Page 34 of 38

suspension. It is simply a matter of fairness that a party should not be able to depose the other party while his own deposition has been suspended as the result of his failure to produce documents.

I recommend that the Court deny Defendant's Motion #201. Further, within 10 days after completion of Defendant's deposition, the parties shall mutually agree to a date for the deposition of Plaintiff. If they cannot agree, Defendant will be able to give notice of an ex parte hearing with the Court in order to set the date.

**Defendant's Motion #202 through #206**

These motions were handled as one motion.

Plaintiff had subpoenaed documents from various third parties who are accountants. These were motions by Defendant to quash each of these document requests and/or for a protective order.

Defendant's position was that the parties had agreed to limit the production of these documents to a certain year. Yet it is clear that while certain items were limited to a year, the bulk were not. The motions to quash should be denied as to every category unless there was a written agreement to limit a particular category to one year.

**Defendant's Motion #207**

This motion deals with amended responses to written discovery that was to be provided by Plaintiff. Defendant says that Plaintiff refused to inform Defendant as to when the responses would be provided and that Defendant was forced to file this motion to compel.

///

///

It is agreed by the parties that Plaintiff provided the amended responses three weeks before this motion was heard, and so it is now just Defendant's request for sanctions that needs be considered.

Apparently Plaintiff provided certain amended responses prior to the filing of this motion, but some were not provided. As indicated, the parties agree that all amended responses were provided three weeks prior to the hearing of this motion, but this was a date after the motion was filed. I accept that Plaintiff's attorney sought to reassure counsel for Defendant that the remainder of the amended responses would be provided, but no specific date was ever given. And it should be pointed out that counsel for Plaintiff kept in touch with Defendant during this time.

These parties are involved in some terribly contentious litigation. In such a case, it behooves counsel to be specific about such things as dates when discovery responses will be provided since counsel will be aware that the other side will jump on any opportunity to file a motion. In this instance, there was no way for Defendant to know when he would receive the amended responses that he was entitled to. It was Plaintiff's burden to provide a specific date and live up to that date, in order to prevent this very motion.

At the same time, it appears that this delay has in no way prejudiced Defendant except for having prepared the motion.

I would recommend that sanctions be awarded to Defendant in a sum to compensate for the preparation of this motion.

///

///

///

///

**In summary, I recommend to the Court as follows:**

As to Motion #101

1. Defendant Bral be ordered to produce to the Plaintiff, the raw data from QuickBooks within 10 days of the date of the Court's order.

2. Further, at the same time, Defendant is to provide the same raw data to the Court under seal.

3. Defendant shall produce tax returns for Defendant VREG and Defendant BRAI for the years 2012, 2013, 2014 and 2015 within 10 days of the Court's order.

4. The Court should order that at such time as Plaintiff believes that these orders have not been complied with, he may set a hearing on ex parte motion so that the Court can consider terminating sanctions if the Court finds that these orders have not been complied with.

5. The Court should order monetary sanctions against Defendant.

As to Motion #201

1. Defendant's motion should be denied.

2. Within 10 days of the completion of Defendant's deposition, the parties shall mutually agree to a date for Plaintiff's deposition. If they cannot, Defendant may request a hearing upon ex parte notice, in order to have the Court set the date.

Case 8:17-bk-10706-SC Claim 9 Filed 06/16/17 Desc Main Document Page 37 of 38

As to Motions #202 through #206:

1. The Defendant's motion to quash should be denied as to every category except those in which there was a written agreement to limit the discovery to one year.

As to Motion #207:

1. The only part of the motion that remains is the request for sanctions and sanctions should be awarded to Defendant to compensate for the cost of preparing the motion.

Counsel for Plaintiff should be ordered to prepare an order for the Court that encompasses these rulings.

RESPECTFULLY,

Hon. Stephen M. Lachs, Referee
Judge of the Superior Court, Ret.

Dated: 2/22/17

EXHIBIT "A"
Page 46

# PROOF OF SERVICE

**State of California**
**County of Los Angeles**

I certify that I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1900 Avenue of the Stars, Suite 250, Los Angeles, California 90067.

On February 23, 2017, I served the foregoing document described as the **CORRECTED REPORT AND RECOMMENDATION ON MOTIONS 101, 201-207** on the interested parties in this action as follows:

Tom P. Lallas, Esq.
Mark D. Hurwitz, Esq.
Christian A. Jordan, Esq.
LEVY SMALL & LALLAS
815 Moraga Drive
Los Angeles, California 90049
tlallas@lsl-la.com
mhurwitz@lsl-la.com
cjordan@lsl-la.com
cc: kfinn@lsl-la.com
(310) 471-3000
**VIA U.S. MAIL AND E-MAIL ONLY**

John M. Whelan, Esq.
Matthew M. Hoesly, Esq.
SAMINI SCHEINBERG
840 Newport Center Drive, Suite 700
Newport Beach, California 92660
jwhelan@saminilaw.com
mhoesly@saminilaw.com
cc: cthornton@saminilaw.com
(949) 724-0900
**VIA U.S. MAIL AND E-MAIL ONLY**

LLOYD K. CHAPMAN, ESQ.
4558 Sherman Oaks Avenue, 2nd Floor
Sherman Oaks, California 91403
(818) 304-8412
**VIA U.S. MAIL ONLY**

Hon. Maureen Duffy-Lewis
Dept. 38
LOS ANGELES SUPERIOR COURT
OF CALIFORNIA
111 North Hill Street
Los Angeles, California 90012
**VIA U.S. MAIL ONLY**

X **BY U.S. MAIL,** I placed a true copy of the document described above in a sealed envelope and caused such envelope with postage thereon to be placed in the United States mail at Los Angeles, California.

X **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address *lara@adrservices.org* to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

X **STATE** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 23, 2017 at Los Angeles, California

Lara Weiss

# POC NO. 11

**Fill in this information to identify the case:**

Debtor 1 JOHN JEAN BRAL

Debtor 2 (Spouse, if filing) ____________________

United States Bankruptcy Court for the: Central District of California

Case number 8:17-BK-10706-SC

Official Form 410

# Proof of Claim

4/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents**; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

Barry Beitler
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor ____________________

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? ____________________

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|
| Name: Gary E. Klausner, Esq. | Name: Barry Beitler |
| Number Street: 10250 Constellation Blvd., Suite 1700 | Number Street: 825 Barrington Avenue |
| City: Los Angeles State: CA ZIP Code: 90067 | City: Los Angeles State: CA ZIP Code: 90048 |
| Contact phone: (310) 229-1234 | Contact phone: ____________ |
| Contact email: GEK@LNBYB.COM | Contact email: bbeitler@beitler.com |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) ______ Filed on ______ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? ____________________

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

6. **Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

7. **How much is the claim?**

$ To be determined. **Does this amount include interest or other charges?**

☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Claims in Case No. BC 543410 in Los Angeles County Superior Court

9. **Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: ____________________

**Basis for perfection:** ____________________

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $__________

**Amount of the claim that is secured:** $__________

**Amount of the claim that is unsecured:** $__________ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $__________

**Annual Interest Rate** (when case was filed)______%

☐ Fixed
☐ Variable

10. **Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $__________

11. **Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: ____________________

EXHIBIT "A"

| | | |
|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br>☐ Yes. *Check all that apply:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $________ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $________ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $________ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $________ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $________ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $________ |

* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 06/15/2017
MM / DD / YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

Name: Barry Beitler
First name / Middle name / Last name

Title: ________

Company: ________
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 825 Barrington Avenue
Number Street

Los Angeles CA 90049
City State ZIP Code

Contact phone ________ Email bbeitler@beitler.com

**ATTACHMENT TO PROOF OF CLAIM OF BARRY BEITLER BASED ON CLAIMS
PENDING IN LOS ANGELES COUNTY SUPERIOR COURT CASE NO. BC 543410**

On April 21, 2014, Barry Beitler ("Beitler" or "Claimant") filed an action against, among others, John Bral ("Bral") in Los Angeles County Superior Court, Case No. BC 543410. A copy of the Complaint that Beitler filed in that action is attached hereto as Exhibit "A".

As set forth in the Complaint, Beitler alleged various claims for damages against Bral for breach of fiduciary duty, unjust enrichment, intentional misrepresentation, negligent misrepresentation, breach of oral contract and breach of implied contract. These claims are based on, among other things, allegations that:

- Beitler and Bral formed several specific purpose entities as limited liability companies (collectively, "SPEs") to hold, operate and manage real property investments in which they each held a membership interest.
- The SPEs' operating agreements controlled whether, to whom and under what circumstances the SPEs could pay commissions and property management fees with respect to the real properties.
- Beitler and Bral agreed to form Venture RE Group ("Venture") to act as a development company for the SPEs, with Beitler and Bral holding equal ownership interests in Venture.
- Beitler and Bral also agreed that (i) Venture would provide property management services to the SPEs, (ii) Beitler and Bral would equally divide all of Venture's revenues, (iii) Beitler would place his real estate broker's license with Venture, (iv) Venture would operate as an affiliate of Beitler Commercial Realty Services ("BCRS"), which was the authorized broker named in the SPE operating agreements, and (v) while BCRS would remain the broker for the SPEs, commissions from lease and sale transactions brokered by Venture would be split equally between BCRS and Venture.
- Notwithstanding these agreements, Bral, among other things, (a) formed and operated Venture without providing for Beitler to receive his interest therein, (b) failed to share Venture's revenues with Beitler, (c) without Beitler's or the SPEs' authorization, diverted Venture's business to an entity Bral created, Bral Realty Advisors, Inc. ("BRAI"), and (d) retained, directly or through BRAI or Venture, management fees and commissions payable to Beitler and/or BCRS.

The case remains pending in Los Angeles County Superior Court but has been stayed as a result of this bankruptcy case. Beitler's pending adversary action herein, Adversary No. 8:17-ap-01092, is based in part on allegations raised in the foregoing state court action.

The damages and other relief recoverable by Beitler in the state court case remain subject to proof, as Bral, Venture and BRAI control, among other things, the information concerning management fees and commissions they received that were payable to Beitler and BCRS. On February 23, 2017, the day before Bral filed this bankruptcy case, the discovery referee in the state court action issued a Report and Recommendation, a copy of which is attached hereto as

Exhibit "B", recommending that the Superior Court order Bral to produce (a) QuickBooks data in native format and (b) tax returns for Venture and BRAI within 10 days, with the Court to consider imposing terminating sanctions if Bral does not timely comply. Due to the bankruptcy stay, the Superior Court has not yet entered an order on the referee's recommendation.

**Reservation of Rights**

Claimant reserves the right to (i) amend, update and/or supplement this Proof of Claim at any time and in any respect, (ii) file additional proofs of claim for additional claims which may be based on the same or additional documents or other liability or indebtedness of the Debtor to Claimant (iii) file a request for payment of administrative expenses in accordance with 11 U.S.C. §§ 503 and 507.

In addition to the foregoing, Claimant reserves all rights with respect to (a) any indebtedness owed to Claimant by any non-debtor affiliate or other entity related to the Debtor, and (b) any other amounts that may be owing to Claimant in respect of interest, fees, indemnities, costs and expenses to the extent permitted by applicable law.

Nothing contained in this Proof of Claim shall be construed as limiting Claimants rights, remedies and interests.

The filing of this proof of claim is not: (i) a waiver or release of Claimant's rights against any person, entity or property; (ii) a waiver of the right to move to withdraw the reference, or otherwise to challenge the jurisdiction of this Court, with respect to the subject matter of this Proof of Claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving this Proof of Claim, or to assert that the reference has already been withdrawn with respect to the subject matter of this claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving this Proof of Claim; (iii) an election of remedy; or (iv) a waiver of any past, present or future defaults or events of default. Claimant specifically preserves all of Claimant's procedural and substantive defenses and rights with respect to any claim that may be asserted against Claimant by the Debtor or any of its debtor or non-debtor affiliates, or by any trustee for this estate.

# EXHIBIT A

Case 8:17-bk-10706-SC Claim 11 Filed 06/16/17 Desc Main Document Page 7 of 38

LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations
TOM LALLAS (SBN 66512)
815 Moraga Drive
Los Angeles, California 90049-1633
Telephone: (310) 471-3000
Facsimile: (310) 471-7990

Attorneys for Plaintiffs
BARRY A. BEITLER and
BEITLER & ASSOCIATES, INC.,
doing business as
Beitler Commercial Realty Services

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

APR 21 2014

Sherri R. Carter, Executive Officer/Clerk
By Shaunya Bolden, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

FILED BY FAX

BARRY A. BEITLER, an individual, and BEITLER & ASSOCIATES, INC., a California corporation doing business as Beitler Commercial Realty Services,

Plaintiffs,

vs.

JOHN BRAL, an individual; VENTURE RE GROUP, a California corporation; BRAL REALTY ADVISORS, INC., a California corporation; and DOES 1 through 50, inclusive,

Defendants.

Case No. BC543410

**COMPLAINT FOR:**

1) **BREACH OF FIDUCIARY DUTY**
2) **ACCOUNTING**
3) **UNJUST ENRICHMENT**
4) **INTENTIONAL MISREPRESENTATION**
5) **NEGLIGENT MISREPRESENTATION**
6) **BREACH OF ORAL CONTRACT**
7) **BREACH OF IMPLIED CONTRACT**

Plaintiffs Barry A. Beitler, an individual ("Beitler") and Beitler & Associates, Inc., a California corporation doing business as Beitler Commercial Realty Services ("BCRS") [collectively, "Plaintiffs"], allege as follows:

**I. PARTIES AND JURISDICTION.**

1. Beitler is now, and all times material hereto has been, a resident of, and doing business in, the County of Los Angeles, State of California.

2. BCRS is now, and all times material hereto has been, a corporation in good standing formed under the laws of the State of California. BCRS's principal business office is now, and all times material hereto has been, located in the County of Los Angeles, State of California.

3. Defendant John Bral ("Bral") is now, and at all times material hereto has been, an individual doing business in the County of Los Angeles, State of California.

4. Defendant Venture RE Group ("VREG") is now, and all times material hereto has been, a corporation in good standing formed under the laws of the State of California. Plaintiffs are informed and believe, and based on such information and belief allege, that the Articles of Incorporation for VREG were filed with the Secretary of State of California on or about May 10, 2006. VREG's principal business office is now, and all times material hereto has been, located in the County of Orange, State of California.

5. Defendant Bral Realty Advisors, Inc. ("BRAI") is now, and all times material hereto has been, a corporation in good standing formed under the laws of the State of California. Plaintiffs are informed and believe, and based on such information and belief allege, that the Articles of Incorporation for BRAI were filed with the Secretary of State of California on or about October 8, 2013. BRAI's principal business office is now, and all times material hereto has been, located in the County of Orange, State of California.

6. Plaintiffs do not know the true names or capacities of the persons or entities sued herein as Does 1 through 50, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe, and upon such information and belief allege, that each of the Doe Defendants was in some manner legally responsible for the damages alleged

below. Plaintiffs will amend this Complaint to set forth the true names of capacities of these Defendants when they have been ascertained.

7. Bral, VREG, BRAI and Does 1 – 50, inclusive, shall be collectively referred to as "Defendants".

8. Plaintiffs are informed and believes, and based on such information and belief allege, that at all times herein mentioned, each Defendant was the agent, servant, or employee of the other Defendants and in acting or omitting to act as alleged herein did so within the course and scope of that agency or employment. Each Defendant is sued individually and as an agent and representative of each of the Defendants.

9. Plaintiffs are informed and believes, and based on such information and belief allege, that all of the agreements at issue in this Action, whether written or oral, were made and agreed by the respective parties thereto in the County of Los Angeles.

## II. FACTS

10. Beitler and Bral formed several specific purpose entities as limited liability companies (collectively, "SPEs") to hold, operate and manage real property investments in which they each held a membership interest.

11. The SPEs of Beitler and Bral included, among others, Mission Medical Investors, LLC ("Mission"), Javaher Investors, LLC ("Javaher"), Ocean View Medical Investors, LLC ("Ocean"), Harbor Medical Investors, LLC ("Harbor"), Eyestreet Medical Investors, LLC ("Eye"), and Westcliff Investors, LLC ("Westcliff").

12. Westcliff was formed in February 2003.

13. Mission was formed in December 2003.

14. Javaher was formed in May 2005.

15. Ocean was formed in June 2005.

16. Harbor was formed in May 2006.

17. Eye was formed in October 2006.

18. Plaintiffs are informed and believe, and based on such information and belief allege, that Beitler and Bral have executed the operating agreements of each of the SPEs.

Plaintiffs are further informed and believe and thereon allege that Bral has in his possession and control all of the executed operating agreements of Mission, Javaher, Ocean, Harbor and Eye.

19. Beitler and Bral are managers of Ocean, Harbor and Mission.

20. Bral and Dr. Hootan Daneshmand are managers of Javaher and Eye.

21. Plaintiffs are informed and believe, and based on such information and belief thereon allege, that in each of the SPEs in which both Beitler and Bral are a manager or a managing member, neither Beitler nor Bral is permitted to act unilaterally or independently of each other as Manager or Managing Member, as the case may be, and that the operating agreements of those SPEs require the mutual consent of each manager or managing member.

22. Section 5.9 C. of the Operating Agreements of Ocean, Mission, Javaher and Harbor provides for payment of property management fees:

"There shall be a four percent (4%) of gross income per month fee for property management to a management company chosen by Manager."

23. Section 5.9 D. of the Operating Agreements of Ocean, Mission, Javaher, and Harbor provides for payment to BCRS of sale and leasing broker commissions:

"There shall be sales commission of four percent (4%) paid to Beitler Commercial Realty Services as a listing Broker upon sale .... and leasing commissions shall be paid to Beitler Commercial Realty Services...."

24. Section 5.8 of the Eye Operating Agreement, which was executed after VREG was formed, provides for VREG to act as property manager and sales and leasing broker:

" ... The Company specifically acknowledges that JOHN BRAL is a Manager and is affiliated with Venture RE Group. The Company specifically acknowledges and hires Venture RE Group as leasing and/or listing Broker, when necessary to lease or sell the property, and will pay to Venture RE Group the "Sales Commission" and "Lease Commissions" ... Further, the Company hires Venture RE Group to act as property manager for the Company and its assets and will pay to Venture RE Group the "Property Management Fee"... The Company specifically

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

Case 8:17-bk-10706-SC Claim 11 Filed 06/16/17 Desc Main Document Page 11 of 38

acknowledges that Manager or Manager's affiliate shall manage and oversee the construction, development and construction of the tenant improvements ... upon the Property, and the Company shall pay to Manager or Manager's affiliate the "Development and Construction Management Fee"..."

25. Section 5.9 C of the Eye Operating Agreement provides for payment of property management fees to VREG:

"There shall be a four percent (4%) of gross income per month fee ... for property management paid to Venture RE Group...."

26. Section 5.9 D of the Eye Operating Agreement provides for payment of sale and leasing broker commissions to VREG:

"There shall be sales commission of four percent (4%) paid to Venture RE Group ... as a listing Broker upon sale .... and leasing commissions shall be paid to Venture RE Group ...."

27. Section 3.3 in the Westcliff Operating Agreement provides for BCRS to act as broker and for sale and leasing commissions to be split equally between Beitler and Bral:

"At all times, whenever a vacancy in the property becomes available, Beitler Commercial Realty Services shall be hired for the leasing at market commission rates. Bral and Beitler agreed to split equally (50%/50%) any and all commissions for leasing paid if any. The same shall be true of any commission on the future sale of the Property...."

28. Plaintiffs are informed and believe, and based on such information and belief allege, that the Westcliff Operating Agreement does not provide for the appointment of a property manager.

29. Notwithstanding that an operating agreement of any of the SPEs may have granted to the manager or managing member the authority to select a property manager (Ocean, Mission, Javaher and Harbor), or otherwise provided for the appointment of a property manager

(Eye), it was agreed to and understood between Beitler and Bral that in each of the SPEs property management fees would be split between them and that the property management would be conducted through an entity owned and controlled by both of them (the "SPE Management Agreement"). Plaintiffs are informed and believe, and based on such information and belief allege, that the SPE Management Agreement amended each respective SPE operating agreement.

30. In or around May 2006, Beitler and Bral formed VREG. Its business purpose was to serve as a development company for their SPEs and any subsequently acquired real property to be developed.

31. At the time that they formed VREG, Beitler and Bral orally agreed to the following material terms with regard to VREG (collectively, "Initial VREG Agreement"):

A. Each would own an equal stock interest in VREG;

B. There would be no other shareholders in VREG;

C. Beitler and Bral would be the only officers and directors of VREG; and

D. VREG would only be used for its intended business purpose.

32. Subsequently, Beitler and Bral orally agreed to use VREG as a property management company for their SPEs. Beitler and Bral orally agreed to add to their Initial VREG Agreement the following additional terms (collectively, "VREG Property Management Agreement"):

A. Bral shall handle the day to day administrative management related to each of the SPEs, but not supersede, conflict, or be delegated as property manager, any of the authority of a Manager of any of the SPEs;

B. Other than property management services and property development services, VREG shall not provide any other service; and

C. Beitler and Bral are to divide equally between them all revenues earned by VREG.

Case 8:17-bk-10706-SC Claim 11 Filed 06/16/17 Desc Main Document Page 13 of 38

33. The VREG Property Management Agreement was an extension of the Initial VREG Agreement, incorporating the terms of the Initial VREG Agreement between Beitler and Bral.

34. Plaintiffs are informed and believe, and based on such information and belief allege, that Bral was the incorporator, or caused the incorporation, of VREG, and at all times material herein, Bral authored and controlled the corporate books, records, minutes of VREG, and filed with the State of California any compliance documents related to VREG.

35. Plaintiffs are informed and believe, and based on such information and belief allege, that at no time did Bral issue and deliver to Beitler shares of stock in VREG in Beitler's name.

36. Plaintiffs are informed and believe, and based on such information and belief allege, that Bral formed a de jure corporation by the filing of Articles of Incorporation for VREG, but failed to document Beitler's rights under VREG as an shareholder, officer and director of VREG as agreed to in the Initial VREG Agreement, including, but not limited to, the execution of bylaws, appointment of directors and officers, first meeting of shareholders and directors, and other corporate formalities establishing Beitler's rights in VRGE. At all times material hereto Bral failed to disclose to Beitler any of the aforementioned acts or omissions.

37. Plaintiffs are informed and believe, and based on such information and belief allege, that Bral, without disclosure to and unbeknownst to Beitler, and in violation of the Initial VREG Agreement, prepared corporate documentation that reflected Bral as the sole director, officer and shareholder of VREG.

38. Plaintiffs are informed and believe, and based on such information and belief allege, that Bral did not disclose or provide to Beitler documentation regarding the formation of VREG or documentation reflecting its annual compliance, if any, with corporate obligations, including meetings of its directors and shareholders.

39. Sometime after the formation of VREG and after Bral and Beitler entered into the VREG Property Management Agreement, Bral asked Beitler to place Beitler's broker's license with VREG, so that VREG could operate as a corporate real estate brokerage, including handling

Case 8:17-bk-10706-SC Claim 11 Filed 06/16/17 Desc Main Document Page 14 of 38

the leasing and sales for the SPEs. Beitler agreed to place his real estate broker's license with VREG, subject to the following conditions to which Bral orally agreed ("Brokerage Agreement"):

A. Observance of the laws of the State of California, including any administrative regulations or requirements of the California Bureau of Real Estate ("CBRE"), regarding such real estate brokerage matters;

B. VREG is to be operated and managed as an affiliate of BCRS and regulated by BCRS;

C. All commissions are to be split equally between broker and agent, with the broker commission to be paid to BCRS for use by VREG of Beitler's real estate broker's license;

D. Nothing shall modify or affect the SPEs' respective Operating Agreements with regard to their provisions appointing BCRS as listing broker of the SPEs and the commission percentage payable to BCRS as provided therein;

E. All leasing and sales transactions are to be managed and administrated by BCRS as the listing broker, consistent with the SPEs' respective Operating Agreements;

F. Any signs or marketing material listing any of the SPEs are to name BCRS as the listing broker; and

G. All payments and expenses advanced by BCRS to VREG, Bral or any of the agents acting under VREG ("Expense Advances"), including, but not limited to, for errors and omissions insurance, are to be reimbursed to BCRS.

Case 8:17-bk-10706-SC Claim 11 Filed 06/16/17 Desc Main Document Page 15 of 38

40. Notwithstanding that BCRS had maintained an existing office in Orange County, California, VREG also located its office in Orange County, California The co-existence of both offices was not viewed as duplicative or overlapping, because, among other factors, VREG had already existed not as a brokerage but to provide property development and property management services to the SPEs.

41. Subsequent to the formation of VREG, Bral indicated that he required the money earned from the SPEs, including, but not limited to, the property management fees and any commissions, for both the continued operation and management of VREG and his personal use. Bral orally proposed, and Beitler orally agreed, to defer receiving any money from VREG that would otherwise be distributed to Beitler and BCRS, and that Bral would subsequently account for, allocate and pay to Beitler and BCRS the excess money received by Bral that would otherwise have been paid to Beitler and/or BCRS ("Deferral Agreement"). Plaintiffs are informed and believe, and based on such information and belief allege, that the Deferral Agreement was restated and ratified periodically and annually by Beitler and Bral each year after the VREG Property Management Agreement, including calendar year 2013.

42. The Initial VREG Agreement, the VREG Property Management Agreement, the Brokerage Agreement and the Deferral Agreement are hereinafter referred to collectively as the "VREG Agreements".

43. At all times herein mentioned, Beitler was licensed by CBRE as a real estate broker.

44. At all times herein mentioned, VREG listed Beitler as the "Licensed Officer". CBRE License Page – VREG it states Beitler as the Licensed Officer and listing Mariko C. Beaver ("Beaver") and Jon Capristo ("Capristo") as sales persons. Bral is not named as a salesperson under VREG. Plaintiffs are informed and believe, and based on such information and belief allege, that Bral, prior to January 18, 2014, was not listed as salesperson under the VREG.

45. Beaver and Capristo were individuals hired directly by Bral to work with Bral at VREG.

46. Plaintiffs are informed and believe, and based on such information and belief thereon allege, that at all times herein mentioned prior to June 5, 2013, Bral was licensed by the CBRE as a real estate agent.

47. In or about June 5, 2013, Bral was licensed by the CBRE as a real estate broker.

48. Bral, on or about October 8, 2013, formed BRAI; however, Plaintiffs are informed and believe, and based on such information and belief allege, that BRAI did not commence operations concurrent with its formation.

49. On January 9, 2014, Beitler sent Bral an email ("January 9th Email"). The January 9th Email related, among other things, Beitler's requests and demands for: (i) an accounting of VREG management fees earned by VREG and particularly with regard to the SPEs; (ii) payment of BCRS's share of the management fees; (iii) an accounting of all brokerage fees earned by VREG and payment to BCRS of any brokerage fees; (iv) removal of signs posted on the SPE properties that stated VREG as the broker or representative of the SPEs and replacement of those signs with BCRS signs; (v) repayment of any money advanced by BCRS on behalf of VREG, including, but not limited to, premiums related to VREG for errors and omissions insurance; and (vi) the cessation of the continued use of BCRS's broker's license.

50. Neither Bral nor VREG responded to the January 8th Email.

51. On January 24, 2014, as a follow-up to the January 9th Email, Beitler sent Bral an email ("January 24th Email") that related and reiterated, among other things, Beitler's requests and demands for: (i) an accounting and tender of payment for management fees VREG received from the SPEs; (ii) an accounting of commissions VREG received through the use of BCRS's California real estate broker license; (iii) the removal of VREG broker signs and the replacement of such signs with BCRS signs as required under the SPE operating agreements; (iv) the cessation of VREG's use of BCRS's California real estate broker license; and (v) the repayment of fees and expenses that BCRS advanced for VREG.

52. Bral did not respond to the January 24th Email.

53. The license page for BRAI listed on the CBRE website, as of January 28, 2014, set forth Bral as the Licensed Officer and provided that the corporate license was issued on

Case 8:17-bk-10706-SC Claim 11 Filed 06/16/17 Desc Main Document Page 17 of 38

January 28, 2014. The CBRE web page for BRAI does not list any salespersons. Plaintiffs are informed and believe, and based on such information and belief allege, that BRAI commenced business in or about January 2014 and that both Capristo and Beaver then started doing work for BRAI.

54. BRAI's own web page states that:

"BRAI offers services to cover all Commercial Real Estate, with a specialty in Medical and Office. With over 25 years of experience in the industry and an inventory exceeding $100 million dollars ..."

55. At no time did Bral announce his resignation, separation or disassociation from VREG, or the formation of BRAI. On or about January 12, 2014, Plaintiffs discovered the formation of BRAI through an internet search.

56. At no time did Bral announce the termination or cessation of work by VREG.

57. Plaintiffs are informed and believe, and based on such information and belief allege, that BRAI now occupies the same business office as VREG and utilizes the same telephone numbers.

58. Plaintiffs are informed and believe, and based on such information and belief allege, that Bral transferred to BRAI all of the business of VREG, including the brokerage, property development, and property management.

59. Plaintiffs are informed and believe, and based on such information and belief allege, that Bral, Capristo and/or Beaver have ceased working for VREG.

60. At no time did Bral, Capristo and/or Beaver indicate they resigned, terminated or ceased doing work for VREG.

61. At no time did Bral communicate to Beitler the status of VREG as an ongoing operating entity, as it relates to BRAI and/or as it relates to the SPEs.

62. Plaintiffs are informed and believe, and based on such information and belief allege, that there is no agreement between VREG and BRAI regarding a transfer of business by VREG to BRAI or the assumption by BRAI of VREG's work. Plaintiffs are further informed

and believe, and based on such information and belief allege, that all such actions by Bral with regard to the transfer of VREG assets were done without the required corporate approval, including Beitler's approval as a putative shareholder of VREG pursuant to the Initial VREG Agreement.

**FIRST CAUSE OF ACTION**

**FOR BREACH OF FIDUCIARY DUTY**

**(By Beitler Against Bral and Does 1 through 50)**

63. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to 62, inclusive, of this Complaint, and the same are incorporated herein by this reference as though set forth in full herein.

64. Beitler is informed and believes, and based on such information and belief alleges, that at all times material hereto, Bral was a shareholder, corporate officer, and director of VREG.

65. Beitler is informed and believes, and based on such information and belief alleges, that a fiduciary relationship existed between Beitler and Bral, which Bral established through the following: (A) the formation of VREG, in accordance with the Initial VREG Agreement; (B) each of the agreements, as herein alleged, that Bral entered into with Beitler in which he promised to faithfully and in good faith perform and in which as an officer and director of VREG he was obligated to perform in the best interests of VREG, including, but not limited to, the VREG Agreements; and (C) Bral's position as a director and corporate officer of VREG.

66. Beitler is informed and believes, and based on such information and belief alleges, that Bral breached his fiduciary duties to Beitler by, among other things, the following: (A) failing to issue shares in VREG to Beitler; (B) failing to properly document VREG's corporate documents consistent with each of the VREG Agreements; (C) failing to account for VREG revenue; (D) failing to distribute VREG revenue; (E) failing to pay money owed to Beitler and/or to BCRS for Beitler's benefit; (F) misappropriating VREG revenue otherwise to be allocated to Beitler or to BCRS for Beitler's benefit; (G) failing to act in accordance with the State of California and CBRE laws and regulations regarding a California corporate real estate

Case 8:17-bk-10706-SC Claim 11 Filed 06/16/17 Desc Main Document Page 19 of 38

brokerage; (H) failure to act in the best interests of and in loyalty to the SPEs and VREG and failure to place those interests before his own self-interest; (I) diverting and misappropriating VREG business and assets to BRAI in breach of the VREG Agreements, without authority as provided in the SPEs' operating agreements and without consideration or value; and (J) failing to act in accordance with his duties and obligations as a corporate officer and director of VREG.

67. As a proximate results of Bral's breach of fiduciary duty as herein alleged, Beitler has suffered damage in amount to be determined according to proof at the time of trial, but in no event less than this Court's minimum amount for unlimited civil jurisdiction.

68. Bral's breaches of his fiduciary duty to Beitler are continuing, willful and wrongful, and malicious, and done in conscious disregard for Beitler's rights. Beitler is therefore entitled to an award of punitive damages against Bral in amount according to proof.

**SECOND CAUSE OF ACTION**

**FOR ACCOUNTING**

**(By Plaintiffs Against Bral, VREG, BRAI and Does 1 through 50)**

69. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to 68, inclusive, of this Complaint, and the same are incorporated herein by this reference as though set forth in full herein.

70. The amount of money due to Plaintiffs as result of Defendants' conduct as aforesaid is not fully known to Plaintiffs, and cannot be precisely ascertained without an accounting of the money and assets used and/or received by Defendants with regard to Plaintiffs, and each of them.

71. By reason of the facts herein alleged, Defendants have a duty to account to Plaintiffs, among other things, for all money used and/or received by VREG, all money paid or distributed to Bral by VREG, all assets and business diverted by VREG to BRAI, and all money paid or distributed to Bral by BRAI that would otherwise be received or paid to VREG.

**THIRD CAUSE OF ACTION**

**FOR UNJUST ENRICHMENT**

**(By Plaintiffs Against Bral, VREG and BRAI and Does 1 – 50)**

72. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to 62, inclusive, of this Complaint, and the same are incorporated herein by this reference as though set forth in full herein.

73. By reason of the acts and conduct of Defendants as alleged herein, Defendants received a benefit and unjustly retained that benefit at the expense of Plaintiffs, and as a result thereof, Defendants have been unjustly enriched in an amount to be determined according to proof, together with interest thereon at the maximum legal rate, but in no event less than this Court's minimum amount for unlimited civil jurisdiction.

**FOURTH CAUSE OF ACTION**

**FOR INTENTIONAL MISREPRESENTATION**

**(By Plaintiffs Against Bral and Does 1 – 50)**

74. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to 62, inclusive, of this Complaint, and the same are incorporated herein by reference as though set forth in full herein.

75. At all times material hereto, Bral made a series of representations to Plaintiffs. Plaintiffs are informed and believe, and based on such information and belief allege, that the purpose of such representations was to induce Plaintiffs to enter into the VREG Agreements with Bral.

76. The representations made by Bral, included, among others, the following: (A) the VREG Agreements, and each of them, were binding, ongoing and would be faithfully performed by Bral; (B) VREG would equally divide the revenue between Beitler and Bral from the property management fees paid by the SPEs to VREG, and that Bral would not interfere with BCRS's right to be the real estate broker for the SPEs and its right to commissions therefrom; (C) Bral would not undertake any action with regard to the SPEs either as a manager, managing member or member without Beitler's agreement; (D) Bral would not do, or cause anything to be done,

that was in conflict with the requirement of prior approval of Beitler as broker of VREG and as otherwise required by CBRE and the laws and regulations of the State of California for corporate real estate brokerages; (E) Bral would not do, or cause anything to be done, whether directly or indirectly, that would interfere with BCRS's rights of broker representation and to commissions relative to any of the SPEs; (F) Bral would repay any money received by Bral in excess of his equal share; and (G) BCRS would receive its broker commission from any commission appropriately earned by VREG (collectively, the "Representations").

77. Each of the Representations made by Bral was in fact false.

78. Plaintiffs are informed and believe, and based on such information and belief allege, that Bral did not intend to, among other things: (A) divide the revenue from property management and commissions with Beitler, individually and on behalf of BCRS; (B) faithfully perform each of the VREG Agreements; (C) properly pay to Beitler his broker share of any commission related to non-BCRS commission matters; and (D) not interfere with BCRS's rights with regard to any of the SPEs, including the payment of any commissions.

79. Plaintiffs are informed and believe, and based on such information and belief allege, that Bral's real intent was to use the revenue received by VREG to develop the infrastructure of VREG for his singular benefit as an ongoing real estate commercial brokerage without being licensed as a broker under the laws of California and without allocating to Beitler, whether individually or on behalf of BCRS, an equal distribution and/or other payments.

80. Plaintiffs are informed and believe, and based on such information and belief allege, that Bral breached his duty in making the Representations, since Bral did not intend to reasonably perform under the terms of any of the VREG Agreements. Plaintiffs are further informed and believe, and based on such information and belief allege, that Bral was aware that he acted contrary and/or in breach of the VREG Agreements notwithstanding that Bral reaffirmed and ratified each of the VREG Agreements and related to Plaintiffs his purported intent to faithfully perform of each of the VREG Agreements and did so affirm and ratify each calendar year, through and including 2013.

81. Plaintiffs, and each of them, reasonably relied on Bral's Representations and such reliance was both reasonable and justified, since Bral was both a long standing business associate and friend of Beitler prior to the formation of VREG and, therefore, Plaintiffs had no reason to doubt Bral's Representations based on their past history of performance. Plaintiffs had a pre-existing relationship with Bral that on its face and from past practice validated trust. In addition, Bral reaffirmed at all times material hereto each of the VREG Agreements.

82. Had Plaintiffs known the truth of Bral's Representations and his real intent they would not have entered into the VREG Agreements, Beitler would not have placed his real estate broker license with VREG for VREG's use, and BCRS would not have made Expense Advances for VREG or deferred collection of such advances.

83. Plaintiffs did not discover, and were not on notice of, the falsity of Bral's Representations until in or about October 2013.

84. Plaintiffs have been damaged by Bral's failure to perform under each of the VREG Agreements and his misuse of Beitler's real estate broker license.

85. Plaintiffs' reliance on Bral's Representations was a substantial factor in and proximate cause of harm and damage to Plaintiffs.

86. Plaintiffs seeks both general and special damages, including interest at the maximum legal rate, in an amount according to proof at time of trial, but in no event less than this Court's minimum amount for unlimited civil jurisdiction.

87. Bral's Representations were false, willful and malicious, and done in conscious disregard for Plaintiffs' rights. Plaintiffs are therefore entitled to an award of punitive damages against Bral in amount according to proof.

**FIFTH CAUSE OF ACTION**

**FOR NEGLIGENT MISREPRESENTATION**

**(By Plaintiffs Against Bral and Does 1 – 50)**

88. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to 62, inclusive, and paragraphs 74 to 77, inclusive, and paragraphs 81 to 86, inclusive of this

Case 8:17-bk-10706-SC Claim 11 Filed 06/16/17 Desc Main Document Page 23 of 38

Complaint, and the same are incorporated herein by this reference as though set forth in full herein.

89. In making the Representations to Beitler, Bral had a duty to not make any Representations that were false and did not reflect anything other than his real intent.

90. Plaintiffs are informed and believe, and based on such information and belief allege, that Bral made the Representations without any reasonable grounds or basis for believing them to be true.

91. As a direct and proximate result of Bral's Representations and Plaintiffs' justifiable reliance thereon, Plaintiffs suffered general and special damages, including interest at the maximum legal rate, in an amount according to proof at time of trial, but in no event less than this Court's minimum amount for unlimited civil jurisdiction.

**SIXTH CAUSE OF ACTION**

**FOR BREACH OF ORAL CONTRACT**

**(By Plaintiffs Against Bral and Does 1 – 50)**

92. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to 68, inclusive, of this Complaint, and the same are incorporated herein by this reference as though set forth in full herein.

93. Each of the VREG Agreements is an oral contract.

94. Plaintiffs have performed all of their obligations under the VREG Agreements except those excused, waived, or discharged by Defendants' conduct.

95. In or about November 2013, Bral breached the VREG Agreements, by among other things, failing to perform those promises and undertake those actions as set forth in paragraphs 31, 32, 39, 41, 75 and 76 herein.

96. As a result of Bral's breach of the VREG Agreements, Plaintiffs have suffered general and compensatory damages, and incidental and consequential damages, in an amount according to proof, including interest at the maximum legal rate, but in no event less than this Court's minimum amount for unlimited civil jurisdiction.

SEVENTH CAUSE OF ACTION

FOR BREACH OF ORAL CONTRACT

**(By BCRS Against Bral, VREG and Does 1 – 50)**

97. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 to 68, inclusive, of this Complaint, and the same are incorporated herein by this reference as though set forth in full herein.

98. BCRS orally agreed to make Expense Advances on behalf of Bral, VREG and each of the agents acting under VREG, including, but not limited to, errors and omissions coverage, and Bral and VREG orally agreed to reimburse BCRS for all Expense Advances ("Expense Advance Agreement"). The Expense Advance Agreement is part of the Brokerage Agreement.

99. BCRS made Expense Advances on behalf of Bral, VREG and each of the agents acting under VREG, and BCRS has performed all of its obligations under the Expense Advance Agreement except those excused, waived, or discharged by Defendants' conduct.

100. Bral and VREG requested that BCRS defer collection of their repayment of the Expense Advances to a later date, since neither Bral nor VREG purportedly could afford to absorb such costs. BCRS agreed to defer collection of repayment of the Expense Advances.

101. Notwithstanding that Bral and VREG did not pay BCRS for such Expense Advances, Bral and VREG, for each calendar year in which Expense Advances were made, ratified and affirmed their obligations to BCRS under the Expense Advance Agreement to repay all outstanding Expense Advances, including those from prior years. Bral and VREG in calendar year 2013 again ratified and reaffirmed their obligations to BCRS under the Expense Advance Agreement to repay all outstanding Expense Advances.

102. In or about November 2013, Bral and VREG breached the Expense Advance Agreement by failing to repay to BCRS outstanding Expense Advances.

103. As a result of Bral's and VREG's breach of the Expense Advance Agreement, BCRS has suffered general and compensatory damages, and incidental and consequential

Case 8:17-bk-10706-SC Claim 11 Filed 06/16/17 Desc Main Document Page 25 of 38

damages, in an amount according to proof, including interest at the maximum legal rate, but in no event less than this Court's minimum amount for unlimited civil jurisdiction.

**EIGHTH CAUSE OF ACTION**

**FOR BREACH OF IMPLIED CONTRACT**

**(By Plaintiffs Against Bral and Does 1 – 50)**

104. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 to 68, inclusive, paragraphs 75 and 76, and paragraphs 97 to 103, inclusive of this Complaint, and the same are incorporated herein by this reference as though set forth in full herein.

105. In doing the acts and things hereinabove alleged, Plaintiffs and Bral entered into an implied contract ("Implied Agreement"), on the terms and conditions as alleged herein, pursuant to which, among other things, (i) Beitler and Bral would equally share in the management fees from the SPEs, (ii) BCRS would receive its equal share of brokerage commissions from any non-SPE transactions by or through VREG, (iii) BCRS would be reimbursed by Bral for any fees, costs and other Expense Advances on behalf of VREG and Bral, and (iv) Plaintiffs and Bral would equally share in the commissions earned from the leasing and sale of the SPEs' properties.

106. Plaintiffs performed all of their obligations under the Implied Agreement except those excused, waived, or discharged by Defendants' conduct.

107. In or about November 2013, Bral breached the Implied Agreement by, among other things, failing to perform those promises and undertake those actions as set forth in paragraphs 31, 32, 39, 41, 75, 76, and 98 herein.

108. As a result of Bral's breach of the Implied Agreement, Plaintiffs have suffered general and compensatory damages, and incidental and consequential damages, in an amount according to proof, including interest at the maximum legal rate, but in no event less than this Court's minimum amount for unlimited civil jurisdiction.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. FIRST CAUSE OF ACTION

a) General and special damages in an amount according to proof;

b) Interest at the maximum legal rate; and

c) Punitive damages according to proof.

2. SECOND CAUSE OF ACTION

a) For an accounting.

3. THIRD CAUSE OF ACTION

a) General and compensatory damages in an amount according to proof;

b) Incidental and consequential damages according to proof; and

c) Interest at the maximum legal rate.

4. FOURTH CAUSE OF ACTION

a) General and special damages in an amount according to proof;

b) Interest at the maximum legal rate; and

c) Punitive damages according to proof.

5. FIFTH CAUSE OF ACTION

a) General and special damages in an amount according to proof; and

b) Interest at the maximum legal rate.

6. SIXTH, SEVENTH and EIGHTH CAUSES OF ACTION

a) General and special damages in an amount according to proof; and

b) Incidental and consequential damages in an amount according to proof; and

c) Interest at the maximum legal rate.

7. ALL CAUSES OF ACTION

a) For costs of suit incurred herein; and

Case 8:17-bk-10706-SC Claim 11 Filed 06/16/17 Desc Main Document Page 27 of 38

b) For such other and further relief as the court deems just and appropriate.

DATED: April 21, 2014

LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations
TOM LALLAS

By: ______________________
TOM LALLAS
Attorneys for Plaintiffs
BARRY A. BEITLER and
BEITLER & ASSOCIATES, INC., doing business as Beitler Commercial Realty Services

30488

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

# EXHIBIT B

Case 8:17-bk-10706-SC Claim 11 Filed 06/16/17 Desc Main Document Page 29 of 38

Honorable Stephen M. Lachs (Ret.)
ADR SERVICES, INC.
1900 Avenue of the Stars, Suite 250
Los Angeles, California 90067
(310) 201-0010 PH
(310) 201-0016 FAX

ADR SERVICES, INC.

| BARRY A. BEITLER and BEITLER & ASSOCIATES INC. dba BEITLER COMMERCIAL REALTY SERVICES,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN BRAL; VENTURE REAL ESTATE GROUP, a California Corporation; and BRAL REALTY ADVISORS, INC.,<br><br>Defendants. | ADRS Case No. 16-6581-SML<br>LASC Case No. BC 543410<br><br>**CORRECTED REPORT AND RECOMMENDATION ON MOTIONS 101, 201-207**<br><br>Stephen M. Lachs,<br>Judge of the Superior Court (Ret.)<br><br>Hon. Maureen Duff-Lewis<br>Dept. 38 |
|---|---|

On October 5, 2016, you appointed me to be a discovery referee in the above-entitled case. Since that time I have had two conference calls with counsel – one to discuss the case and set up a plan for the filing of various motions, and the second was the call that allowed counsel to argue their motions. In the end, Plaintiff filed one motion and Defendants filed three motions, though one of them consisted of four separate motions. However, we all treated it as one motion.

As you may remember, this case is one of a series of cases litigated between these parties. Mr. Beitler and Mr. Bral were once partners in various real estate businesses and have had a falling out, leading to this litigation.

The briefs and exhibits that I reviewed for these motions filled a bankers box. There are references by both sides as to comments made by judges in the other cases, and actions taken by other judges in those cases. I will spare you all of this since they are not really relevant to these discovery motions. Either the parties are doing what they are required to do in this case, or they are not.

The parties numbered their motions to make things easier. The plaintiff used the 100 series and the defendants used the 200 series.

The second conference call, in which the motions were argued, occurred on December 15, 2016. Messrs Lallas and Jordan appeared for the Plaintiff and Messrs Chapman and Hoesly appeared for Defendants. Plaintiff had a court reporter present.

We began our conference call with argument concerning **Plaintiff's** motion, which was **Motion #101**.

This motion seeks an order to compel Defendant Bral to produce certain documents, the imposition of monetary sanctions, and an order that would lead to terminating sanctions as to all defendants if there was a further failure to comply with discovery obligations.

This case involves allegations that Bral transferred money to entities which he controlled, which money should have been shared with Beitler. Bral used QuickBooks for his basic accounting. The information which you enter into QuickBooks and which shows up on your computer, is called either raw data or native files. From that data, a person can produce various reports. While Bral has produced reports for Beitler, he, Beitler, is seeking the raw data from the computer. At this point there is no question that the raw data exists and that it is able be produced.

///

Case 8:17-bk-10706-SC Claim 11 Filed 06/16/17 Desc Main Document Page 31 of 38

Bral has taken the position that Beitler never requested the raw data in his discovery motions and that the Court never ordered that they be produced.

On July 14, 2016, this Court ordered as follows:

"The court is informed that parties meet (sic) and conferred and agreed after deposition of defendant John Bral that the following documents would be produced as reflected in exhibit 8 of declaration of Christian Jordan which is dated June 02, 2016 letter addressed to Mr. Chapman.

Court orders compliance with production as reflected in exhibit 8 without objection by July 26, 2016."

Thus we should look at the letter of June 2nd, which was Exhibit 8, to see what was ordered produced by the Court.

In that exhibit, at the bottom of the first page, you find Request for Production No. 1. The status, which is what the parties agreed to and which was ordered produced by the Court, says, "Bral will produce all responsive documents not already produced, including, by way of example and without limitation, general ledgers, QuickBooks reports, check registers, and cash receipts and disbursement ledgers."

The language was clear – Bral was to produce all responsive documents and the brief list gave examples but did not limit what was to be turned over to just those items. Clearly The QuickBook native files would fall under this request.

At the July 14th hearing, the Court ordered Plaintiff to give notice. Notice was personally served and faxed on July 21, 2016. In addition, Plaintiff e-mailed a letter to counsel for

Defendants in which Plaintiff took pains to point out that the raw data, or native files, were required to be produced. Obviously Mr. Jordan, for Plaintiff, had no obligation to spell out for Defendant just what "all responsive documents" might include, but he did. And, in this letter, he states that, "QuickBook files, including native files, were also repeatedly referenced in the Application the Court granted today and in the Jordan Declaration in support thereof."

There is no evidence that at any time after receipt of that letter, Defendant ever contended that Jordan was wrong, and that native files were not required to be produced. That is, until Defendant filed his opposition to Motion 101 in which he states on page 8, "**Importantly, there was no mention of the raw data!** (his emphasis). It simply was never discussed or there would have been a reference to it. Because it was not discussed, it need not be produced. Even the Court noted that, including in the October 4 minute order "The 'issue' of "raw" QuickBooks data appears to be new and not argued before."

I do not know the context of the Court's comment, but it was certainly not a statement that Defendant need not produce the raw data. Had Defendant wanted to, in the discussions that resulted in Exhibit 8, he could have insisted that production be limited to only those documents listed. Instead, he agreed that the list was just a list of examples and that he was required to produce everything, whether in the list of examples or not. And he certainly knew for months that Plaintiff was seeking the raw data. At the least, after Mr. Jordan's August 12th e-mail, he could have cleared this up with Mr. Jordan, or, at the most, sought the Court's ruling as to whether it was required to be produced.

I would recommend that the Court order Mr. Bral to produce the raw data from QuickBooks.

In addition, as a safety precaution, Defendant should be ordered to provide a copy of the same raw data under seal to the Court. That way there will be a copy available in the future if either side contends that the other side manipulated the data.

Case 8:17-bk-10706-SC Claim 11 Filed 06/18/17 Desc Main Document Page 33 of 38

Both the copy of the data for Plaintiff and that for the Court should be produced within 10 days of the Court's order.

Plaintiff also requested tax returns for VREG and BRAI for the years 2012, 2013, 2014 and 2015. Defendant's position apparently is that he need only turn over documents that are physically in his possession. The tax returns appear to be in the possession of his accountant. Defendant need only instruct his accountant to provide those returns. He should be ordered to produce the returns within 10 days of the date of the Court's order.

Plaintiff requests a triggering provision that would state that if Defendant failed to comply with the Court's order, terminating sanctions would be imposed. Unfortunately too much can happen in the world for this type of order. Rather, if Plaintiff feels there has been noncompliance, he should be able to seek a date for a hearing on an ex parte motion and Defendant should be given an opportunity at that hearing to explain why he has not complied with the Court's order. If the Court is satisfied that there was noncompliance and there was no valid reason for it, then terminating sanctions will be imposed.

Finally Plaintiff requests an award of monetary sanctions. It is my recommendation that the Court award monetary sanctions to Plaintiff. This motion, in my opinion, was unnecessary and Plaintiff should not have to pay his attorneys for all of the work involved.

**Defendant's Motion #201**

This is Defendant's motion to compel the deposition of Plaintiff along with documents requested in the notice.

Plaintiff suspended the deposition of Defendant because of Defendant's failure to produce documents that were requested of him. The deposition of Plaintiff was noticed after that

suspension. It is simply a matter of fairness that a party should not be able to depose the other party while his own deposition has been suspended as the result of his failure to produce documents.

I recommend that the Court deny Defendant's Motion #201. Further, within 10 days after completion of Defendant's deposition, the parties shall mutually agree to a date for the deposition of Plaintiff. If they cannot agree, Defendant will be able to give notice of an ex parte hearing with the Court in order to set the date.

**Defendant's Motion #202 through #206**

These motions were handled as one motion.

Plaintiff had subpoenaed documents from various third parties who are accountants. These were motions by Defendant to quash each of these document requests and/or for a protective order.

Defendant's position was that the parties had agreed to limit the production of these documents to a certain year. Yet it is clear that while certain items were limited to a year, the bulk were not. The motions to quash should be denied as to every category unless there was a written agreement to limit a particular category to one year.

**Defendant's Motion #207**

This motion deals with amended responses to written discovery that was to be provided by Plaintiff. Defendant says that Plaintiff refused to inform Defendant as to when the responses would be provided and that Defendant was forced to file this motion to compel.

///

///

Case 8:17-bk-10706-SC Claim 11 Filed 06/16/17 Desc Main Document Page 35 of 38

It is agreed by the parties that Plaintiff provided the amended responses three weeks before this motion was heard, and so it is now just Defendant's request for sanctions that needs be considered.

Apparently Plaintiff provided certain amended responses prior to the filing of this motion, but some were not provided. As indicated, the parties agree that all amended responses were provided three weeks prior to the hearing of this motion, but this was a date after the motion was filed. I accept that Plaintiff's attorney sought to reassure counsel for Defendant that the remainder of the amended responses would be provided, but no specific date was ever given. And it should be pointed out that counsel for Plaintiff kept in touch with Defendant during this time.

These parties are involved in some terribly contentious litigation. In such a case, it behooves counsel to be specific about such things as dates when discovery responses will be provided since counsel will be aware that the other side will jump on any opportunity to file a motion. In this instance, there was no way for Defendant to know when he would receive the amended responses that he was entitled to. It was Plaintiff's burden to provide a specific date and live up to that date, in order to prevent this very motion.

At the same time, it appears that this delay has in no way prejudiced Defendant except for having prepared the motion.

I would recommend that sanctions be awarded to Defendant in a sum to compensate for the preparation of this motion.

///

///

///

///

Case 8:17-bk-10706-SC Claim 11 Filed 06/16/17 Desc Main Document Page 36 of 38

**In summary, I recommend to the Court as follows:**

As to Motion #101

1. Defendant Bral be ordered to produce to the Plaintiff, the raw data from QuickBooks within 10 days of the date of the Court's order.

2. Further, at the same time, Defendant is to provide the same raw data to the Court under seal.

3. Defendant shall produce tax returns for Defendant VREG and Defendant BRAI for the years 2012, 2013, 2014 and 2015 within 10 days of the Court's order.

4. The Court should order that at such time as Plaintiff believes that these orders have not been complied with, he may set a hearing on ex parte motion so that the Court can consider terminating sanctions if the Court finds that these orders have not been complied with.

5. The Court should order monetary sanctions against Defendant.

As to Motion #201

1. Defendant's motion should be denied.

2. Within 10 days of the completion of Defendant's deposition, the parties shall mutually agree to a date for Plaintiff's deposition. If they cannot, Defendant may request a hearing upon ex parte notice, in order to have the Court set the date.

As to Motions #202 through #206:

1. The Defendant's motion to quash should be denied as to every category except those in which there was a written agreement to limit the discovery to one year.

As to Motion #207:

1. The only part of the motion that remains is the request for sanctions and sanctions should be awarded to Defendant to compensate for the cost of preparing the motion.

Counsel for Plaintiff should be ordered to prepare an order for the Court that encompasses these rulings.

RESPECTFULLY,

Hon. Stephen M. Lachs, Referee
Judge of the Superior Court, Ret.

Dated: 2/22/17

Case 8:17-bk-10706-SC Claim 11 Filed 06/16/17 Desc Main Document Page 38 of 38

# PROOF OF SERVICE

**State of California**
**County of Los Angeles**

I certify that I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1900 Avenue of the Stars, Suite 250, Los Angeles, California 90067.

On February 23, 2017, I served the foregoing document described as the **CORRECTED REPORT AND RECOMMENDATION ON MOTIONS 101, 201-207** on the interested parties in this action as follows:

Tom P. Lallas, Esq.
Mark D. Hurwitz, Esq.
Christian A. Jordan, Esq.
LEVY SMALL & LALLAS
815 Moraga Drive
Los Angeles, California 90049
tlallas@lsl-la.com
mhurwitz@lsl-la.com
cjordan@lsl-la.com
cc: kfinn@lsl-la.com
(310) 471-3000
**VIA U.S. MAIL AND E-MAIL ONLY**

John M. Whelan, Esq.
Matthew M. Hoesly, Esq.
SAMINI SCHEINBERG
840 Newport Center Drive, Suite 700
Newport Beach, California 92660
jwhelan@saminilaw.com
mhoesly@saminilaw.com
cc: cthornton@saminilaw.com
(949) 724-0900
**VIA U.S. MAIL AND E-MAIL ONLY**

LLOYD K. CHAPMAN, ESQ.
4558 Sherman Oaks Avenue, 2nd Floor
Sherman Oaks, California 91403
(818) 304-8412
**VIA U.S. MAIL ONLY**

Hon. Maureen Duffy-Lewis
Dept. 38
LOS ANGELES SUPERIOR COURT
OF CALIFORNIA
111 North Hill Street
Los Angeles, California 90012
**VIA U.S. MAIL ONLY**

__X__ **BY U.S. MAIL,** I placed a true copy of the document described above in a sealed envelope and caused such envelope with postage thereon to be placed in the United States mail at Los Angeles, California.

__X__ **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address *lara@adrservices.org* to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

__X__ **STATE** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 23, 2017 at Los Angeles, California

Lara Weiss

# EXHIBIT "B"

# POC NO. 19

**Fill in this information to identify the case:**

Debtor 1 JOHN JEAN BRAL

Debtor 2 (Spouse, if filing) __________

United States Bankruptcy Court for the: Central District of California

Case number 8:17-BK-10706-SC

Official Form 410

# Proof of Claim

4/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

Steward Financial LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor __________

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? __________

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|
| Name: Gary E. Klausner, Esq. | Name: Steward Financial LLC c/o Barry Beitler |
| Number Street: 10250 Constellation Blvd., Suite 1700 | Number Street: 825 Barrington Avenue |
| City: Los Angeles State: CA ZIP Code: 90067 | City: Los Angeles State: CA ZIP Code: 90048 |
| Contact phone: (310) 229-1234 | Contact phone: |
| Contact email: GEK@LNBYB.COM | Contact email: bbeitler@beitler.com |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) ______ Filed on ______ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? __________

Case 8:17-bk-10706-SC Claim 19 Filed 06/16/17 Desc Main Document Page 2 of 31

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?**

$ At least $1,100,000 not including recoverable fees, costs and interest.

**Does this amount include interest or other charges?**

☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Claims in Case No. 30-2016-00834111 in Orange County Superior Court

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: ______________________

**Basis for perfection:** ______________________

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $__________

**Amount of the claim that is secured:** $__________

**Amount of the claim that is unsecured:** $__________ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $__________

**Annual Interest Rate** (when case was filed) ______%

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $__________

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: ______________________

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check all that apply:* — **Amount entitled to priority**

- ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). $__________
- ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). $__________
- ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). $__________
- ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). $__________
- ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). $__________
- ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. $__________

* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 06/15/2017
MM / DD / YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

Name: Barry Beitler (First name / Middle name / Last name)

Title: Authorized Agent

Company: Steward Financial LLC
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 825 Barrington Avenue (Number Street)
Los Angeles CA 90049 (City State ZIP Code)

Contact phone ________ Email bbeitler@beitler.com

   

## ATTACHMENT TO PROOF OF CLAIM OF STEWARD FINANCIAL LLC BASED ON ORANGE COUNTY SUPERIOR COURT CASE NO. 30-2016-00834111

On or about June 9, 2014, Steward Financial LLC ("Steward" or "Claimant") purchased from First-Citizens Bank & Trust Company ("First Citizens") all of First Citizens' rights with respect to a loan due and owing by Ocean View Medical Investors, LLC ("Ocean View") that had been in default for two years, and the associated loan documents, including without limitation a deed of trust on Ocean View's real property securing the loan ("Ocean View Property")

Once Steward acquired the Ocean View loan claims, notice of a trustee's foreclosure sale of the Ocean View Property duly issued. The foreclosure sale, after having been rescheduled multiple times, was set for November 21, 2014. At the foreclosure sale that morning, Steward acquired the Ocean View Property for a credit bid of $3,000,000.00.

After the foreclosure sale, however, Steward was informed that Ocean View purportedly filed for bankruptcy that morning in this Court as Case No. 8:14-bk-16860-SC (the "Ocean View Voluntary Bankruptcy"), which voided the foreclosure sale. Even though Beitler and Bral were both managers of Ocean View and a bankruptcy, therefore, could not have been filed by Ocean View without Beitler's approval, Bral signed the bankruptcy petition on behalf of Ocean View and signed the accompanying declaration. Beitler did not authorize, was not asked to authorize, and was not aware of the Ocean View Voluntary Bankruptcy until after it was filed.

On February 6, 2015, this Court entered its order dismissing the Ocean View Voluntary Bankruptcy on the ground that the bankruptcy filing was not authorized. In deliberate violation of federal law, including but not limited to the United States Bankruptcy Code, Bral then caused to be filed in this Court on February 9, 2015 a purported involuntary bankruptcy case against Ocean View as Case No. 8:15-bk-10624-SC ("Ocean View Involuntary Bankruptcy"), which the Court dismissed on February 12, 2015.

After both of the purported Ocean View bankruptcies had been dismissed, on March 20, 2015 another foreclosure sale of the Ocean View Property was held. At this sale, Steward again purchased the Ocean View Property for a credit bid, but this time was forced to bid $4,100,000, which was $1,100,000 above the price at which Steward would have purchased the Ocean View Property on November 21, 2014 but for the improperly filed Ocean View Voluntary Bankruptcy (the "$1.1 Million Foreclosure Injury").

To enforce its rights against Bral, including the right to damages from Bral to compensate Steward for the $1.1 Million Foreclosure Injury, Steward filed an action in Orange County Superior Court, Case No. 30-2016-00834111, which remains pending and has been stayed as a result of this bankruptcy case. A true and correct copy of the complaint filed in the Orange County Superior Court is attached as Exhibit "A" hereto. The allegations supporting this claim are also set forth in Steward's pending adversary action against Bral herein, Adversary No. 8:17-ap-01095-SC.

Case 8:17-bk-10706-SC Claim 19 Filed 06/16/17 Desc Main Document Page 5 of 31

**Reservation of Rights**

Claimant reserves the right to (i) amend, update and/or supplement this Proof of Claim at any time and in any respect, (ii) file additional proofs of claim for additional claims which may be based on the same or additional documents or other liability or indebtedness of the Debtor to Claimant (iii) file a request for payment of administrative expenses in accordance with 11 U.S.C. §§ 503 and 507.

In addition to the foregoing, Claimant reserves all rights with respect to (a) any indebtedness owed to Claimant by any non-debtor affiliate or other entity related to the Debtor, and (b) any other amounts that may be owing to Claimant in respect of interest, fees, indemnities, costs and expenses to the extent permitted by applicable law.

Nothing contained in this Proof of Claim shall be construed as limiting Claimants rights, remedies and interests.

The filing of this proof of claim is not: (i) a waiver or release of Claimant's rights against any person, entity or property; (ii) a waiver of the right to move to withdraw the reference, or otherwise to challenge the jurisdiction of this Court, with respect to the subject matter of this Proof of Claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving this Proof of Claim, or to assert that the reference has already been withdrawn with respect to the subject matter of this claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving this Proof of Claim; (iii) an election of remedy; or (iv) a waiver of any past, present or future defaults or events of default. Claimant specifically preserves all of Claimant's procedural and substantive defenses and rights with respect to any claim that may be asserted against Claimant by the Debtor or any of its debtor or non-debtor affiliates, or by any trustee for this estate.

# EXHIBIT "A"

LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations
TOM LALLAS (SBN 66512)
815 Moraga Drive
Los Angeles, California 90049-1633
Telephone: (310) 471-3000
Facsimile: (310) 471-7990
Email: Tlallas@lsl-la.com

*Attorney for Plaintiff,*
*Steward Financial LLC*

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange
**02/05/2016** at 04:15:18 PM
Clerk of the Superior Court
By Trucmy Vu,Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ORANGE

STEWARD FINANCIAL LLC, a California Limited Liability Company

Plaintiff

v.

JOHN BRAL, an individual, JAMES D. HORNBUCKLE, an individual, CORNERSTONE LAW CORP., a California corporation, and Does 1 through 30, Inclusive,

Defendants

Case No.: 30-2016-00834111-CU-BT-CJC
Judge John C. Gastelum

COMPLAINT FOR:

1. ABUSE OF PROCESS;
2. ABUSE OF PROCESS:
3. INTENTIONAL INTERFERENCE WITH CONTRACT; AND
4. NEGLIGENT INTERFERENCE CONTRACT

Plaintiff Steward Financial LLC, a California limited liability company ("Plaintiff"), in its Complaint against defendant John Bral, an individual ("Bral"), James D. Hornbuckle, an individual ("Hornbuckle"), Cornerstone Law Corp., a California corporation ("Cornerstone"), and Does 1 through 30, Inclusive ("Doe Defendants") [Bral, Hornbuckle, Cornerstone, and Doe Defendants shall be collectively, "Defendants"] does hereby allege as follows:

///

///

Case 8:17-bk-10706-SC Claim 19 Filed 06/16/17 Desc Main Document Page 8 of 31

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is a California limited liability company lawfully organized and existing under and by virtue of the laws of the State of California and at all material times hereto was, and is, in good standing. Plaintiff was formed on or about March 17, 2014. Plaintiff's principal business office is located at 825 South Barrington Avenue, Los Angeles, California 90049. Plaintiff is an affiliate of Barry Beitler, an individual ("Beitler").

2. Bral was, and is, at all times material hereto a resident of the County of Orange, State of California.

3. Hornbuckle was, and is, at all material times hereto a licensed attorney in good standing in the State of California.

4. Plaintiff is informed and believes, and upon such information and belief thereon alleges, that Cornerstone was, and is, at all times mentioned herein a California corporation organized by the laws of the State of California and at all such times was, and is, registered with the State Bar of California as a corporation engaged in the practice of law. Plaintiff is further informed and thereon alleges that at all times mention herein Cornerstone's principal business office is located in the County of Orange, State of California.

5. Plaintiff is further informed and believes, and upon such information and belief thereon alleges, that at all times material hereto Hornbuckle, was, and is, an officer, employee, agent, and/or representative of Cornerstone and that the acts and omissions alleged against Hornbuckle in this Complaint were undertaken by Hornbuckle on behalf of Cornerstone with its approval and consent.

6. Plaintiff is informed and believes, and upon such information and belief thereon alleges, that at all times material hereto, Hornbuckle is a shareholder of Cornerstone.

7. Hornbuckle on behalf of Cornerstone represented Ocean View Medical Investors, LLC,

a California limited liability company ("OVMI") in OVMI's filing of that certain Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court, Central District of California, Santa Ana Division, Case No: 8:14-bk-16860-SC, filed on November, 21, 2014 ("OVMI Bankruptcy").

8. The true names or capacities of all Defendants DOES 1 through 10 are unknown to Plaintiff who sued them by such fictitious names under *Cal. Code Civ. Proc.* § 474. Each defendant DOE caused Plaintiff injury and damage. Plaintiff will amend this Complaint to allege the true names and capacities of Defendants, whether individual, corporate, associate or otherwise, when the same have been ascertained. Plaintiff is informed and believes, and based on such information and belief alleges, that each fictitiously named Defendant is in some manner responsible for the damages alleged.

9. Plaintiff is informed and believes, and based on such information and belief thereupon alleges, that Defendants, and each of them, were, and are, the agents, partners, joint venturers, associates and employees of each other and were, and at all such times mentioned herein and have acted in the course and scope of such agency, partnership, association or employment. Plaintiff is further informed and alleges that the acts done by each of the Defendants were done with the consent, acknowledgment and/or ratification by each of the Defendants for each of their individual benefit.

10. Jurisdiction and venue are established in the County of Orange, State of California ("Orange County") based on, among other things, the following: (i) Bral at all times material hereto resides in Orange County; (ii) the acts and omissions by Bral, Hornbuckle and Cornerstone occurred in Orange County; and (iii) the OVMI Bankruptcy was filed in Orange County; and (iv) the November 21, 2014 auction sale for the Property (defined in paragraph 11) as detailed in this Complaint, occurred in Orange County.

///

///

Case 8:17-bk-10706-SC Claim 19 Filed 08/18/17 Desc Main Document Page 10 of 31

## GENERAL ALLEGATIONS

### A. OVMI.

11. At all times material hereto, OVMI did own as a single purpose entity that certain real property commonly known and located at 441 Old Newport Road, in the City of Newport Beach, State of California ("Property"). OVMI and its management are governed by an operating agreement dated March 29, 2005 ("OVMI Operating Agreement"). The OVMI Operating Agreement has not been amended. A true and correct copy of the OVMI Operating Agreement is attached hereto as Exhibit "1" and is incorporated in full herein by this reference as if set forth specifically herein.

12. Pursuant to Sections 1.1, 2.1 and 5.3.A of the OVMI Operating Agreement, the rights, powers and obligations of the Members and Manager of OVMI are subject to the California Corporations Code, as amended from time to time, governing limited liability companies ("LLCs").

13. Section 5.1.A of the OVMI Operating Agreement provides, in material part, that:

> "The business ... and affairs of the Company shall be managed exclusively by the Manager. Except for situations in which the approval of the Members is expressly required by the the Articles or this Agreement, the Manager shall have full, complete and exclusive authority, power and discertion to manage and control the business ... and affairs of the Company ... No Member who is not a Manager shall have any authority to act for or ... on behalf of the Company."

14. Section 1.20 of the OVMI Operating Agreement states that the term "Manager" shall mean Bral and Beitler, collectively. Section 5.2. A of the OVMI Operating Act states that the "Company shall have two (2) Managers." Other than Bral and Beitler, there has not been any other person serving as a Manager of OVMI.

15. Section 5.4 of the OVMI Operating Agreement provides that Members shall have no power to participate in the management of the Company except as expressly authorized by the OVMI Operating Agreement, the Articles of Organization, or required by the Beverly-Killea Limited Liability

Case 8:17-bk-10706-SC Claim 19 Filed 06/18/17 Desc Main Document Page 11 of 31

Company Act.

16. Section 5.1.B of the OVMI Operating Agreement provides that any and all obligations outside the ordinary course of business shall require the signatures of both persons comprising the Manager. Similarly, California Corporations Code section 17704.07(c)(4)(C) provides that the consent of all members of a limited liability company is required for any "act outside the ordinary course" of an LLC's activities.

17. Beitler and Bral were also, and are, at all times herein mentioned members of OVMI. Exhibits A-1 and A-2 of the OVMI Operating Agreement reflect that Beitler and Bral are Class A and Class B members of OVMI. Beitler and Bral each hold a larger percentage ownership interest in OVMI than does any other member, but neither Beitler nor Bral individually own a majority interest in OVMI.

18. No provision of the OVMI Operating Agreement permits a bankruptcy petition to be filed on behalf of OVMI without approval of the Manager.

19. The OVMI Operating Agreement does not expressly include among the powers of its Manager the specific right to file a bankruptcy proceeding on behalf of OVMI exclusively without approval of all of the Members of OVMI.

20. Any amendment to the authority granted to the Manager under the OVMI Operating Agreement, including the number of persons constituting the "Manager" requires the unanimous approval of the Members of OVMI under Section 4.7.A (iii).

21. Any change to the purpose of OVMI requires unanimous approval of the Members under Section 4.7.C (ii).

22. Section 4.8.E. of the Operating Agreement provides that any action approved at a meeting, other than by unanimous approval of those entitled to vote, shall be valid only if the general nature of the proposal was stated in the notice of meeting or in any written waiver of notice.

Case 8:17-bk-10706-SC Claim 19 Filed 08/18/17 Desc Main Document Page 12 of 31

23. Section 4.8.I. of the OVMI Operating Agreement provides that an action by the Members may be taken without a meeting if a consent in writing setting forth that action so taken, is (i) signed and delivered to the Company; and (ii) includes at least the number of votes which would be necessary to authorize taking such action at a meeting at which all Members entitled to vote were present and voted.

24. Section 4.8.I. of the OVMI Operating Agreement further provides that unless the consents of all Members entitled to vote have been solicited in writing, notice shall be given at least ten (10) days before the consummation of the action authorized by such approval to those members who have not consented.

25. Section 4.8.H. of the OVMI Operating Agreement requires that any action taken at a meeting without notice must be authorized by an executed and valid written waiver of notice and consent to the meeting.

**B. THE LOAN.**

26. First Regional Bank ("FRB") originally extended a loan to OVMI (the "Loan"), evidenced by, among other things, that certain Promissory Note ("Note"), as subsequently amended, and a deed of trust recorded in the Official Records of Orange County, California, on October 12, 2005, as Instrument No. 2005000821196 (the "Deed of Trust"). The Loan is guaranteed jointly and severally by both Bral and Beitler. Bral executed and delivered to FCB a Guaranty dated February 22, 2011 ("Bral Guaranty").

27. In or about 2012, First Citizens Bank ("FCB") acquired from the Federal Deposit Insurance Corporation, as Receiver for FRB, all rights, title, interests and benefits of the Loan, including as established under the loan documents.

28. The Loan matured on May 1, 2012 ("Maturity Date"), at which time the entire

Case 8:17-bk-10706-SC Claim 19 Filed 08/18/17 Desc Main Document Page 13 of 31

indebtedness of the Loan (the "Indebtedness") became immediately due and payable to FCB, and at such time was not satisfied by OVMI constituting a default under the Loan ("Maturity Default"). Nor did any guarantor of the Loan satisfy the Indebtedness causing a separate default, including under the Bral Guaranty ("Bral Guaranty Default").

29. As a result of OVMI's and Bral's failure to address the Maturity Default, FCB, sixteen (16) months after the Maturity Date, pursued collection of the Indebtedness.

30. On or about September 4, 2013, FCB filed its Verified Complaint ("FCB Complaint") for Breach of Guaranty against Beitler and Bral in the Superior Court of the State of California for Los Angeles County, Case No.: BC520329. In addition, FCB, commenced a non-judicial foreclosure ("Foreclosure") against the Property, by causing a Notice of Default and Election to Sell under Deed of Trust recorded in the Official Records of Orange County, California, on November 1, 2013, as Instrument No. 20130006610451 ("NOD").

31. As a result of the Maturity Default, and subsequently as a result of the FCB Complaint and Foreclosure, Beitler solicited Bral and each of the Members of OVMI to join him in making additional capital contributions, based on their respective membership interest in OVMI, to address the Indebtedness owed to FCB. Neither Bral nor any of the Members of OVMI agreed to make any such additional capital contributions or propose any commercially reasonable financial restructuring of OVMI.

## C. LOAN PURCHASE.

32. On or about June 13, 2014, FCB and Plaintiff executed and entered into that certain Non-Recourse Loan Sale Agreement ("Loan Sale Agreement"), pursuant to which, among other things, FCB agreed to sell, and Plaintiff as purchaser agreed to and did purchase, any and all of FCB's rights, title and interest in to the Loan. A true and correct copy of the Loan Sale Agreement is attached hereto as

Exhibit "2" and incorporated in full herein by this reference as if set forth in full here.

33. Pursuant to the Loan Sale Agreement, FCB assigned to Plaintiff the Deed of Trust and Assignment of Rents under that certain instrument entitled Assignment of Deed of Trust and Assignment of Rents dated June 13, 2014 recorded in the Official Records of Orange County, California, on June 13, 2014, as Instrument No. 2014000234100 ("Deed of Trust Assignment"). A true and correct copy of the Deed of Trust Assignment is attached hereto as Exhibit "3" and is incorporated herein by this reference as if set forth in full herein.[1]

**D. NON-JUDICIAL FORECLOSURE.**

34. Plaintiff, on or about June 24, 2014, pursuant to its rights under the Deed of Trust Assignment substituted Special Default Services as Trustee of the Deed of Trust and a Notice of Sale was recorded and published under Trustee Sale No. CA01000359-14, which thereafter noticed a sale of the Property on September 22, 2014, subsequently continued the sale date to October 10, 2014, and thereafter set a sale date for November 21, 2014.

35. At no time did Bral did object to any of the scheduled sale dates for the Property or solicit Beitler to undertake any action as a Manager of OVMI with regard to the sale or sale dates.

36. At no time did Bral communicate with any representative of Plaintiff with regard to any of the scheduled sale dates.

37. At no time prior to the November 21, 2014 sale date did Bral or any other Member of OVMI give notice of any meeting of the Members of OVMI, inclusive of Beitler, to, among other things, address the pending Foreclosure sale of the Property or discuss the filing of a bankruptcy proceeding.

---

[1] Plaintiff, in order to purchase the Loan, secured financing from Hankey Capital, LLC ("HC"), which required the Deed of Trust Assignment be assigned to HC as collateral for its financing. Notwithstanding the aforementioned, Plaintiff at all times remained the real party in interest in the Deed of Trust Assignment and directed and controlled the non-judicial foreclosure of the Property under the Deed of Trust.

Case 8:17-bk-10706-SC Claim 19 Filed 08/18/17 Desc Main Document Page 15 of 31

38. At no time prior to November 21, 2014, did Bral give notice of any action taken by OVMI without meeting by any of the Members of OVMI with regard to, among other things, the pending Foreclosure sale of the Property or the filing of a bankruptcy proceeding.

39. On November 21, 2014, the Foreclosure sale of the Property occurred at approximately 9:13 AM and resulted in a reversion of the Property to Plaintiff under the Deed of Trust Assignment as a result of a credit bid in the amount of $3,000,000.00 ("November 2014 Trustee Sale"). Attached hereto as Exhibit "4" is a true and correct email dated November 21, 2014 ("November 21st Email") by Ann Vo of Special Default Services, Trustee of the Deed of Assignment, memorializing that Trustee Sale No: CA01000359-14 resulted in the reversion of the Property to the beneficiary (Plaintiff) of the Deed of Trust Assignment. A true and correct copy of the November 21st Email is attached hereto as Exhibit "4" and is incorporated herein by this reference as if set forth in full herein.

## E. FILING OF OVMI BANKRUPTCY.

40. Plaintiff, shortly after the November 2014 Trustee Sale, was informed that OVMI filed a bankruptcy proceeding earlier that morning, November 21, 2014 (the "OVMI Bankruptcy").

41. The OVMI Bankruptcy triggered an automatic stay of legal proceedings related to OVMI, including the November 2014 Trustee Sale. As a result, the November 2014 Trustee Sale was voided and Plaintiff was not allowed to acquire the property for the credit bid of $3,000,000.

42. The purported authorization by OVMI to file the OVMI Bankruptcy is contained in the OVMI Bankruptcy filing. Bral executed such written authorization for the filing of the OVMI Bankruptcy on behalf of OVMI in his capacity as Manager.

43. The Declaration of Authorized Signatory of Debtor by Bral attached to the OVMI Bankruptcy provides in material part that:

"I, the undersigned, hereby declare under penalty of perjury that: (1) I have been

EXHIBIT "B"
Page 102

Case 8:17-bk-10706-SC Claim 19 Filed 06/16/17 Desc Main Document Page 16 of 31

> authorized by the Debtor . . . (Filing Party) to sign and to file, on behalf of the Filing Party, the above-referenced document being filed electronically (Filed Document); (2) I have read and understand the Filed Document; (3) the information provided in the Filed Document is true, correct and complete; (4) the "/s/," followed by my name, on the signature lines for the Filing Party in the Filed Document serves as my signature on behalf of the Filing Party and denotes the making of such declarations, requests, statements, verifications and certifications by me and by the Filing Party to the same extent and effect as my actual signature on such signature lines; ... " ("Bral Declaration to OVMI Bankruptcy")

A true and correct copy of the Bral Declaration to OVMI Bankruptcy is attached hereto as Exhibit "5" and is incorporated in herein by this reference as if set forth in full herein.

44. The Declaration of Attorney For Filing Party attached to the OVMI Bankruptcy provides in material part that:

> "I, the undersigned Attorney for the Filing Party, hereby declare under penalty of perjury that: (1) the "/s/," followed by my name, on the signature lines for the Attorney for the Filing Party in the Filed Documents serves as my signature and denotes the making of such declarations, requests, statements, verifications and certifications to the same extent and effect as my actual signature on such signature lines; (2) an authorized signatory of the Filing Party signed the *Declaration of Authorized Signatory of Debtor or Other Party* before I electronically submitted the Filed Document for filing with the United States Bankruptcy Court for the Central District of California; . . . ." ("Hornbuckle Declaration to OVMI Bankruptcy")

A true and correct copy of the Hornbuckle Declaration to OVMI Bankruptcy is attached hereto as Exhibit "5" and is incorporated by this reference as if set forth in full herein.

45. Plaintiff is informed and believes, and based on such information and belief thereon alleges, that Bral acted independently in the filing of the OVMI Bankrupt and without the knowledge or authorization of all of the OVMI Members or the knowledge or authorization by Beitler as a Manager.

46. Neither Plaintiff nor Beitler had any prior notice of Bral's intent to file the OVMI Bankruptcy.

47. At no time did Beitler authorize, approve, or consent to the filing of any bankruptcy proceeding by OVMI, whether in Beitler's capacity as a Manager or as a Member of OVMI.

Case 8:17-bk-10706-SC Claim 19 Filed 06/16/17 Desc Main Document Page 17 of 31

48. No meeting of Manager or the Members of OVMI was duly noticed, whether pursuant to Section 4.8 of the OVMI Operating Agreement or otherwise. In addition, no such meeting was held at which both (i) a required quorum was present and (ii) authorization was granted to Bral to file a bankruptcy case on behalf of OVMI.

49. Plaintiff is informed and believes, and upon such information and belief thereon alleges, that Bral retained Cornerstone as the law firm to represent OVMI in the OVMI Bankruptcy and that Hornbuckle of Cornerstone was assigned to represent OVMI on behalf of Cornerstone.

50. Plaintiff is informed and believes, and upon such information and belief thereon alleges, that neither Hornbuckle nor Cornerstone determined, among other things, the following prior to filing the OVMI Bankruptcy:

(a) whether the OVMI Operating Agreement permitted the filing of a bankruptcy,

(b) whether the OVMI Operating Agreement permitted the filing of a bankruptcy without unanimous approval by all of the OVMI Members,

(c) whether the OVMI Operating Agreement rested authority to file a bankruptcy with the Manager of OVMI,

(d) whether Bral was authorized to act independently of Beitler as a Manager of OVMI for purposes of authorizing a bankruptcy filing by OVMI,

(e) whether Beitler was properly removed as a Manager and Bral thereby was authorized to singularly act as Manager of OVMI without another person named as a Manager,

(f) whether the filing of a bankruptcy was in the course and scope of the Manager's authority without approval of all of the Members of OVMI,

(g) whether (i) any written authorizations by the Members of OVMI with regard to their approval or consent to the filing of a bankruptcy, if they existed, were valid under, and (ii) whether such

Case 8:17-bk-10706-SC Claim 19 Filed 06/16/17 Desc Main Document Page 18 of 31

written authorizations were executed pursuant to, the OVMI Operating Agreement, including, but not limited to, Section 4.8,

(h) whether any written authorizations regarding the dismissal of Beitler as a Manager of OVMI, if they existed, were valid under the OVMI Operating Agreement,

(i) whether any actions taken without a meeting by the Members of OVMI complied with the OVMI Operating Agreement for such action, including subsequent notice to Members not attending such action taken without a meeting,

(j) whether the Articles of Organization of OVMI were amended with regard to the number of individuals constituting Manager of OVMI and whether the requisite LLC-2 was filed with the California Secretary of State amending the Articles of Organization, and

(k) whether the Operating Agreement was amended to provide for less than two individuals to serve as Manager of OVMI or another person was appointed as a Manager of OVMI with Bral in place of Beitler (collectively, "Due Diligence Investigations").

51. Plaintiff is informed and believes, and upon such information and belief thereon alleges, that (a) Bral's singular purpose was to stay the November 2014 Trustee Sale, and (b) Hornbuckle and/or Cornerstone were aware that Bral's singular purpose for filing the OVMI Bankruptcy was to stay the November 2014 Trustee Sale.

52. Beitler, upon learning of the OVMI Bankruptcy, sent Bral an email on November 26, 2014 ("Beitler November Email"), in which Beitler, among other things, referred to himself as a managing member of OVMI, reminded Bral that action by the "Manager" of OVMI required the consent of both Beitler and Bral, and confirmed that the bankruptcy filing was not authorized.

53. In response to the Beitler November Email, Bral did not dispute that Beitler remained a Manager of OVMI nor did he document the process in which approval for the filing of a bankruptcy had

Case 8:17-bk-10706-SC Claim 19 Filed 08/18/17 Desc Main Document Page 19 of 31

occurred.

54. Bral, prior to the OVMI Bankruptcy, commenced two California Superior Court Actions, Bral v. Beitler et al., LASC Case No. BC559311 ("Los Angeles Case") and Bral v. Beitler, et al., OCSC Case No.: 30-2014-00717169-CU-BC-CJC ("Orange Case") [The Los Angeles Case and Orange Case shall be collectively referred to as the "Superior Court Actions"] seeking injunctive relief against Beitler with respect to Beitler's purported breach of fiduciary duties as a Manager of OVMI, without disclosure to either court in the Superior Court Actions that Beitler had allegedly been removed as a Manager of OVMI.

55. In the Orange Case, Bral filed a motion and supporting declaration seeking an injunction against Beitler based on his position as a Manager of OVMI. Bral filed essentially the same motion and declaration in the Los Angeles Case as an ex parte application or about October 10, 2014 where he stated, among other things, that (a) Beitler "is a member and co-manager" of OVMI, (b) admitted that "Beitler was and is a co-managing member of" OVMI, and (c) completely omitted any reference to a purported meeting held by the Members of OVMI which approved by resolution the removal of Beitler as a Manager.

56. Bral, in opposition to Plaintiff's Motion to Dismiss the OVMI Bankruptcy (referred to in General Allegations, Subpart F herein) declared that Beitler, on or about July 23, 2014, was removed as a Manager of OVMI directly contradicting Bral's subsequent statements made under penalty of perjury in the Superior Court Actions.

**F. MOTION TO DISMISS BANKRUPTCY.**

57. In or about December 2015, Plaintiff filed a motion in the United States Bankruptcy Court to dismiss the OVMI Bankruptcy for lack of authorization ("Motion to Dismiss"). A true and correct copy of the Motion to Dismiss is attached hereto as Exhibit "6" and is incorporated in full herein

by this reference.

58. Beitler, in his Declaration attached to his Motion to Dismiss ("Beitler Declaration"), made the following statements in paragraphs 6 through 10, inclusive:

> "6. At no time has Bral asked me to authorize the filing of a bankruptcy case for Ocean View.
>
> 7. No meeting of managers or members of Ocean View has been held (a) of which I was given notice and (b) at which both (i) a required quorum was present and (ii) authorization was given to Bral to file a bankruptcy case on behalf of Ocean View.
>
> 8. No written resolution was issued by or on behalf of (a) the Manger, including me or (b) the members of Ocean View, include me, authorizing Bral to file a bankruptcy case on behalf of Ocean View.
>
> 9. I have never authorized, approved or consented to the filing of any bankruptcy case by or on behalf of Ocean View.
>
> 10. I have reviewed the purported "Limited Liability Company Resolution of Ocean View Investors [sic], LLC" that Ocean View filed on December 19, 2014 (the "Bogus Resolution") [Docket No. 18 at pp. 40 - 42 of 45]. Before this case was filed, I never received (i) a copy of the Bogus Resolution, whether as proposed or as purportedly signed, or (ii) notice that Bral or any other member of Ocean View approved or intended to obtain approval of the Bogus Resolution." [Bracketed Language Added.]"

The Bogus Resolution referred to in the aforementioned Beitler Declaration is the purported resolution by the Members of OVMI authorizing the filing of a bankruptcy proceeding by OVMI, of which Beitler was not among such Members who purportedly executed the Bogus Resolution. A true and correct copy of the Bogus Resolution, dated November 20, 2014, is attached hereto as Exhibit "7" and incorporated in full herein by this reference.

59. The Bogus Resolution, among other things, (a) was not signed by and does not have a signature block for Beitler, (b) expressly states that Beitler was not among the members of OVMI who adopted the Bogus Resolution, (c) is not signed by at least one other member, and (d) does not authorize OVMI to retain its current counsel of record.

Case 8:17-bk-10706-SC Claim 19 Filed 06/16/17 Desc Main Document Page 21 of 31

60. Prior to the filing of the OVMI Bankruptcy, Beitler never received a copy of the Bogus Resolution, whether as proposed or purportedly signed, or any notice that Bral or any other Member of OVMI approved or intended to obtain approval of the Bogus Resolution.

61. Beitler indisputably remained a member of OVMI and indisputably did not consent to the bankruptcy filing. Without the unanimous consent of all of the OVMI's Members, the filing of the OVMI Bankruptcy was not authorized and, thus, was improper.

62. OVMI acknowledges that the bankruptcy case was filed for the purpose of impeding a duly noticed Foreclosure sale of the Property.

63. On February 6, 2015, the Honorable Scott Clarkson, United States Bankruptcy Judge, ruled on the Motion to Dismiss, determined it was not properly authorized and ordered the dismissal of the OVMI Bankruptcy ("Order"). A true and correct copy of the Order is attached hereto as Exhibit "8" and is incorporated in full herein by this reference.

## G. SECOND IMPROPER BANKRUPTCY PETITION

64. On or about February 9, 2015 an involuntary bankruptcy proceeding under Chapter 7 was filed against OVMI, USBC Case No.: 8:15-bk-10624-SC ("OVMI Involuntary Bankruptcy"). The OVMI Involuntary Bankruptcy was filed by among others Nuray DePriest ("Ms. DePriest").

65. Judge Clarkson in the OVMI Bankruptcy issued an Order to Show Cause Why Case Should Not Be Dismissed With a 180-Day Bar ("OSC") based on the proximity of the filing of the involuntary petition in relation to the dismissal of OVMI Bankruptcy the previous Friday, February 6, 2015. Judge Clarkson after a hearing on the OSC ordered that the OVMI Involuntary Bankruptcy be dismissed with a 180 bar to refiling ("OSC Dismissal Order"). Judge Clarkson stated in the OSC Dismissal Order, in material part, that:

> "... evidence was presented that perjury had been committed by Mr Bral and that documents had been fabricated. Moreover, the evidence submitted

> demonstrated a long pattern of Mr. Bral filing pleadings in various courts in an effort to stave off a pending foreclosure, all of which had been denied. The spear-heading petitioning creditor, Ms. DePriest, admitted she spoke with Mr. Bral on Friday, February 6, 2015, the date the case [OVM1 Bankruptcy] was dismissed and then, over the weekend, solicited other creditors and filed an involuntary petition on Monday, February 9, 2015 . . . The Court find that the timing of the filing, combined with all of the foregoing, indicates bad faith."

A true and correct copy of Judge Clarkson's OSC Dismissal Order is attached hereto as Exhibit "9" and is incorporated in full herein by this reference.

66. Plaintiff is informed and believes, and upon such information and belief thereon alleges, that Ms. DePriest and the other creditors filed the OVMI Involuntary Bankruptcy at the prompting and direction of Bral. Plaintiff is further informed and thereon alleges that Bral owed Ms. DePriest significant amount of money and could not repay her without the economic benefits derived from his membership interest in OVMI.

## H. SECOND TRUSTEE SALE – MARCH 20, 2015

67. On March 20, 2015 Special Default Services conducted a second auction sale, which resulted in the Property reverting back to Plaintiff on a credit bid in the amount of $4,100,000.00 ("March 2015 Trustee Sale"). Attached hereto as Exhibit "10" is a true and correct copy of an email from Lisa M. Rohrbacker of Special Default Services dated March 20, 2015, confirming the sale ("March 2015 Email").

68. The filing of the OVM1 Bankruptcy, which necessitated the March 2015 Trustee Sale, therefore cost Plaintiff $1,100,000.00 (the additional amount that Plaintiff was forced to bid after the November 2014 Trustee Sale to acquire the Property).

69. In or about April 2015, a Trustee's Deed Upon Sale was issued in the name of Plaintiff from the March 2015 Trustee Sale.

## FIRST CAUSE OF ACTION

## ABUSE OF PROCESS

## BY PLAINTIFF AGAINST BRAL AND DOES 1 THROUGH 20

70. Plaintiff hereby incorporates in full and realleges by this reference Paragraphs 1 through 70, inclusive, in this Cause of Action, as though fully set forth herein.

71. Bral, acting outside his authority as Manager and the powers granted to him as a Manager under the OVMI Operating Agreement, and without the unanimous written consent of all of the Members of OVMI, caused the unauthorized filing of the OVMI Bankruptcy.

72. Bral, in filing the OVMI Bankruptcy, knew that the filing required: (a) the consent of Beitler as a Manager with Bral, and (b) the unanimous consent of all of the Members of OVMI.

73. Bral did not have and could not obtain the consent of Beitler or the unanimous consent of all of the OVMI Members to file the OVMI Bankruptcy.

74. Bral knew that in filing of the OVMI Bankruptcy he was acting outside the scope and his authority as a Manager of OVMI and that as a Manager of OVMI he had no such express power independent of the approval of all of the Members of OVMI.

75. Bral knew that the filing of the OVMI Bankruptcy was unauthorized and that he was not acting in his capacity as a Manager of OVMI.

76. Bral, in filing of the OVMI Bankruptcy, intended for the implementation of the automatic stay under Title 11 U.S.C. Section 362 ("Bankruptcy Stay"), which by necessity would prevent the November 2014 Trustee Sale from occurring, and that such Bankruptcy Stay was not otherwise permitted in an unauthorized filing and, therefore, constituted a bad faith bankruptcy filing.

77. Bral, in executing the Bral Declaration to OVMI Bankruptcy, alleged in Paragraph 42 herein, knew that his statement made under penalty of perjury that he had been "authorized by Debtor

Case 8:17-bk-10706-SC Claim 19 Filed 06/16/17 Desc Main Document Page 24 of 31

... to sign and file ..." the OVMI Bankruptcy was false and that Bral had no basis in which to make such statement or believe in its truth.

78. Plaintiff is informed and believes, and based on such information and belief thereon alleges, that Bral also filed the OVMI Bankruptcy in order to stay any action against Bral individually under Title 11 U.S.C. Section 105, which would stay any action by Plaintiff against Bral under the Bral Guaranty that Steward could maintain as assignee of the FCB Complaint.

79. Plaintiff was harmed by Bral's conduct inasmuch as the Bankruptcy Stay voided the November 2014 Trustee Sale, which prevented the reversion of the Property to Plaintiff for its credit bid of $3,000,000.00, and also prevented the refinancing of the Property, which would have reduced Plaintiff's then-current interest on debt related to the Property.

80. As a proximate result of Bral's actions, Plaintiff has been damaged in an amount including, among other things, (a) the difference between the March 2015 Trustee Sale and the November 2014 Trustee Sale ("November/March Differential"), (b) the difference in the interest rate between the interest rate Plaintiff carried related to the Property ("Interest Rate Differential"), and (c) the costs incurred, including legal fees, by Plaintiff in preparing and filing of its Motion to Dismiss (collectively, "Legal Costs"). All of the aggregate damages are in excess of this Court's minimum jurisdiction.

81. Plaintiff is informed and believes, and based on such information and belief thereon alleges, that Bral's actions as herein alleged were undertaken in bad faith, with knowledge that he had no such authority or power to file the OVMI Bankruptcy, and with the malicious intent to cause damage to Plaintiff with regard to, among other things, the wrongful and intentional interference with Plaintiff's beneficial interest under the Deed of Trust in the Property. Plaintiff further alleges that Bral's bad faith and malicious intent is further manifested by his subsequent actions related to his involvement in the

Case 8:17-bk-10706-SC Claim 19 Filed 08/18/17 Desc Main Document Page 25 of 31

orchestration of the filing of the OVMI Involuntary Bankruptcy, notwithstanding Judge Clarkson's Order. Accordingly, Plaintiff seeks punitive damages against Bral, in an amount to be determined by this Court, for such malicious and wanton acts as herein alleged.

**SECOND CAUSE OF ACTION**

**ABUSE OF PROCESS**

**BY PLAINTIFF AGAINST CORNERSTONE AND HORNBUCKLE**

**AND DOES 1 THROUGH 20**

82. Plaintiff hereby incorporates in full and realleges by this reference Paragraphs 1 through 82, inclusive, in this Cause of Action, as though fully set forth herein.

83. Cornerstone and Hornbuckle, in presenting the OVMI Bankruptcy, were required to undertake a diligent inquiry to determine, among other things, the following: (a) whether Bral as a Manager of OVMI had authority and the power to act on behalf of OVMI and file a bankruptcy proceeding, (b) whether the Members of OVMI authorized, approved or consented to the filing of a bankruptcy proceeding prior to its filing, (c) the percentage of membership approval required to authorize the filing of a bankruptcy proceeding, (d) the authority vested in the Manager under the OVMI Operating Agreement to file a bankruptcy proceeding, (e) whether Bral as a Manager of OVMI was authorized to act independently of OVMI's other Manager, Beitler, (f) whether any pertinent resolutions, e.g., the purported removal of Beitler as a Manager of OVMI and the filing of a bankruptcy proceeding by the Members of the OVMI Operating Agreement were duly noticed, whether notice was properly waived, and whether notice, waiver, and any resolutions were duly executed, (g) the requisite percentage of membership approval required to authorize the filing of a bankruptcy by OVMI, and (h) whether the filing of a bankruptcy on behalf of OVMI was being undertaken for an improper purpose.

84. Under Federal Rules of Bankruptcy Procedure Section 9011 ("Rule 9011"), Cornerstone

and Hornbuckle were required to undertake a reasonable inquiry regarding the authorization by Bral to cause the OVMI Bankruptcy and to determine if, by its filing, Bral was engaging in an improper purpose.

85.    Had Cornerstone and Hornbuckle conducted a minimum inquiry, limited to a review of the OVMI Operating Agreement, they would have determined that there was no authorization for the OVMI Bankruptcy and that Bral was not authorized to act independently of: (a) Beitler as a Manager, and (b) the unanimity of the Members of OMVI.

86.    Rule 9011 expressly prohibits that a bankruptcy filing not be presented for "(1) … any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; … [or] (3) the allegations and other factual contentions have evidentiary support … " [Bracketed Language Added.]

87.    Plaintiff is informed and believes, and based on such information and belief thereon alleges, that neither Cornerstone nor Hornbuckle reviewed the OVMI Operating Agreement to determine what conditions were required to be satisfied by OVMI before filing a bankruptcy proceeding. Plaintiff is further informed and believes, and thereon alleges, that in addition to failing to review the OVMI Operating Agreement, neither Cornerstone nor Hornbuckle reviewed any of the purported resolutions by OVMI or other written documentation authorizing action by the Members of OVMI without a meeting, to determine its sufficiency to authorize a bankruptcy proceeding by OVMI.

88.    Cornerstone and Hornbuckle, in filing the OVMI Bankruptcy, knew or should have known that the filing of a bankruptcy by OVMI required the consent of: (a) Beitler as a Manager of OVMI in addition to Bral, and (B) the unanimous consent of all of the Members of OVMI, whether under the OVMI Operating Agreement and/or under California law.

89.    Cornerstone and Hornbuckle, in filing the OVMI Bankruptcy, knew or should have known that Bral as a Manager of OVMI had no such power independent of the approval of all of the

Case 8:17-bk-10706-SC Claim 19 Filed 08/18/17 Desc Main Document Page 27 of 31

Members of OVMI and Beitler as both a Manager and a Member of OVMI to cause the OVMI Bankruptcy, and that any action by Bral in such purported capacity as a Manager of OVMI was, in fact, an action by Bral outside the scope of his authority as a Manager of OVMI for an improper purpose and, therefore, not as a Manager of OVMI.

90. Cornerstone and Hornbuckle, as experienced bankruptcy law firm and attorney, respectively, knew or should have known that the filing of a bankruptcy by OVMI resulted in an immediate Bankruptcy Stay, which would prevent the November 2014 Trustee Sale from occurring, and that such Bankruptcy Stay was not otherwise permitted by an unauthorized filing and, therefore, was a bad faith filing of a bankruptcy.

91. Plaintiff was harmed by Cornerstone's and Hornbuckle's conduct inasmuch as the Bankruptcy Stay voided the November 2014 Trustee Sale, which prevented the reversion of the Property to Plaintiff under the Deed of Trust Assignment in November 2014, did not allow the reversion of the Property to Plaintiff under the Deed of Trust Assignment for a credit bid of $3,000,000.00, and prevented the refinancing of the Property, which would have reduced Plaintiff's then-current interest on debt to lower interest rates offered by commercial banks.

92. As a proximate result of Cornerstone's and Hornbuckle's actions, Plaintiff has been damaged in an amount including, among other things, (a) the November/March Period, (b) the Interest Differential, and (c) Legal Costs, all of which in the aggregate exceed this Court's minimum jurisdiction.

93. Plaintiff is informed and believes, and based on such information and belief thereon alleges, that Cornerstone's and Hornbuckle's actions, in presenting the OVMI Bankruptcy, acted with such wanton and reckless disregard to the rights of Plaintiff that such actions constitute malice and undue oppression and that punitive damages in an amount to be determined by this Court should be awarded.

///

Case 8:17-bk-10706-SC Claim 19 Filed 06/16/17 Desc Main Document Page 28 of 31

THIRD CAUSE OF ACTION

INTENTIONAL INTERFERENCE WITH CONTRACT

BY PLAINTIFF AGAINST ALL DEFENDANTS

94. Plaintiff hereby incorporates in full and realleges by this reference paragraphs 1 through 70, inclusive, 79, 81, and 82, in this Cause of Action as though fully set forth herein.

95. OVMI established a loan with FRB which included the Note, Deed of Trust and other documents (collectively, "Loan Documents"). The Loan Documents were assigned to FCB and subsequently assigned to Plaintiff.

96. At all times material hereto, Bral had approved the Loan Documents and was an authorized signer on behalf of OVMI of such Loan Documents, representing, among other things, that he approved and consented to such Loan Documents and understood their meaning.

97. Further, at all times material hereto, Bral was, and is, an experienced and sophisticated real estate developer as well as licensed by the California Bureau of Real Estate, in or about June 2013, as a real estate broker, imputing him with a professional standard of knowledge regarding real estate transactions, including with regard to deeds of trust.

98. Plaintiff is informed and believes, and based on such information and belief thereon alleges, that Bral was particularly knowledgeable regarding the Deed of Trust, which Bral as a Manager of OVMI, granted on behalf of OVMI to the beneficiary, which included certain rights in the event of a default of the Loan, including but not limited to, the right to non-judicially foreclose against the Property.

99. Bral, along with Hornbuckle and Cornerstone, by causing the OVMI Bankruptcy was aware that it would immediately stay the November 2014 Trustee Sale and would disrupt and interfere with the Plaintiff's rights under the Deed of Trust.

Case 8:17-bk-10706-SC Claim 19 Filed 08/18/17 Desc Main Document Page 29 of 31

100. As a proximate result of Defendants' actions, Plaintiff has been damaged in an amount including, the November/March Differential and the Interest Rate Differential.

101. Plaintiff incorporates by reference the allegations in Paragraph 82 as if fully set forth herein, and on that basis seeks punitive damages against Defendants in an amount to be determined this Court, for the malicious and wanton acts as herein alleged.

**FOURTH CAUSE OF ACTION**

**NEGLIGENT INTERFERENCE WITH CONTRACT**

**BY PLAINTIFF AGAINST ALL DEFENDANTS**

102. Plaintiff hereby incorporates in full and realleges by this reference Paragraphs 1 through 70, inclusive, 80, and 81, and 96 through 100, inclusive, in this Cause of Action, as though fully set forth herein.

103. Bral in filing the OVMI Bankruptcy failed to act with reasonable care to determine if he was authorized to file a bankruptcy proceeding on behalf of OVMI by virtue of his position as a Manager of OVMI, and/or without the consent of Beitler as a co-Manager of OVMI, and/or without the approval of all of the Members of OVMI (collectively, "Preliminary Determinations").

104. Plaintiff is informed and believes, and based on such information and belief thereon alleges, that Bral in failing to undertake such Preliminary Determinations, failed, among other things, to review the OVMI Operating Agreement to determine whether he could file the OVMI Bankruptcy.

105. A reasonable person acting as a Manager of a LLC would in the first instance determine, if among the powers vested in a Manager of LLC, that he/she had the independent authority and power to act on behalf LLC in file a bankruptcy proceeding and in making such determination reviewed the LLC's operating agreement governing such powers and authority vested in management and whether membership approval was required.

106. Bral, along with Hornbuckle and Cornerstone, in causing the OVMI Bankruptcy without the consent of all of the Members of OVMI acted outside the scope his authority and powers as a Manager.

107. Further, as a result of Defendants' unauthorized filing of the OVMI Bankruptcy, Defendants knew or should have known that by filing an unauthorized bankruptcy would wrongfully cause a wrongful Bankruptcy Stay and, thus, interfere with the beneficial rights under the Deed of Trust to proceed with a foreclosure sale of the Property.

108. Plaintiff was harmed by Defendants' interference in the enforcement of the Deed of Trust as a result of, among other things, not allowing Plaintiff to obtain the Property through its credit bid of $3,000,000.00 at the November 2014 Trustee Sale. Plaintiff therefore incurred damages including the November/March Differential and the Interest Rate Differential.

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

**AS TO THE FIRST CAUSE OF ACTION:**

1. For General and Special Damage in an amount according to proof at time of trial, together with interest at the maxim legal rate, and

2. For Exemplary or Punitive Damages in an amount to punish and deter as determined by the Court.

**AS TO THE SECOND CAUSE OF ACTION:**

1. For General and Special Damage in an amount according to proof at time of trial, together with interest at the maxim legal rate, and

2. For Exemplary or Punitive Damages in an amount to punish and deter as determined by the Court.

**AS TO THE THIRD CAUSE OF ACTION:**

1. For General and Special Damage in an amount according to proof at time of trial, together with interest at the maxim legal rate, and

Case 8:17-bk-10706-SC Claim 19 Filed 06/16/17 Desc Main Document Page 31 of 31

2. For Exemplary or Punitive Damages in an amount to punish and deter as determined by the Court.

**AS TO THE FOURTH CAUSE OF ACTION:**

1. For General and Special Damage in an amount according to proof at time of trial, together with interest at the maxim legal rate.

**AS TO ALL CAUSES OF ACTION:**

1. Cost of suit incurred herein, and
2. Such other and further relief as the Court determines just and proper.

DATED: February 5, 2016

LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations
TOM LALLAS

By: ______________________
TOM LALLAS
Attorneys for Plaintiff
Steward Financial LLC

32042-3

Main Document Page 121 of 121

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
650 Town Center Drive, Suite 950, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled: **DECLARATION OF JOHN J. BRAL IN SUPPORT OF MOTIONS TO BIFURCATE ISSUES OF LIABILITY AND DISCHARGEABILITY IN ADVERSARY, OR TO STAY ADVERSARY UNTIL UNDERLYING LIABILITY ON CLAIMS IS DETERMINED IN ANOTHER PROCEEDING** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **September 18, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Mark D Hurwitz** mhurwitz@lsl-la.com, dsmall@lsl-la.com
- **Gary E Klausner** gek@lnbyb.com
- **Krikor J Meshefejian** kjm@lnbrb.com
- **United States Trustee (SA)** ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On ____________, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **September 18, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

SERVED VIA PERSONAL DELIVERY/ATTORNEY SERVICE
The Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130/Courtesy Bin
Santa Ana, CA 92701-4593

Office of the United States Trustee
411 West Fourth Street, Suite 7160
Santa Ana, CA 92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 9/18/2017 | Nancy Lockwood | /s/ Nancy Lockwood |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**