GARY E. KLAUSNER (SBN 69077)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: gek@lnbyb.com; kjm@lnbyb.com

TOM LALLAS (SBN 66512)
MARK D. HURWITZ (SBN 151159)
LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations
815 Moraga Drive
Los Angeles, California 90049-1633
Telephone: (310) 471-3000; Facsimile: (310 471-7990
Email:  tlallas@lsl-la.com; mhurwitz@lsl-la.com

Attorneys for Plaintiff Barry Beitler

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>JOHN JEAN BRAL<br><br>                  Debtor and Debtor-<br>                  in-Possession. | Case No. 8:17-bk-10706-SC<br><br>Chapter 11<br><br>Adv. Case No. 8:17-ap-01092-SC |
| BARRY BEITLER,<br><br>                  Plaintiff,<br><br>   v.<br><br>JOHN JEAN BRAL,<br><br><br><br>                  Defendant. | **DECLARATION OF KRIKOR J.**<br>**MESHEFEJIAN AND REQUEST FOR**<br>**JUDICIAL NOTICE IN SUPPORT BARRY**<br>**BEITLER'S  OPPOSITION TO MOTION**<br>**TO BIFURCATE ISSUES OF LIABILITY**<br>**AND DISCHARGEABILITY IN**<br>**ADVERSARY, OR TO STAY**<br>**ADVERSARY UNTIL UNDERLYING**<br>**LIABILITY ON CLAIMS IS**<br>**DETERMINED IN ANOTHER**<br>**PROCEEDING**<br><br>Date:   October 19, 2017<br>Time:  11:00 a.m.<br>Place:  Courtroom 5C<br>         411 West Fourth Street<br>         Santa Ana, CA |

## DECLARATION OF KRIKOR J. MESHEFEJIAN

I, Krikor J. Meshefejian, hereby declare as follows:

1.     I have personal knowledge of the facts set forth herein, and, if called as a witness, could and would testify competently with respect thereto.

2.     I am an attorney with the law firm of Levene, Neale, Bender, Yoo & Brill L.L.P counsel to the Beitler Creditors (as listed on the top left hand corner of the first page of this document).  I am licensed to practice law in the State of California and before this Court.

3.     I make this Declaration in support of the Opposition filed by the Beitler Creditors to that certain *Motion To Bifurcate Issues Of Liability And Dischargeability In Adversary, Or To Stay Adversary Until Underlying Liability On Claims Is Determined In Another Proceeding* (the "Motion") [Doc. No. 9] filed by Defendant John Jean Bral (the "Debtor").

4.     Attached as Exhibit A to this Declaration is a true and correct copy of that certain *Beitler Creditors' Status Conference Statement*, filed by the Beitler Creditors in the Debtor's main bankruptcy case, at docket no. 41, without exhibits, which I downloaded using PACER.

5.     Attached as Exhibit B to this Declaration is a true and correct copy of the transcript of hearings held in this Court on January 29, 2015, in the voluntary bankruptcy case of Ocean View Medical Investors, LLC, Case No. 8:14-bk-16860-SC.  I obtained a copy of the transcript by downloading it using the PACER electronic case filing system.  The transcript is filed as Docket No. 48 in Ocean View Medical Investors, LLC's now-dismissed voluntary bankruptcy case.

6.     Attached as Exhibit C to this Declaration is a true and correct copy of the transcript of hearings held in this Court on February 12, 2015, in the involuntary bankruptcy case of Ocean View Medical Investors, LLC, Case No. 8:15-bk-10624-SC.  I obtained a copy of the transcript by downloading it using the PACER electronic case filing system.  The transcript is filed as Docket No. 12 in Ocean View Medical Investors, LLC's now-dismissed involuntary bankruptcy case.

7.    Attached as Exhibit D to this Declaration is a true and correct copy of that certain *Order Dismissing Involuntary Chapter 7 Case And Imposing A 180-Day Bar To Refiling* entered by this Court in Ocean View Medical Investors, LLC's involuntary bankruptcy case, which I downloaded using PACER.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of October, 2017, at Los Angeles, California.

*/s/ Krikor Meshefejian*
KRIKOR MESHEFEJIAN

### REQUEST FOR JUDICIAL NOTICE

The Beitler Creditors respectfully request that the Court take judicial notice of the following documents submitted in support of the concurrently filed Opposition to the *Motion To Bifurcate Issues Of Liability And Dischargeability In Adversary, Or To Stay Adversary Until Underlying Liability On Claims Is Determined In Another Proceeding* (the "Motion") [Doc. No. 9] filed by Defendant John Jean Bral (the "Debtor").

1.  **Exhibit A:**    *Beitler Creditors' Status Conference Statement*, filed by the Beitler Creditors in the Debtor's main bankruptcy case, at docket no. 41.

2.  **Exhibit B:**    Transcript of hearings held in this Court on January 29, 2015, in the voluntary bankruptcy case of Ocean View Medical Investors, LLC, Case No. 8:14-bk-16860-SC.

3.  **Exhibit C:**    Transcript of hearings held in this Court on February 12, 2015, in the involuntary bankruptcy case of Ocean View Medical Investors, LLC, Case No. 8:15-bk-10624-SC.

4.  **Exhibit D:**    *Order Dismissing Involuntary Chapter 7 Case And Imposing A 180-Day Bar To Refiling* entered by this Court in the involuntary bankruptcy case of Ocean View Medical Investors, LLC, Case No. 8:15-bk-10624-SC.

**A.**    **Judicial Notice Is Appropriate Because The Bankruptcy Court Filings Are Not Subject To Reasonable Dispute.**

Pursuant to Federal Rule of Evidence 201(b) a court may take judicial notice of a fact not subject to reasonable dispute because it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). It is well established that a court "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of briefs, pleadings, memoranda, and expert reports filed in a different litigation because the documents were "readily verifiable and, therefore, the proper subject of

judicial notice") (citing *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998)); *see Stanwyck v. Bogen (In re Stanwyck),* 450 B.R. 181, 208 (Bankr. C.D. Cal. 2011) (taking judicial notice of an order granting a motion to dismiss, and the findings of fact and conclusions of law contained in the memorandum of decision); *Alton v. Medtronic, Inc.*, No. 3:13-CV-409, 2013 WL 4786381 (D. Or. Sept. 6, 2013) (taking judicial notice of Notice of Ruling issued by Los Angeles County Superior Court and other court documents including judgment of dismissal, court order, and judgment).  Judicial notice may be taken at any stage of the proceeding. Fed. R. Evid. 201(d).

**B.**     **The Court May Take Judicial Notice On Its Own And Must Take Judicial Notice Where It Is Requested By A Party And The Court Is Supplied With The Necessary Information.**

The Court may take judicial notice on its own. Fed. R. Evid. 201(c)(1).  Moreover, a court must take judicial notice if requested by a party and supplied with the necessary information. Fed. R. Evid. 201(c)(2). Here, the Beitler Creditors have requested judicial notice and are supplying the Court with true and correct copies of the above-referenced exhibits, which are attached to this Request for Judicial Notice.

Dated: October 5, 2017               LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.


By: _____*/s/ Krikor J. Meshefejian*_____
                       GARY E. KLAUSNER
                       KRIKOR J. MESHEFEJIAN
                       Attorneys for Barry Beitler

# EXHIBIT "A"

1  GARY E. KLAUSNER (SBN 69077)
2  KRIKOR J. MESHEFEJIAN (SBN 255030)
   LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
3  10250 Constellation Boulevard, Suite 1700
   Los Angeles, California 90067
4  Telephone: (310) 229-1234; Facsimile: (310) 229-1244
   Email: gek@lnbyb.com; kjm@lnbyb.com
5
6  TOM LALLAS (SBN 66512)
   MARK D. HURWITZ (SBN 151159)
7  LEVY, SMALL & LALLAS
   A Partnership Including Professional Corporations
8  815 Moraga Drive
   Los Angeles, California 90049-1633
9  Telephone: (310) 471-3000; Facsimile: (310) 471-7990
   Email: tlallas@lsl-la.com; mhurwitz@lsl-la.com
10
11 Attorneys for Creditors Barry Beitler; Cannae
   Financial, LLC; AFG Investment Fund 7, LLC;
12 BAB 8 LLC; Beitler & Associates, Inc.
   dba Beitler Commercial Realty Services; and
13 Steward Financial LLC

14              UNITED STATES BANKRUPTCY COURT

15       CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

16  In re                              Case No. 8:17-bk-10706-SC

17  JOHN JEAN BRAL,                    Chapter 11

18              Debtor and Debtor-In-  BEITLER CREDITORS' STATUS
                Possession.           CONFERENCE STATEMENT
19
                                       Date:      April 20, 2017
20                                     Time:      11:00 a.m.
                                       Courtroom  5C
21

22

23

24

25

26

27

28

## I.     INTRODUCTION

Barry Beitler ("Beitler"), Cannae Financial, LLC ("Cannae"), AFG Investment Fund 7, LLC ("AFG 7"), BAB 8, LLC ("BAB 8"), Beitler & Associates, Inc. dba Beitler Commercial Realty Services ("BCRS"), and Steward Financial LLC ("Steward") [collectively, the Beitler Creditors"] hereby submit this statement in advance of the Status Conference scheduled for April 20, 2017 in the above-captioned case.  This statement is intended to provide the Court with material information concerning this bankruptcy case, the Beitler Creditors' claims, and litigation between the Beitler Creditors and the Debtor and Debtor-in-Possession, John Bral ("Bral").

## II.    THE PRIOR UNAUTHORIZED AND IMPROPER BANKRUPTCIES

### A.     Background.

Beitler and Bral have been co-managing members of various "single purpose entities" ("SPEs"), each of which is a limited liability company ("LLC") formed for the purpose of acquiring, developing and/or operating a particular real property.  One of these SPEs was Ocean View Medical Investors, LLC ("Ocean View").

As of March 2014, (a) Ocean View had been in default for nearly two years on a loan (the "Ocean View Loan") held by First-Citizens Bank & Trust Company ("First Citizens"), (b) First Citizens had commenced litigation in the Los Angeles County Superior Court, Case No. BC525778 (the "First Citizens Action") against Beitler and Bral to enforce their personal guaranties of the Ocean View Loan, (c) First Citizens sought writs of attachment against Beitler and Bral to enforce their respective guaranty obligations, and (d) Bral had not paid anything on his guaranty obligation or taken action to cause the Ocean View Loan to be paid.

Beitler, facing the issuance of a writ of attachment against him, and with Bral apparently content to leave Beitler to shoulder the entire amount of the Ocean View Loan obligation, began negotiating with First Citizens to purchase the Ocean View Loan and associated rights, claims and documents (collectively, the "Ocean View Loan Claims").  After providing notice of these negotiations to Bral and the other members of Ocean View, and inviting them to participate, and neither Bral nor any of the other members having accepted the invitation, Beitler formed Steward

1    and Steward entered into a loan purchase agreement with First Citizens for its par value and for

2    Steward to acquire the Ocean View Loan Claims, including without limitation the security

3    interest in the real property securing the Ocean View Loan and the right to enforce Bral's

4    personal guaranty.

5         Bral filed an action against Beitler on April 15, 2014 in Orange County Superior Court,

6    Case No. 30-2014-00717169 (the "Injunction Action"), in which Bral sought to enjoin the

7    acquisition of the Ocean View Loan Claims from First Citizens.  On June 9, 2014, the Orange

8    County Superior Court denied Bral's motion for a preliminary injunction.  Steward then acquired

9    the Ocean View Loan Claims from First Citizens and substituted in as plaintiff in place of First

10   Citizens in the First Citizens Action.  The Injunction Action was later transferred to the Los

11   Angeles County Superior Court, which on January 12, 2015 sustained Beitler's demurrer to

12   Bral's complaint [**Ex. 1 (Ex. 11)**].  At Bral's request, the Injunction Action was dismissed on

13   May 29, 2015.

14        **B.     Bral's Unauthorized Filing of a "Voluntary" Bankruptcy for Ocean View to**

15        **Interfere with Foreclosure on the Ocean View Property.**

16        Once Steward acquired the Ocean View Loan Claims, notice of a trustee's foreclosure

17   sale of Ocean View's real property duly issued.   The foreclosure sale, after having been

18   rescheduled multiple times, was set for November 21, 2014.  At the foreclosure sale that

19   morning, Steward acquired the Ocean View property for a credit bid of $3,000,000.

20        After the foreclosure sale, however, Steward was informed that Ocean View purportedly

21   filed for bankruptcy that morning, which voided the foreclosure sale. That bankruptcy was filed

22   in this Court as Case No. 8:14-bk-16860-SC (the "Ocean View Voluntary Bankruptcy") and was

23   assigned to Bankruptcy Judge Scott Clarkson [**Ex. 2**].   Notwithstanding that the Articles of

24   Organization and provide for two (2) Managers, and the annual filing of the State of Information

25   designate both Beitler and Bral as Managers, and the Operating Agreement also designates both

26   Beitler and Bral as Managers, requiring the consent of both Managers for an action by the

27   Managers, Bral signed the bankruptcy petition on behalf of Ocean View and signed the

28   accompanying declaration.

1      Beitler did not authorize, was not asked to authorize, and was not aware of the Ocean

2      View Voluntary Bankruptcy until after it was filed. Accordingly, on December 31, 2014, Beitler

3      filed a motion to dismiss the Ocean View Voluntary Bankruptcy for lack of authorization [**Ex.**

4      **3**]. While the motion was pending, Bral admitted at the meeting of creditors on January 8, 2015

5      that he did not inform Beitler of his intent to file, let alone obtain Beitler's consent to, the Ocean

6      View Voluntary Bankruptcy [**Ex. 4 at 28:2-17**].

7      In the opposition to Beitler's motion to dismiss, Bral claimed that (i) Beitler had been

8      removed as a manager of Ocean View on July 23, 2014 and (ii) a resolution to authorize the

9      Ocean View Voluntary Bankruptcy issued on November 20, 2014, the day before it was filed, for

10     the purpose of preventing the November 21, 2014 foreclosure sale [**Ex. 5 at 7:2-21, 9:8-10**]. As

11     Beitler showed in his reply papers in support of the motion to dismiss [**Exs. 6 and 7**], (a) before

12     January 2015, Beitler had not been aware of his supposed July 23, 2014 removal as manager,

13     (b) Beitler had never received any notice of any meeting or any proposed resolution to remove

14     him as manager, (c) Bral's subsequent communications with Beitler did not mention or reflect

15     the supposed removal, and (d) after the supposed removal, Bral continued to treat Beitler as a

16     manager of Ocean View, including without limitation motions and declarations that Bral filed in

17     September and October 2014 in the Injunction Action that (i) were premised on Beitler being a

18     manager of Ocean View and (ii) did not mention the supposed removal.

19     At a hearing on January 29, 2015, the Court adopted its tentative ruling and dismissed the

20     Ocean View Voluntary Bankruptcy because it was not authorized by Beitler, who had not been

21     properly removed as a manager [**Exs. 8 and 9 at 19:1-8**]. In the Tentative Ruling, the Court

22     stated:

23              "Beitler was not properly removed as manager of the Debtor.
24              Under the terms of the operating agreement, the bankruptcy filing
                could only by authorized either by both managers or by a vote of
25              the entire membership. Furthermore, the Debtor treated and
                acknowledged Beitler as a manager during the state court
26              litigation. There is no evidence that the bankruptcy filing was
                officially and correctly authorized, and the case should therefore be
27              dismissed."

28

1    On February 6, 2015, the Court entered its order dismissing the Ocean View Voluntary

2    Bankruptcy [**Ex. 10**].

3        **C.    The Involuntary Bankruptcy That Bral Improperly Caused to Be Filed.**

4        On February 9, 2015, while the ink was still drying on the order dismissing the Ocean

5    View Voluntary Bankruptcy, a purported involuntary bankruptcy case against Ocean View was

6    filed in this Court as Case No. 8:15-bk-10624-SC ("Ocean View Involuntary Bankruptcy") [**Ex.**

7    **11**] and was assigned to Judge Clarkson.  The Court immediately issued an Order to Show Cause

8    requiring the petitioning creditors to appear in Court on February 12, 2015 to show cause why

9    the Ocean View Involuntary Bankruptcy should not be dismissed for bad faith [**Ex. 12**].  At the

10   evidentiary hearing on February 12, 2015, Judge Clarkson examined the petitioning creditors

11   who appeared [**Ex. 13**] and after hearing their testimony, the Court found that the Ocean View

12   Involuntary Bankruptcy was the product of their collusion with Bral and would be dismissed for

13   bad faith [**Ex. 13 at 21:1-25:17**].  That same day, the Court entered its order dismissing the

14   Ocean View Involuntary Bankruptcy with a 180-day bar to refiling [**Ex. 14**].

15       In subsequent deposition testimony in state court litigation between Steward and Bral

16   [**Exs. 15 and 16**], one of the petitioning creditors, Nuray DePriest ("DePriest"), confirmed that

17   the Ocean View Involuntary Bankruptcy was a collusive bad faith case.  Among other things,

18   DePriest testified that:

19       • The purported signature of Beitler on a $50,000 promissory note dated October

20          14, 2010 (the "$50,000 Note"), which Bral signed and gave her on behalf of

21          Ocean View, was forged [**Ex. 15 at 110:5-112:2, 126:16-127:18, 160:7-161:16**

22          **and Exs. 5 & 22 to 10/6/16 depo**].

23       • Bral told DePriest that he would hire an attorney but that she would have to file

24          the bankruptcy but that Bral cannot be involved and that DePriest would have to

25          say that she filed the case herself [**Ex. 15 at 45:19-46:25, 59:20-60:1, 61:21-25**].

26       • Bral, his assistant Raquel, and his attorney prepared the paperwork for the Ocean

27          View Involuntary Bankruptcy [**Ex. 15 at 47:10-25, 63:7-19**].

28

- Bral gave DePriest cash to pay the filing fee for the Ocean View Involuntary Bankruptcy [**Ex. 15 at 48:1-8, 63:20-22**].

- Bral and Raquel, not DePriest, identified the other petitioning creditors [**Ex. 15 at 55:7-24**].

- Bral, not DePriest, contacted and hired the attorney for the petitioning creditors [**Ex. 15 at 68:7-69:2**].

- Bral had DePriest communicate with Raquel, including by text message, rather than Bral with respect to the Ocean View Involuntary Bankruptcy so that there would not be a written record of Bral's involvement [**Ex. 15 at 56:2-15, 137:12-142:25 & pp. 13-21 through 13-27 of Ex. 13 to 10/6/16 depo**].

- Before the February 12, 2015 hearing, when DePriest, Bral and the attorney Bral hired for the Ocean View Involuntary Bankruptcy were discussing DePriest's testimony, (i) DePriest showed Bral and the attorney the original $50,000 Note that had Beitler's purported signature (the "Forged Original"), (ii) Bral took the original $50,000 Note from DePriest and went to his office, (iii) Bral returned a half hour later with an alternate version of the $50,000 Note that only had Bral's signature (the "Alternate Version"), and (iv) Bral told DePriest to show the Court only the Alternate Version, not the Forged Original [**Ex. 15 at 41:9-45:12, 49:12-24, 171:12-20 and Exs. 4, 5 & 22 to 10/6/16 depo**]

- Before DePriest testified at the February 12, 2015 hearing, Bral told her to lie to this Court, including without limitation (a) to tell the Court that (i) she had not spoken to Bral about the Ocean View Involuntary Bankruptcy, (ii) she, not Bral, prepared the petition, (iii) she, not Bral, organized the petitioning creditors and hired their attorney, and (iv) she paid the filing fee from her own funds, not from money provided by Bral, and (b) not to show the Court the Forged Original of the $50,000 Note [**Ex. 16 at 317:19-319:24**].

**D.    The Damage to Steward from the Unauthorized and Improper Bankruptcies.**

After both of the purported Ocean View bankruptcies had been dismissed, on March 20, 2015 another foreclosure sale of the Ocean View property was held.  At this sale, Steward again purchased the property for a credit bid, but this time was forced to bid $4,100,000.  The damage to Steward from having to bid an additional $1.1 million over the price at which it would have purchased the property on November 21, 2014, but for the Ocean View Voluntary Bankruptcy, is the subject of one of the pending state court actions against Bral.

**III.    THE STATE COURT ORDERS AND JUDGMENTS AGAINST BRAL**

**A.    The Cannae Judgment and Liens Against Bral.**

On July 16, 2015, after granting Cannae's motion for summary judgment, the Orange County Superior Court entered a judgment in favor of Cannae and against Bral for $313,041.69, plus prejudgment interest, costs and attorney's fees [**Ex. 17**].  Cannae obtained judgment liens on Bral's real property by recording abstracts of judgment in Orange, Los Angeles and Kern Counties in August 2015 [**Exs. 18, 19 and 20**].  In addition, Cannae obtained a lien on Bral's interests in another SPE, Westcliff Investors, LLC ("Westcliff"), by filing a motion in September 2015 for a charging order against Bral's interest in Westcliff [**Ex. 21**], which charging order issued on December 7, 2015 [**Ex. 22**].

**B.    The Beitler Judgments.**

In November 2016, Beitler obtained judgments in the Los Angeles County Superior Court against Bral in two separate cases.  On November 7, 2016, after the court in Case No. BC 532523 struck Bral's answer to Beitler's complaint, and entered Bral's default, as a discovery sanction for repeated failure to comply with his discovery obligations [**Ex. 23**], the Court entered judgment by default in favor of Beitler and against Bral in the sum of $2,514,631 (the "Default Judgment") [**Ex. 24**].  The claims that gave rise to the Default Judgment concerned various SPEs and properties.

On November 17, 2016, in Case No. BS 146302, following a trial by a private judge on Beitler's claims against Bral arising from an agreement between Beitler and Bral concerning various loans and advances, the Court entered judgment in favor of Beitler and against Bral in

the sum of $753,610.29 (including prejudgment interest, attorneys' fees and costs) (the "Private Judge Case Judgment") [**Ex. 25**].

On January 18, 2017, Beitler obtained liens on Bral's interests in Westcliff and another SPE, Mission Medical Investors, LLC ("Mission"), by filing motions for charging orders with respect to both the Default Judgment and the Private Judge Case Judgment [**Exs. 26, 27, 28 and 29**]. Those motions were pending when Bral filed this bankruptcy case on February 24, 2017.

In addition, after the Injunction Action was transferred to Los Angeles County Superior Court and was dismissed, Beitler obtained an Order on February 29, 2016 awarding him attorneys' fees against Bral in the sum of $64,576 (the "Fee Award") [**Ex. 30**].[1]

**C.    The Monetary Sanctions Orders Against Bral and His Counsel.**

In addition to the terminating sanctions that resulted in the Default Judgment against Bral, the courts in various state court actions issued monetary sanctions awards totaling $23,137 against Bral or his counsel [**Exs. 32 through 37**], as summarized in the attached chart [**Ex. 38**]. Except for the $2,500 award against Bral's counsel [**Ex. 33**], none of these sanctions have been paid.[2]

**IV.    THE PENDING STATE COURT LITIGATION**

By filing this bankruptcy, Bral purported to preclude the Beitler Creditors from enforcing:

- The Default Judgment;
- The Private Judge Case Judgment;
- The Cannae Judgment;
- The Fee Award.

Indeed, Bral admits in his April 6, 2017 Status Conference Report that he filed this bankruptcy to impede Beitler's efforts to enforce the Default Judgment and Private Judge Case Judgment by obtaining charging orders against Bral's interests in Mission and Westcliff [*see* Docket No. 37 at 2:11-16].

---

[1] Cannae also obtained an attorney fee award against Bral from the Orange County Superior Court on March 21, 2016 in the sum of $19,252 [**Ex. 31**].
[2] As noted in the chart [**Ex. 38**], the $2,000 award [**Ex. 36**] was later stricken.

In addition, Bral has apparently used this bankruptcy to try to stay pending litigation between Bral and the Beitler Creditors, including:

- The First Citizens Action, in which Steward seeks to enforce Bral's guaranty of the Ocean View Loan, which case was set for trial on May 1, 2017;

- Beitler's action against Bral and two of Bral's entitles, Venture RE Group and Bral Realty Advisors, Inc., which was was set for trial on June 12, 2017;

- Another pending action by Cannae in the Orange County Superior Court against Bral on his guaranty of a loan with respect to a property in Visalia, California, in which Cannae had obtained a $1.2 million default judgment before the default was vacated; and

- Steward's action for damages resulting from the unauthorized and improper Ocean View bankruptcies that interfered with Steward's foreclosure sale of the Ocean View property, which was set for trial on October 30, 2017.

## V.    CONCLUSION

The Beitler Creditors respectfully submit the foregoing and attached information to the Court for its consideration in determining how to proceed with this bankruptcy case. Beitler Creditors expressly reserve any and all of their rights and remedies, whether in this Court or any other state or federal court, and whether under bankruptcy law or non-bankruptcy law.

Dated: April 13, 2017

GARY E. KLAUSNER
KRIKOR J. MESHEFEJIAN
LEVENE, NEALE, BENDER, YOO
 & BRILL L.L.P.

By: /s/Gary E. Klausner
   GARY E. KLAUSNER
Attorneys for the Beitler Creditors

*[Signature Page Follows]*

1    Dated:  April 13, 2017                          TOM LALLAS
                                                      MARK D. HURWITZ
2                                                     LEVY, SMALL & LALLAS
                                                      A Partnership Including Professional Corporations
3

4                                                     By:/s/Mark D. Hurwitz
                                                          MARK D. HURWITZ
5                                                     Attorneys for the Beitler Creditors

6    33259-2

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "B"**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

--oOo--

| In Re: | : Case No. 8:14-BK-16860-SEVEN |
|--------|--------------------------------|
| COUNTIES | |
| | : |
| OCEAN VIEW MEDICAL INVESTORS, | : |
| LLC, | : |
| | : Santa Ana, California |
| Debtor. | : Thursday, January 29, 2015 |
| _____ | : 11 a.m. |

HEARING RE: MOTION OF MANAGING
MEMBER BARRY BEITLER TO DISMISS
BANKRUPTCY CASE FOR LACK OF
AUTHORIZATION

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE SCOTT CLARKSON
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| For the Debtor | LEWIS R. LANDAU, ESQ. |
|----------------|------------------------|
| | 22287 Mulholland Highway, #318 |
| | Calabasas, California 91302 |
| | 888: 822-4340 |
| | |
| For Barry Beitler | Tom Lallas, Esq. |
| | LEVY, SMALL & LALLAS |
| | 815 Moraga Drive |
| | Los Angeles, California 90049 |
| | 310: 471-3000 |

(Continued)

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

APPEARANCES:

1

For the U.S. Trustee          Elizabeth Ann Lossing, Esq.
2                             U.S. DEPARTMENT OF JUSTICE
                              OFFICE OF THE U.S. TRUSTEE
3                             411 West 4th Street, Suite 9041
                              Santa Ana, California 92701
4

5   Court Recorder            Carlos Peres
                              United States Bankruptcy Court
                              411 West Fourth Street
6                             Santa Ana, California 92701-4593
                               714: 338-5311
7

8   Transcriber               Kathleen M. Price
                              Ad Hoc Transcription, LLC
                              241 Sussex Avenue
9                             Newton, New Jersey 07860
                               888: 516-5553
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA ANA, CALIFORNIA, THURSDAY, JANUARY 29, 2015, 12:19 P.M.

(Call to order of the Court:)

THE COURT:  Ocean View Medical Investors, Number 12. This is a motion of the managing member, Barry Beitler to dismiss the bankruptcy case for lack of authorization. Appearances, please.

MR. LALLAS:  Good afternoon, Your Honor.  Tom Lallas of Levy, Small & Lallas appearing on behalf of the moving party.

THE COURT:  Mr. Lallas, always good to see you.

MR. LALLAS:  Nice to see you, Your Honor.

MR. LANDAU:  Good morning, Your Honor.  Lewis Landau for the debtor.

THE COURT:  Mr. Landau, again always good to see you, too.

MR. LANDAU:  Thank you, Your Honor.

MS. LAWSON:  Good morning, Your Honor.  Elizabeth -- good afternoon, Your Honor.  Elizabeth Lawson, trial attorney. I'm appearing on behalf of Peter C. Anderson, United States Trustee.

THE COURT:  Good morning -- or good afternoon.

MR. LALLAS:  Having considered the tentative ruling, Mr. Beitler will submit subject to any reply comments, Your Honor.

THE COURT:  Thank you.

MR. LANDAU:  Your Honor, thank you.  I have the

1  unenviable position of taking the podium with a tentative that

2  says the Court adopts Mr. Lallas' reply brief and is prepared

3  to dismiss the case for lack of authorization.

4  THE COURT:  Well, first of all, I'm not going to have

5  you sit here and paraphrase my tentatives --

6  MR. LANDAU:  Understood.

7  THE COURT:  -- on the record because the tentatives

8  aren't part of the record.  So now I have to read it.

9  The Court agrees with the interpretation of the

10 operating agreement and the discussion of the pre-petition

11 actions and state court declarations regarding Barry Beitler's,

12 who I'm going to refer to as Beitler's continued service as

13 manager, as set forth in the Beitler reply filed 1/22/2015,

14 which is Docket Number 33.  Beitler was not properly removed as

15 the manager of the debtor.  Under the terms of the operating

16 agreement, the bankruptcy filing could only be authorized

17 either by both managers or by a vote of the entire membership.

18 Furthermore, the debtor treated and acknowledged Beitler as

19 manager during the state court litigation.  There is no

20 evidence that the bankruptcy filing was officially and

21 correctly authorized, and the case should therefore be

22 dismissed.

23 That's what happens when you paraphrase and puts

24 words into my mouth that I didn't say.

25 MR. LANDAU:  It shall not happen again.

THE COURT:  Well, it's your cup of hemlock if you

choose.

MR. LANDAU:  Understood.  Your Honor, I pointed out the reply brief and those erroneous comments that I made because the argument -- the key argument, the analysis of the procedures and the process for removal came in, in the reply with no opportunity for rebuttal.

The motion was narrow.  The motion just said lack of authorization.  Our opposition said no, there's a July 23rd resolution that removed Mr. Beitler leaving only one manager, and then the reply came with all of the heavy analysis.

THE COURT:  Right.  Now, let me ask you this.

MR. LANDAU:  Yes, Your Honor.

THE COURT:  If the -- if he was removed on July 23, why do you state court pleadings say that he was still the member after that date?

MR. LANDAU:  I believe that that is a time of timing as to the allegation of breach of fiduciary duty not being specific and not recognizing this issue.  All of the allegations of breach of fiduciary duty relate to before July 23rd.  I don't believe that the state court litigators were focusing on the timing issue.  I think that that's a -- Your Honor, as a matter of due process, because these key arguments came in, in the reply, I'm here to request a continuance.  I'd like to rebut those arguments and I'd like to make an offer of proof as to what I would say in those additional papers.

THE COURT:  How much time would you need?

1          MR. LANDAU:  Not much at all, Your Honor.

2          THE COURT:  How much time would you need?

3          MR. LANDAU:  Just a few days.

4          THE COURT:  Okay.  Why don't you all come back here
on February 5th.

5
6          MR. LALLAS:  May I respond to that argument, Your
Honor, before it's granted?

7
8          THE COURT:  Sure.

9          MR. LALLAS:  Thank you.

          MR. LANDAU:  Sure.

10
11         MR. LALLAS:  Mr. Beitler's position is that a request
for a continuance to respond to these reply papers is

12
13 deliberately disingenuous, and the reason it's disingenuous,

14 Your Honor, is that all of the information that's contained in

15 the reply papers was within the knowledge of Mr. Bral when he

16 filed his opposition.

17         If you examine the content of our reply papers,

18 number one, we filed a very specific request for judicial

19 notice and we attached to it pleadings that have been filed in

20 Orange County Superior Court and Los Angeles County Superior

21 Court --

22         THE COURT:  And, as you can tell, I saw those.

23         MR. LALLAS:  Absolutely.  And all of them were filed

24 by Mr. Bral.  We filed -- we attached as part of our request

25 for judicial notice declarations, all of which were executed by

Mr. Bral.  We filed a minute order relating to a successful

demur on a claim for breach of fiduciary duty for which Mr.

Bral opposed the demur and was present in court.

      So, if we talk about the strictures of due process

which is notice and an opportunity to be heard, it is

disingenuous and we think misleading to suggest that Mr. Bral

didn't have any idea that any of these issues were going to be

raised.

      THE COURT:  I understand your point.  You were going

to make an offer of proof.

      MR. LANDAU:  I was, Your Honor.

      THE COURT:  Let him make his offer of proof, and let

me hear what he's going to add.

      MR. LALLAS:  Thank you.

      MR. LANDAU:  Your Honor, if you'd kindly open Mr.

Lallas' reply brief to Page 3; that's the heart of the analysis

as to --

      THE COURT:  Hold on, one second.  The reply

memorandum?

      MR. LANDAU:  Yes, Your Honor.

      THE COURT:  What page?

      MR. LANDAU:  Page 3, the supposed removal resolution

is invalid.

      THE COURT:  I'm sorry, where do you want to direct me

to on Page 3?

      MR. LANDAU:  This is my offer of proof as to what

will be forthcoming if we had a continuance, and that is that

1    this is the argument as to why the removal was invalid.  The

2    first paragraph is a strawman argument relating to the fact

3    that there was no properly noticed meeting and properly noticed

4    vote with a quorum and such to result in the resolution of

5    removing Mr. Beitler.  That's a strawman.  We've never

6    contended that there was a meeting.

7              THE COURT:  Okay.  I knew that.

8              MR. LANDAU:  It's the second paragraph which deals

9    with consent.

10             THE COURT:  That starts with moreover?

11             MR. LANDAU:  Correct.  Was there an appropriate

12    consent.  And then there's a new argument.  The new argument --

13             THE COURT:  I'm sorry, new argument?

14             MR. LANDAU:  The new argument in the reply to which

15    I'd like --

16             THE COURT:  All right.

17             MR. LANDAU:  -- to have an opportunity to respond.

18    Starting in the second sentence, "Removal of Beitler as a

19    manager would be an amendment to the operating agreement which

20    defines a manager."

21             Well, that's a new argument.  That's never come up in

22    anything in state court before, and that's an argument that's

23    very important because an amendment to the agreement requires

24    unanimous consent.

25             THE COURT:  Yeah, I don't buy that.  I don't think

1    that's a good argument.

2            MR. LANDAU:  It's not an amendment --

3            THE COURT:  I don't think that's a good argument.

4            MR. LANDAU:  That would be what we would come with --

5            THE COURT:  Okay.  So you don't need to do that.

6            MR. LANDAU:  Okay.  And so if -- once we get past

7    that point and the removal of a manager is not an operating

8    agreement amendment, then it only requires a majority vote to

9    remove the manager.  That's what the operating agreement says

10   which is consistent with California law.

11           We have the resolution which has a majority of

12   members voting in favor of removal.  So the only question is,

13   is it a proper consent certificate which is referenced down

14   below in the last sentence --

15           THE COURT:  No, the only other issue is really did it

16   happen.

17           MR. LANDAU:  Correct.

18           THE COURT:  And my concern and what goes to the heart

19   of the issue is that your papers after your allegedly -- your

20   client allegedly removed Mr. Beitler -- Beitler?

21           MR. LANDAU:  Yes.

22           THE COURT:  References in pleadings that he's still

23   the manager.

24           MR. LANDAU:  I would like to address that, Your Honor

25   --

1          THE COURT:  Well --

2          MR. LANDAU:  -- in detail --

3          THE COURT:  Well, you're making an offer of proof

4    here.  Tell me how are you going to make an offer of proof that

5    your papers didn't say that.

6          MR. LANDAU:  Because the issue in state court was

7    breach of fiduciary duty.

8          THE COURT:  No.  The papers specifically state that

9    Mr. Beitler is still the manager, one of the managers --

10         MR. LANDAU:  It --

11         THE COURT:  -- so how you are you -- what offer of

12   proof are you going to give me that those papers don't say

13   that?  And that's the distinction.  Your papers say it.  How

14   are you going to tell me they don't?

15         MR. LANDAU:  Again, Your Honor, those were papers

16   drafted for temporary restraining orders to stop the

17   foreclosure by lawyers and a client that were not focused on

18   the timing issue so they spoke broadly and that was --

19         THE COURT:  So why wouldn't you be judicially

20   estopped?

21         MR. LANDAU:  Different issues, different parties.

22   Think about it for a second, Your Honor.  We have five other

23   members who signed the resolution --

24         THE COURT:  Yes, but you have a declaration -- I

25   believe it's a declaration but more importantly, it's a

1    document signed by -- who was that pleading signed by?  The

2    attorney.

3         MR. LANDAU:  The pleading?

4         THE COURT:  The pleading.  The pleading that

5    references the fact that Mr. Beitler is still the manager.

6         MR. LANDAU:  It was the Samini law firm.  I don't

7    know the lawyer.

8         THE COURT:  Okay.  And I assume they do due diligence

9    before they file papers.

10         MR. LANDAU:  I assume so.

11         THE COURT:  Okay.  All right.  Well, what offer of

12    proof would you have that that was wrong?  That the papers were

13    not wrong but that the papers were not submitted to the Court.

14         MR. LANDAU:  I would submit to Your Honor that the

15    judicial admission to the extent that it's definite enough in

16    that proceeding would certainly not bind the other members that

17    signed the resolution that were not parties to that proceeding.

18         THE COURT:  Yeah, but don't you think that I can

19    weigh the issue of whether or not your clients mean what they

20    say in state court proceedings when they're doing -- seeking

21    adverse actions against Mr. Beitler?

22         MR. LANDAU:  Understood, but I think that you should

23    have the evidence of what was going on in there with the other

24    member's position that signed the resolution and then you can

25    weigh it against the judicial admission --

1          THE COURT:  Well, I already have -- believe me.

2     That's how I developed my tentative is I weighed in.

3          MR. LANDAU:  But you don't have an answer from my

4     side to those statements --

5          THE COURT:  Well, sure I do.  Now I do.  You said it

6     was a scrivener's error or a mistake.

7          MR. LANDAU:  And not made clearly though.  Yes.

8          THE COURT:  Okay.  Now I understand.  I understand

9     your point of view.

10          MR. LANDAU:  And so, Your Honor, the ultimate issue

11     would then be does that judicial admission outweigh a

12     resolution that's properly adopted by a majority of the members

13     and then eviscerated as if it doesn't happen and what the

14     result --

15          THE COURT:  Well, perhaps it didn't happen and it's

16     all backdated.  I don't know the answer.

17          MR. LANDAU:  I'd like a chance to rebut that, Your

18     Honor.

19          THE COURT:  How could you do that?

20          MR. LANDAU:  Declarations from all the members that

21     signed it.

22          THE COURT:  Well, I assume that they're going to say

23     that they signed it when they did.  Right?

24          MR. LANDAU:  Yes.

25          THE COURT:  I don't need anymore evidence.  I believe

1    you that they will say that.

2          MR. LANDAU:  Then I would submit, Your Honor, that it

3    wasn't backdated.  There's no evidence of backdating.  There's

4    no -- I mean --

5          THE COURT:  Well, there is evidence of backdating and

6    the evidence is that your pleadings in state court reference

7    this gentleman as the member.  You know, so there is evidence

8    that there is a problem.

9          MR. LANDAU:  There's evidence of an inconsistency, I

10    would submit that.

11          THE COURT:  Thank you.

12          MR. LANDAU:  Does that bind the other members that

13    signed the resolution?  It couldn't --

14          THE COURT:  I don't think it has to bind.  I think it

15    has to be weighed by me.

16          MR. LANDAU:  Understood, Your Honor.

17          THE COURT:  Well, I weighed it.

18          MR. LANDAU:  Advancing to the relief that results

19    from a dismissal here, results in a Beitler or a Beitler

20    affiliate or some relationship with his handling on the entity

21    foreclosing to a loss of everyone else in the estate other than

22    Beitler, that's obviously weighty relief.

23          THE COURT:  Well, I'm confused.  Didn't you go in and

24    try to stop this in state court?

25          MR. LANDAU:  Yes.

1          THE COURT:  And what happened there?

2          MR. LANDAU:  The proceeding was moved to Los Angeles

3  Superior Court --

4          THE COURT:  I know that history.  What happened as a

5  -- on the merits?

6          MR. LANDAU:  Ultimately, the Judge decided that it's

7  a money issue and injunctive relief isn't necessary.

8          THE COURT:  There you go.  And so what do you get for

9  the Chapter 11 case?  You get to pay $1,700 and you get the

10  cheapest injunction in the world.

11          MR. LANDAU:  Well, ultimately, my solution here as I

12  stated in the papers, this is a tenancy-in-common problem in

13  this case which by the way again --

14          THE COURT:  It may be a tenancy problem in the state

15  court case that you have.  Okay.  Well, I've heard -- do you

16  have anymore offers of proof?  Reason for a continuance.

17          MR. LANDAU:  No, I appreciate Your Honor's

18  clarification.  The key is that it would not require unanimous

19  approval and that the consent certificate was duly adopted

20  under the circumstances.

21          THE COURT:  I appreciate that.  Mr. Lallas.

22          MR. LANDAU:  Thank you, Your Honor.

23          MR. LALLAS:  Unless Your Honor is inclined to change

24  his tentative, I would --

25          THE COURT:  I really want you to talk to the points.

1          MR. LALLAS:  All right.  Thank you, Your Honor.

2

3          THE COURT:  So to answer yourself, yes, I am

4    inclined.

5          MR. LALLAS:  If you'd turn to Page 5 of the reply.

6          THE COURT:  Yes.

7          MR. LALLAS:  Mr. Landau stood before you and said

8    that there was a timing error in the declaration and that Mr.

9    Bral was talking historically about whether Mr. Beitler was a

10   manager.  At Page 5, Line 15, we point out that Mr. Bral signed

11   the declaration that stated Beitler is a member and co-manager

12   of Ocean View.

13         THE COURT:  This is one of the reasons that in my

14   tentative by the way I weigh that the filing of the bankruptcy

15   was improper.

16         MR. LALLAS:  Second, Your Honor, apropos that, at

17   Line 17 through 18, Mr. Bral in another declaration admitted

18   Beitler was and is a co-managing member of Ocean View.

19         THE COURT:  And from that language, again, especially

20   because of the emphasis of "and is" in that riff of language

21   that's in that declaration, that's another determinative that I

22   utilized in saying that this bankruptcy was improperly filed.

23         MR. LALLAS:  And, furthermore, Your Honor, at the

24   next two bullet points on the same page reflect that Mr. Bral

25   alleged that Mr. Beitler was breaching his fiduciary duties as

1  a manager of Ocean View.

2         THE COURT:  And how can he breach his fiduciary

3  duties if he's not a manager?

4         THE COURT:  So it is clear that Mr. Bral when it

5  suited his argument in the state court proceedings swore under

6  oath that Mr. Beitler was and is a co-manager of Ocean View.

7  So this is not an example of a scrivener's error by lawyer.

8  These are judicial admissions for which the Doctrine of

9  Judicial Estoppel would clearly be applicable.

10        Second, with respect to the argument about the

11  removal of Mr. Beitler, there's nothing in the operating

12  agreement that says that Mr. Beitler can be removed by a

13  majority vote, and in fact, we've cited in our analysis in both

14  -- in the reply papers that a unanimous vote would be required

15  to remove Mr. Beitler.

16        THE COURT:  Please point that out in your reply.

17        MR. LALLAS:  I'm sorry, Your Honor, in the reply at

18  Page 3 what we point out is that Mr. Beitler did not receive

19  the notice that was required under the operating agreement and

20  that's at Lines 15 through 24.  The --

21        THE COURT:  That's not what I'm asking for.

22        MR. LALLAS:  -- the unanimous vote analysis in the

23  reply relates to an action outside the ordinary course of

24  business, and that goes to California Corporations Code Section

25  177 --

1    THE COURT:  And you would state -- you would address

2    that problem by saying that removal of a manager is outside the

3    ordinary course of business.

4    MR. LALLAS:  A, yes, it applies to removal of a

5    manager and, B, it clearly applies to the filing of a

6    bankruptcy petition --

7    THE COURT:  See, I came to the same independent

8    conclusion.

9    MR. LALLAS:  Because -- thank you, Your Honor.  And

10   we know under Avalon that the effect of the filing of the

11   bankruptcy petition is to create a whole new entity for which -

12   - which is the debtor-in-possession.  And the result is that

13   before the members are going to consent to a transaction that

14   transforms the debtor pre-petition, they have to do so

15   unanimously under the operating agreement and applicable law.

16   So, when we look at the argument made by Mr. Landau

17   based on due process to be able to rebut the claims that are

18   asserted in the reply.  We note that all of the claims that are

19   included in the reply were based on pleadings signed by Mr.

20   Bral, pleadings filed by Mr. Bral, facts known by Mr. Bral, and

21   facts concealed by Mr. Bral.  The only person who was blind-

22   sided in this case was Mr. Beitler at the 341(a) hearing in

23   this matter when he learned out of the blue that Mr. Bral

24   claimed that there was a resolution that was executed that

25   removed him as a manager for which Mr. Beitler had never

1    received any notice, for which there was never a meeting that

2    was calendared, for which Mr. Beitler was never given an

3    opportunity either to sign the resolution or to object to the

4    resolution and for which Mr. Bral carefully concealed that fact

5    from three different courts when he applied for injunctive

6    relief twice in Orange County and then later in Los Angeles

7    County.

8          So, taking the totality of the circumstances in this

9    case, I think it's clear that not only was it incumbent upon

10   the Court to weigh the facts and information provided but the

11   Court has weighed the facts and information provided and

12   there's no basis for a continuance here to -- based on this

13   offer of proof where all of the documentary evidence is based

14   on what Mr. Bral has already told various different courts in

15   his unsuccessful attempt to obtain injunctive relief, and let's

16   really look at what the reality of this.  This default on this

17   obligation was in May 2012.  The notice of default was recorded

18   in November 2013 and Mr. Bral went to superior court in April,

19   in June, in September, and in October trying to obtain

20   injunctive relief and when he couldn't and when all of these

21   issues which he asserted which are the same issues that are the

22   subject matter of his opposition were rejected, he filed a

23   bankruptcy petition without authorization moments before the

24   foreclosure sale was set to occur.  So, frankly, Your Honor --

25          THE COURT:  Okay.  Thank you very much.

1          MR. LALLAS:  -- I request that the Court adopt the

2     tentative ruling and in addition that in the order of the Court

3     adopting the tentative ruling that the bankruptcy be dismissed

4     effective as of and the stay be vacated effective as of the

5     moment and date it was filed and that the Court impose a

6     customary prohibition of 180 days for the refiling of any

7     bankruptcy by this debtor because this was not a bankruptcy

8     filed in good faith.

9          THE COURT:  Mr. Landau, would you like to spend three

10    minutes rebutting?

11         MR. LANDAU:  I would, Your Honor.

12         THE COURT:  And I'm -- let me just make it clear.

13    He's right and I'm not going to grant a continuance.  I think

14    that my inquiry to you with respect to what you would do with

15    that continuance has given me enough information to appreciate

16    that a continuance isn't necessary in this case.

17         So, if you would like to talk about the merits for

18    three or four minutes, that would be fine.  I have read

19    everything several times.

20         MR. LANDAU:  Understood, Your Honor.  The one issue I

21    would brief to you which seems to be to key and at the heart of

22    the inconsistency and the judicial estoppel is judicial

23    estoppel --

24         THE COURT:  Well, don't -- understand, don't think

25    I'm utilizing the Doctrine of Judicial Estoppel because that's

1   not what I'm utilizing.

2            MR. LANDAU:  Okay.

3            THE COURT:  So, if you want to do an appeal, make

4   sure it's clear or I will that I'm not utilizing judicial

5   estoppel for my determination.

6            MR. LANDAU:  Okay.  Being able to read the tea leaves

7   and seeing where this hearing is going, I'd like to address the

8   two little add-ons that were just added onto the end of the

9   request that were not in the papers, not requested in the

10  papers --

11           THE COURT:  Oh, you don't need to worry.  I'm not

12  going to do 180-day bar because it wasn't asked for and -- what

13  was the other one?

14           MR. LANDAU:  Retroactive --

15           THE COURT:  No, here's what happens.  The law is

16  going to guide what happens with respect to a dismissal.  The

17  law of the Ninth Circuit.

18           MR. LANDAU:  Thank you.

19           THE COURT:  And that's all that's going to happen.

20  If they happen to violate the automatic stay during the

21  pendency of this case, that's another issue for another day.

22           MR. LANDAU:  Very good.

23           THE COURT:  Thank you.

24           MR. LANDAU:  Your Honor, thank you for the time.

25           THE COURT:  All right.  So, first of all, the oral

1    motion for a continuance is denied.  The tentative as I have

2    now read it into the record stands and the bases for that are

3    the points that are made in the reply but I found them on my

4    own.  And the fact is that Mr. Bral on several occasions swore

5    under penalty of perjury that Mr. Beitler is a member and co-

6    manager even after the time he believed he says now that there

7    was a resolution or some other mechanism to remove Mr. Beitler

8    as a member, and those are set out in the reply brief.

9            So, for all of those reasons, Mr. Lallas, would you

10   please prepare an order granting your motion --

11           MS. LAWSON:  Your Honor --

12           THE COURT:  Oh, Ms. Lawson.  I know you want a

13   judgment.

14           MS. LAWSON:  Yes, I do.

15           THE COURT:  How much judgment do you want?

16           MS. LAWSON:  Six hundred fifty dollars.  Three

17   hundred --

18           THE COURT:  Yes, you may include that into the order.

19           MS. LAWSON:  Three hundred twenty-five dollars for

20   the fourth quarter of 2014 and 325 for the first quarter of

21   2015.

22           THE COURT:  That would be acceptable.  Do you have

23   that judgment?  Do you have to have an independent judgment?

24           MS. LAWSON:  The order dismissing the case should

25   carry the -- should contain the language.

1          THE COURT:  Mr. Lallas, would you be please so kind

2     as to confer with Ms. Lawson after the hearing to get the

3     precise numbers?

4          MR. LALLAS:  It would be a pleasure, Your Honor.

5          THE COURT:  Okay.  And do not --

6          MS. LAWSON:  Thank you.

7          THE COURT:  -- put into the order that any bars or

8     any issues with respect to when the stay is and isn't active,

9     the law will guide that.

10          MR. LALLAS:  I understand, Your Honor.

11          THE COURT:  Thank you very much.

12          MR. LALLAS:  Thank you, Your Honor.

13          MR. LANDAU:  Thank you, Your Honor.

14       (Concluded at 12:43 p.m.)

15                              *****

16

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T I O N

   I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

*Kathleen M. Price*
_____  2/25/15
Kathleen M. Price, AAERT Cert. No. 325  Date

FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

*Kathleen M. Price*
_____
Kathleen M. Price, AAERT Cert. No. 325
AD HOC TRANSCRIPTION, LLC

**EXHIBIT "C"**

1             UNITED STATES BANKRUPTCY COURT

2        CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA

3                 --oOo--

4 In Re:                 )   Case No. 8:15-bk-10624-SC
                      )
5 OCEAN VIEW MEDICAL INVESTORS, )   Chapter 7
  LLC,                 )
6                      )
  Debtor.             )   Santa Ana, California
7                    )   Thursday, 10:00 P.M.
  ----------------------------X   February 12, 2015

8

9                       HEARING RE: ORDER TO SHOW
                      CAUSE WHY THE ABOVE-
10                       CAPTIONED CASE SHOULD NOT
                      BE DISMISSED WITH 180-DAY
11                       BAR FOR BAD FAITH

12                TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE SCOTT CLARKSON
13           UNITED STATES BANKRUPTCY JUDGE

14 APPEARANCES:

15 For the Petitioning     PAUL A. BECK, ESQ.
  Creditors:           Law Offices of Paul A. Beck, APC
16                    13701 Riverside Drive, #701
                   Sherman Oaks, California  91423

17 Court Recorder:       Tamika Law
                   U.S. Bankruptcy Court
18                    Central District of California
                   Ronald Reagan Federal Building and
19                    United States Courthouse
                   411 West Fourth Street
20                    Santa Ana, California  92701-4593
                   (855) 460-9641

21

  Court Transcriptionist:  Ruth Ann Hager, C.E.T.**D-641
22                    Ben Hyatt Certified Deposition
                     Reporters
23                    17835 Ventura Boulevard, Suite 310
                   Encino, California  91316

24

25 Proceedings produced by electronic sound recording;
  transcript produced by transcription service.



Page                                                           2

1          SANTA ANA, CALIFORNIA, THURSDAY, FEBRUARY 12, 2015

2                              10:14 A.M.

3                              --oOo—

4          THE COURT:  #6.10, Ocean View Medical Investors,

5   LLC.  This is a hearing on a court-ordered *sua sponte*

6   request to show cause why the above-captioned case should

7   not be dismissed with 180-day bar for bad faith.  One

8   second, please.

9          (Pause)

10          Appearances, please.

11          MR. BECK:  Good morning, Your Honor.  Paul Beck,

12   B-E-C-K; my law firm on behalf of the petitioning

13   creditors who are present in court.  I'm prepared to

14   introduce them to the Court and would also tell the Court

15   that we have a fourth creditor present who is prepared to

16   be a petitioning creditor to join the petition and I'm

17   happy to introduce them to the Court if the Court would

18   like.

19          THE COURT:  Well, is Nuray DePriest here?

20          MR. BECK:  She is, Your Honor.  Ms. DePriest,

21   would you --

22          THE COURT:  She's waved her hand.  Doctor -- is

23   it Nghiem?

24          MR. BECK:  If you're talking about petitioning

25   creditor Elizabeth Nghiem, she's in surgery this morning.

Page                                                                    3

1   She's a surgeon.  Her brother Robert Nghiem is here and he

2   has a power of attorney to be here on her behalf this

3   morning.

4           THE COURT:  Okay.  And Ms. Lora and you wanted to

5   introduce me to a fourth person.

6           MR. BECK:  Yes, Your Honor.  That would be

7   Richard or Rick Martin, who is with an architectural

8   services firm.  Mr. Martin is present and --

9           THE COURT:  Very good.

10          MR. BECK:  I have a copy of the proof of claim

11  that was filed in the prior Chapter 11 case and from each

12  of the petitioning creditors and Mr. Martin's firm I have

13  evidence of their loans or services or other documentation

14  that bears out their status as non-contingent, undisputed,

15  unsecured creditors of the debtor -- the alleged debtor in

16  this case, Ocean View Medical Investors, LLC.

17          THE COURT:  Thank you very much.

18          MR. BECK:  You're welcome, Your Honor.  And

19  again, I'm prepared obviously to show the Court these

20  documents.  They are originals.  I do not have extra copies

21  for the Court, but I'm happy to show them to the Court and

22  provide them to the Court any way the Court likes.

23          THE COURT:  Thank you very much.  Why don't you

24  have a seat?

25          I appreciate the petitioning creditors being here

Page                                                              4

1   today and I appreciate your -- I'm sorry, I didn't catch

2   your name, sir.

3            MR. MARTIN:  Richard Martin.

4            THE COURT:  Mr. Martin, I appreciate you being

5   here, too.

6            We need to discuss something.  I think my

7   personal record of seeing creditors being sanctioned for

8   filing bad faith involuntary bankruptcy petitions with

9   $150,000 each, I think that's my personal record of

10  watching unsecured creditors get involved in things like

11  this.  Usually, they're only about $10,000 each for

12  sanctions and fines for filing these things.  And most of

13  the folks that get sanctioned get sanctioned a lower

14  amount, $5,000, $10,000, because they just didn't get told

15  a lot about the case.  They've said they got called up

16  usually and they said, oh, we need your help real quick, we

17  need you to do something, and they don't have a picture of

18  the totality of the circumstances.

19           This is federal court.  This isn't People's Court

20  that you see on television.  This isn't Divorce Court on

21  television.  It's a United States Federal Bankruptcy Court

22  and it's a very serious business and millions of dollars

23  are at stake.

24           It may appear odd at first glance to raise the

25  subject of bad faith in connection with involuntary

Page                                                                    5

1   petitions which, after all, are filed by creditors.  There

2   are court-imposed requirements of debtor good faith when a

3   voluntary petition is filed and creditor good faith when an

4   involuntary petition is filed.

5            If a debtor acts in a manner to promote an

6   involuntary bankruptcy simply to forestall a foreclosure or

7   for some other reason that involuntary bankruptcy should be

8   carefully scrutinized, we typically call it creditor

9   collusion -- collusion with the debtor or with the

10  principal of a debtor.  Most people who operate businesses

11  never involve themselves in things like this.

12           So I would like to call to the witness stand to

13  be sworn Ms. Lora.  Please come up.  You don't need to

14  stand.  Ms. Lora, would you please -- we're going to swear

15  you in under oath and that -- well, we'll talk about that

16  in a minute.  Would you please swear her in?

17           COURT RECORDER:  Please raise your right hand and

18  be sworn.

19                    SUSAN LORA, SWORN

20           THE COURT:  You have to speak up.

21           THE WITNESS:  Yes.

22           COURT RECORDER:  Please state your name for the

23  record and spell your last name.

24           THE WITNESS:  Susan Lora.

25           THE COURT:  And what is your address, your

Page                                                                6

1  business address?

2          THE WITNESS:  I work on the (indiscernible) right

3  now.

4          THE COURT:  Is that where you get your mail?

5          THE WITNESS:  No, it's at my house, at 2555 Main

6  Street, Apartment 2050, Woodland, California 92614.

7          THE COURT:  Please be seated.  I have some

8  questions for you.

9                        EXAMINATION

10 BY THE COURT:

11     Q.   You have sworn on this document that you're owed

12 $40,000.

13     A.   Yes.

14     Q.   And how did you become a creditor to this

15 company?

16     A.   Well, this is my life savings.  They owe us

17 (indiscernible), so I know Joe and he (indiscernible) --

18     Q.   I'm sorry.  You have to slow down and speak

19 clearly and use first and last names.  I don't know who

20 you're talking about when you say "I know Joe."

21     A.   Oh, okay.  My name is Susan Lora.

22     Q.   I'm sorry?

23     A.   My name is Susan Lora.

24     Q.   Yes, your name is Susan Lora.

25     A.   Okay.  Yes.  And they need to finish Ocean

Page                                                                      7

1   View --

2        Q.   Who do you know at Ocean View?

3        A.   Joe Bral.

4        Q.   Say it again.

5        A.   Joe Bral, J-O-N-G, Brown.

6        Q.   J-O --

7        A.   N -- sorry.

8        Q.   N.

9        A.   J-O-H-N.  John.

10       Q.   You mean John?

11       A.   John.

12       Q.   What's --

13       A.   Bral.

14       Q.   And what's his last name?

15       A.   Bral, B like boy, R-A, like apple, L.

16       Q.   Bral.

17       A.   Yes.

18       Q.   And did you loan John Bral some money?

19       A.   I borrowed to Ocean View Medical.

20       Q.   Did you invest?

21       A.   I lend them money to finish some (indiscernible).

22       Q.   And when did you lend it?

23       A.   In March 2012 and December 2012.

24       Q.   And who asked you for that money?

25       A.   Excuse me?

Page                                                                8

1      Q.   Who asked you for that money?

2      A.   John.

3      Q.   John?

4      A.   Bral.

5      Q.   Bral.  And he gave you a note?

6      A.   He gave me a notice promise.

7      Q.   And promissory note?

8      A.   Yes.

9      Q.   And I understand from Mr. Beck that he has a copy

10   of that?

11     A.   Yes, it's original.

12          MR. BECK:  I actually have the originals.

13          THE COURT:  Could I just see it?  I don't want

14   to --

15          MR. BECK:  Absolutely.  May I approach, Your

16   Honor?

17          THE COURT:  -- admit into evidence.  No, I want

18   to see it.  You can just bring it right up.

19          MR. BECK:  Thank you, Your Honor.

20          THE COURT:  It's good procedure, but we're

21   informal today.

22          MR. BECK:  I have (indiscernible -- away from

23   microphone) documentation for (indiscernible) similar

24   (indiscernible) as well.

25          THE COURT:  Thank you.  And I'll just leave it

Page                                                                    9

1   right here for now.

2            MR. BECK:  Very good, Your Honor.

3   BY THE COURT:

4        Q.   In the last five days -- in the last five days or

5   seven days who has contacted you about this bankruptcy?

6        A.   I was back and forth with Nuray --

7        Q.   No, I'm sorry.  Listen to me again.  Who called

8   you?

9        A.   Nuray.

10       Q.   Who?

11       A.   Nuray.

12           MR. BECK:  Your Honor, she's referring to

13  Ms. DePriest.

14           THE COURT:  N-U-R-A-Y, DePriest.

15           THE WITNESS:  Yes.

16           MR. BECK:  That's correct.

17           THE COURT:  All right.

18  BY THE COURT:

19       Q.   And she called you?

20       A.   Right.

21       Q.   And what did she tell you?

22       A.   That -- we know that it was (indiscernible) --

23       Q.   I'm sorry?

24       A.   They told me that the pay was dismissed.

25       Q.   I'm sorry?  I can't understand you.

Page                                                                    10

1    A.    They told -- she told me that the case was

2   dismissed.

3    Q.    A case was dismissed.

4    A.    And we have to do something more than to get our

5   money back.  She proposed me, you know, to send a letter to

6   you -- to the Court and I signed the letter on Sunday and

7   she just present them to you.

8    Q.    Okay.  What letter?

9    A.    For -- I said our petition to reopen the case or

10  something, you know, like that.

11   Q.    Did she tell you why the case was dismissed?

12   A.    What action -- yeah, that there was a

13  technicality.  I -- to be honest with you, honest, I don't

14  understand too much --

15   Q.    No, I want you to tell me exactly what she told

16  you.

17   A.    Oh, there was meeting for some technicality

18  problem they dismissed.  We don't understand why actually

19  really why they did that because we are real people --

20   Q.    I dismissed the case.

21   A.    Oh, okay.  Because we really are -- we are people

22  that we really claim the money because we have faith in

23  them.

24   Q.    But what did she tell you?

25   A.    That we have to -- we need to file this, you

Page                                                            11

1  know, and try to get our money back because this is real --

2  this is fir -- this is honest that we did.  We really --

3      Q.   And so you signed this document after she told

4  you you needed -- that you needed to do something to get

5  your money back?

6      A.   We need to do something.

7           THE COURT:  Thank you very much.  You may sit

8  down.

9           (Witness excused.)

10          Let's talk to Ms. DePriest.  You need to be

11  sworn, Ms. DePriest.

12          MS. DEPRIEST:  Sure.

13          COURT RECORDER:  Please raise your right hand to

14  be sworn.

15                   NURAY DEPRIEST, SWORN

16          COURT RECORDER:  Please state your name for the

17  record and spell your last name.

18          THE WITNESS:  Nuray DePriest, D-E-P-R-I-E-S-T.

19          THE COURT:  And what is your address?

20          THE WITNESS:  5151 Walnut Avenue, #25, Irvine,

21  92604.

22          THE COURT:  Please be seated.

23                      EXAMINATION

24  BY THE COURT:

25      Q.   Well, you were in court when you heard Ms. Lora



Page                                                          12

1  say that you called her.

2       A.   Yes.

3       Q.   Is that true?

4       A.   Yes, it is true.

5       Q.   And when did you call her?

6       A.   I -- you know, we --

7       Q.   Excuse me.  When did you call her?

8       A.   We actually started discussing this a couple of

9  weeks ago.

10      Q.   A couple of weeks ago?

11      A.   Yes.

12      Q.   Why would you talk about an involuntary petition

13 a couple of weeks ago?

14      A.   Because when we were -- you know, when I knew

15 that this was going into bankruptcy case, I start -- by the

16 way, I am a banker to both Barry Bettler and John Bral for

17 five years.

18      Q.   I'm sorry, you're a what?

19      A.   Banker.

20      Q.   A banker?

21      A.   Yes.

22      Q.   You're a banker?

23      A.   So --

24      Q.   What kind of a banker --

25      A.   -- I know both of them.

Page                                                          13

 1      Q.   -- are you?

 2      A.   When I met them in 2008/2009 I was working for

 3  Citizens Business Bank.  I'm a relationship manager.  I now

 4  work for Bank of the West.

 5      Q.   You work for Bank of the West?

 6      A.   Yes.  So I met them together and, you know, I

 7  know both of them really well.  When I knew that it's going

 8  to go in --

 9      Q.   Excuse me.  Let's try it again.  I ask a question

10  and you answer it.

11      A.   Okay.

12      Q.   So let's try it again.  When did you first talk

13  to Ms. Lora about this involuntary bankruptcy petition?

14      A.   When I realize that the case was dismissed --

15          THE COURT:  Mr. Beck, she's your client.

16          MR. BECK:  Yes, Your Honor.

17          THE COURT:  All right.  I'm encouraging you to

18  have her answer the question.

19          Let's try it one more time.  You need to

20  carefully listen -- no.

21          Ask her the same question.  Maybe she'll feel

22  better about it.

23          MR. BECK:  Very good, Your Honor.

24                        EXAMINATION

25  BY MR. BECK:



Page                                                                    14

1        Q.    Ms. DePriest, can you fix the time and tell the

2   Court the time, the date approximately when you spoke to

3   Ms. Lora about filing an involuntary petition against Ocean

4   View?

5        A.    I want to say I know Susan for a long time, so

6   couple of days ago.  I filed this on Monday.  I had the

7   paperwork before in my hand because I was very worried that

8   the bankruptcy case may not go through.

9             THE COURT:  Where did you get the involuntary

10  petition?

11            THE WITNESS:  I bank a couple of attorneys and I

12  bank legal -- lots of this legal assistance society --

13  Legal Aid Society of Orange County, so I went to federal

14  court.  I went into the bankruptcy.  I find the papers.  I

15  ask my clients and they also told me where to find, what to

16  find.

17            THE COURT:  Now, you're under oath.

18            THE WITNESS:  Yes.

19            THE COURT:  I'm going to ask you a very important

20  question and I want to remind you that you're under oath,

21  under penalty of perjury.

22            THE WITNESS:  Right.

23            THE COURT:  You can go to jail for not telling

24  the truth.

25            THE WITNESS:  Right.



Page                                                                15

 1          THE COURT:  Listen to me carefully.

 2          THE WITNESS:  Right.

 3    BY THE COURT:

 4      Q.   When did you first talk to an attorney for the

 5    debtor?

 6      A.   The attorney, you mean --

 7      Q.   The attorney for the debtor, Mr. Landau, or

 8    anyone else?  When did you find out that the case had been

 9    dismissed?

10      A.   I find out that the case was dismissed from John.

11    John Bral.

12      Q.   John --

13      A.   Bral.

14      Q.   John Bral?

15      A.   Yes.

16      Q.   B-R-A-L?

17      A.   And I find out -- yes.

18      Q.   When did you find out that --

19      A.   On Friday.

20      Q.   You found -- and did he call you or did you call

21    him?

22      A.   I called him.

23      Q.   Why did you call him?

24      A.   Because I was worried about us not getting -- me

25    personal not getting my money back.

Page                                                                    16

1      Q.   And so you -- he called -- you called him.  What

2  did he say?

3      A.   He says that unfortunately the case is dismissed.

4      Q.   And what did you tell him?

5      A.   I just -- I freaked out.

6      Q.   What did you tell him?

7      A.   I didn't tell him anything.  He says, "I'm very

8  sorry; the case is dismissed."  And after that I start -- I

9  know Robert.  I know Susan.

10     Q.   What did you tell him?

11     A.   I didn't tell him anything.  I said --

12     Q.   Did you say, "I'm going to file an involuntary

13 petition"?

14     A.   Not to him.

15     Q.   Who did you tell it to?

16     A.   I talked to Susan and I talked to Robert.

17     Q.   You didn't tell John Bral that you were going to

18 file the involuntary petition?

19     A.   No.

20     Q.   Really?

21     A.   No.  No, I told him that I just have to do

22 something about it.

23     Q.   Did you tell him that you were going to file the

24 involuntary petition?

25     A.   No.

Page                                                                17

1        Q.    Did you tell his attorney?

2        A.    I don't know John's attorney.

3        Q.    Did you tell -- did he tell you where to get the

4   forms?

5        A.    No.  No, no.  But as I said, it's pretty simple

6   to find --

7        Q.    I know how to find them.

8        A.    I know.  Well, it took me some time to find it.

9   I find it.  And it --

10       Q.    So you talked to no one else about this

11  involuntary petition?  You are the organizer?

12       A.    I am the organizer.

13       Q.    And so you went to some friends and the website

14  and picked up the involuntary petition and filled it out?

15       A.    Yes, that's exactly how I did.

16       Q.    And who typed it up?

17       A.    I typed it up.

18       Q.    Now, when did you call Ms. Lora?

19       A.    I called -- I met Susan on Sunday, Sunday

20  afternoon, to have her sign the papers.

21       Q.    Did you tell her that the case had been

22  dismissed?

23       A.    Yes.

24       Q.    And did you -- why did you believe that the

25  case -- the involuntary case needed to be refiled -- or

Page                                                                    18

1  needed to be filed?

2       A.   I wasn't 100 percent sure but, as I said, I have

3  some clients who are in the both sides of the fences.  I

4  mean, I did a lot of --

5       Q.   No, I'm sorry --

6       A.   -- calls --

7       Q.   -- it's a very simple question.  Why do you think

8  you needed to file this?

9       A.   Because I feel like we need to save our monies

10 and I don't know what else to do.  I just -- you know, the

11 case is dismissed.  I know -- I didn't really realize that

12 the case will be dismissed knowing that, you know, so many

13 people are waiting for their money.  When it was dismissed

14 on Friday, I just -- you know, this is my $75,000.  I don't

15 have it laying around.

16      Q.   I'm sorry, $5,000?

17      A.   $75,000.  So I needed to have the money back and

18 I just -- I really didn't know what to do, how to do.  I

19 just find out about this form, complete it, and called the

20 two people that I knew before, and I know them for a really

21 long time and we just --

22      Q.   And who else did you call?

23      A.   I just filed.  I called Robert.

24      Q.   Robert?

25      A.   Yes.



Page                                                              19

1      Q.    And he didn't sign this?

2      A.    No, it is (indiscernible).  I was a banker for

3  Robert and it was (indiscernible) when they were buying

4  (phonetic) Ocean Medical, the third floor.  I work under

5  loans.  We didn't do it; Wells Fargo did, but that's how I

6  met them, so I know both of them for like, I don't know,

7  three years.

8      Q.    So you didn't talk to Mr. Bral about filing an

9  involuntary bankruptcy?

10     A.    Who?

11     Q.    Mr. Bral.

12     A.    No, no.  I told him, "I need to do something,"

13  but --

14     Q.    And what did he say?

15     A.    He said, "You've got to do what you've got to do.

16  I cannot help."

17     Q.    And what does he mean by that?

18     A.    He says, "I cannot help you."

19     Q.    Why couldn't he?

20     A.    I don't know.  I just -- I was so pissed.

21     Q.    He said that, he said, "I can't help you"?

22     A.    He said, yeah, "There is nothing I can do.  This

23  has been dismissed."

24     Q.    He didn't say you need to file an involuntary

25  bankruptcy?



P 888.272.0022  F 818.343.7119          www.benhyatt.com

Page                                                                          20

```
 1        A.   No, no.  I'm pretty sure he maybe know that I

 2   will do something.  I'm just not going to sit and wait but,

 3   no, he was upset; I was upset.

 4             THE COURT:  Thank you.  You may step down.

 5             (Witness excused.)

 6             You may take this back, Mr. Beck.

 7             MR. BECK:  Thank you.

 8             (Pause)

 9             THE COURT:  Mr. Beck, when is the foreclosure

10   sale scheduled?

11             MR. BECK:  I don't know, Your Honor.  I'd have to

12   consult to see if my -- my clients know, but I don't have

13   that information at present.

14             THE COURT:  Why don't you consult them?

15             (Pause)

16             MR. BECK:  Your Honor, unfortunately my clients

17   don't have that information either.  I don't -- I don't

18   know.  I could find out, but I don't have that information.

19             THE COURT:  Is it soon?

20             MR. BECK:  Unfortunately, Your Honor, my

21   knowledge of the case is -- goes back less than 24 hours

22   and I unfortunately don't have that information.

23             THE COURT:  And --

24             MR. BECK:  I certainly can report back to the

25   Court.
```

Page                                                            21

1          THE COURT:  No, thanks.  There's no single test

2   for determining whether an involuntary petition should be

3   dismissed as having been filed in bad faith.  Bad faith

4   very much depends on facts in each case.  I'll cite for you

5   the case of *In Re: Mi La Sul*, M-I  L-A  S-U-L, 380 B.R.

6   546, Bankruptcy Central District of California, Judge Mund,

7   2007.

8          "Dismissal of an involuntary petition as having

9      been filed in bad faith is justified anytime that

10     petitioning creditors use involuntary petitions to

11     gain advantage of a particular creditor's position.

12     There's a presumption of good faith by petitioning

13     creditor in filing an involuntary petition, but that

14     presumption can be overcome based on the totality of

15     the circumstances."

16         Ocean View Medical Investors, LLC, in case number

17  8:14-18 -- pardon me -- 16860 was pending last week and the

18  motion of managing member Barry Bichler (phonetic) to

19  dismiss the bankruptcy for lack of authorization came on

20  for hearing before this Court at that time on January 29,

21  2000 -- excuse me, hold one second.  I guess it came on for

22  hearing on January 29, 2015, and an order dismissing the

23  case was February 6, 2015.

24         Say it right now the Court does not believe the

25  testimony that has just been given.  I find it

Page                                                                22

1   untrustworthy and I find it inconceivable that Mr. Bral did

2   not tell you about the possibility of an involuntary

3   bankruptcy.  I think the totality of the circumstances

4   warrants that this case be dismissed as bad faith with

5   respect to the creditors.  I just -- again I'll repeat it.

6   I don't believe the testimony that I've heard.  I do not

7   believe that Mr. Bral would have just closed his mouth and

8   told you that, oh, well, I can't talk to you about this, I

9   can't tell you.  I don't believe it.

10        For that reason, I am dismissing this case with a

11  180-day bar against the filing of an involuntary petition

12  against Ocean View Medical Investors, LLC, and for any

13  other activity with respect to the property for 180 days,

14  and that is the order of this Court today.  Thank you, Mr.

15  Beck?

16        MR. BECK:  Your Honor, may I address the Court?

17        THE COURT:  No, sir.  You can address the Court,

18  sure, but that's my findings.

19        MR. BECK:  Okay.  Just for the record, Your

20  Honor, there are a handful of other unsecured creditors in

21  the case besides the four creditors who are here today.

22  And I believe, Your Honor, that these are all -- I believe

23  that they are all legitimate creditors.

24        THE COURT:  And I believe that they may be, but I

25  believe that there's been collusion in this particular

Page                                                                    23

1    petition.

2              MR. BECK:  I understand.

3              THE COURT:  I believe there's collusion.  Your --

4    Mr. Beck, you and I have known each other a long time.  You

5    and I have been involved in the bankruptcy business a long,

6    long time.  I know in my heart you didn't believe her

7    either.  They don't -- it doesn't work that way.  I have no

8    doubt that the debtors or the debtors' principals who

9    wanted this case to continue went out and solicited.  And

10   how I divined that it was inaccurate testimony is because

11   of the substance of the testimony when she was so clear

12   that, oh, he said nothing.  She was so clear in trying to

13   create a record that Mr. Bral told her nothing about the

14   involuntary petition.  That's what was so unbelievable

15   about her testimony.

16             I know that it doesn't work that way and I'm

17   using my experience.  And you are a very experienced

18   counsel, too.  And I don't need you to respond to my

19   assertion of what you believe because, again, I can't speak

20   for you, but that's my experience.  And I'm telling you

21   right now that this case strikes me in the totality of the

22   circumstances, this involuntary as a setup job that was

23   used as -- and it was collusive between the principals of

24   Ocean View Medical Investors, LLC, who want the protection

25   of an involuntary bankruptcy because their original

Page                                                                    24

1   bankruptcy could not be -- could not go forward because

2   they had actually not told the truth to this Court earlier

3   about the dismissal of Mr. Bichler or Brightler.  I guess

4   it was Bichler.

5            MR. BECK:  I think it's Bichler, Your Honor.

6            THE COURT:  Bichler.  You see, there's history

7   that these creditors don't understand in this case and

8   you've only been involved after 24 hours, but you need

9   to -- if you want to, you should go back and listen [*sic*]

10  to the transcript of the January 29 hearing when you saw --

11  when it was demonstrated that Mr. Bral had perhaps

12  fabricated documents to demonstrate that Mr. Bichler had

13  been removed and in legal pleadings after that -- or pardon

14  me, he created that document after the fact because in

15  legal documents that occurred after the dated dismissal of

16  Mr. Bichler, they tell the state courts that he was already

17  still the managing member.  And they swore to it under

18  penalty of perjury in state court actions to try to get

19  receivers.

20           Go to state court and work on getting an

21  injunction perhaps in this situation, but don't use the

22  Bankruptcy Court to get a free, cheap involuntary

23  bankruptcy automatic stay.  That's what this Court is

24  talking about.  I'm not fining anybody today for what

25  they've done.  I think they've probably been pawns in this

Page                                                              25

1  fight that's between Mr. Bichler and Mr. Bral.  I don't

2  blame you, but the fact is that you've been used and that's

3  what has to happen here.

4          I'm not going to use the Bankruptcy Court system

5  for this type of structure.  Go to state court if you want

6  to get an injunction.  I will remind you that they've

7  already tried in state court several times and that's when

8  they -- from this Court's view the perceived perjury

9  occurred in state court pleadings or alternatively they

10 purged themselves -- or perjured themselves here when they

11 told me that Mr. Bichler had been removed.  Go back and

12 read those files if you'd like, if you have the time or

13 energy or desire.

14         That's what's going on here.  And I know you

15 don't know a lot about this.  Don't get too deep into the

16 weeds on this case unless we really want to drill down on

17 some problems of perjury and other issues.

18         MR. BECK:  Your Honor, thank you for explaining

19 the Court's thinking and for your comments.  My concern as

20 a lawyer who represents both creditors and debtors and

21 trustees and all kinds of insolvency matters in Chapter 11

22 and Chapter 7 throughout the District, is for the unsecured

23 creditors in the case.  There are about two and a half-

24 million dollars of debt to unsecured creditors.  Before --

25         THE COURT:  Do you know what the debt structure

Page                                                          26

1  of this case is because I do.  Do you know what -- you're

2  making the argument that there are unsecured creditors who

3  could get paid in this case.  Do you understand the debt

4  structure of this case?

5          MR. BECK:  In a very simplistic manner, Your

6  Honor, based on my review of a couple documents.

7          THE COURT:  Okay.  Good.

8          MR. BECK:  I have not had the opportunity to --

9          THE COURT:  Have you seen, for instance, the

10  schedules of Ocean View?

11          MR. BECK:  I have.

12          THE COURT:  Okay.  And so you understand the

13  position of the unsecured creditors at this point?

14          MR. BECK:  I do.  And here's my quick

15  perspective, Your Honor, and I appreciate the Court giving

16  me the opportunity to explain it from my perspective.  The

17  property appears to be worth -- or capable of producing a

18  sale price in the neighborhood of seven to seven and a

19  half-million dollars.

20          THE COURT:  Then they should go out and get a

21  buyer and buy it.

22          MR. BECK:  I think that in order to get to a

23  point where they could sell it, as I understand it, they

24  have to be able to report a subdivision map because there

25  are three condominium floors.  That's going to take three

Page                                                                  27

1  or four months.

2          I assume that that period of time is far longer

3  than any secured creditor would wait to take action by way

4  of foreclosure or anything else.

5          THE COURT:  Well, do you know how long the

6  secured creditor has been waiting?

7          MR. BECK:  I do not, Your Honor.

8          THE COURT:  Okay.

9          MR. BECK:  In truth, I'm not going to tell the

10 Court anything I don't know.

11         My concern is about the petitioning creditors and

12 the other unsecured creditors.  And my offer to the Court,

13 for the record, would be that if I had another ten days or

14 a week or whatever I believe I could get -- I believe other

15 creditors would seek to join a petition.

16         THE COURT:  That's not the -- you're missing the

17 point.  You can have 1,000 unsecured creditors here today

18 signing a petition.  It was generated by -- it was

19 generated on the fly and it -- from all the evidence I

20 have, including the testimony and appreciating the

21 testimony that I've heard, it strikes me that this is a

22 collusive and voluntary bankruptcy.  And it's interesting

23 and I want to make it perfectly clear on the record that

24 it's sort of like the Sherlock Holmes matter where the dog

25 that didn't bark.  I don't know if you know my reference.

Page                                                                    28

 1          MR. BECK:  I can gather from it, Your Honor.  I

 2  don't --

 3          THE COURT:  It's Mr. Nelson --

 4          MR. BECK:  Mr. Martin.

 5          MR. MARTIN:  Martin.

 6          THE COURT:  Martin knows what I'm talking about.

 7  It's the dog that didn't bark in that testimony that I

 8  heard.

 9          Those phone calls don't work that way.  They

10  never work that way.  They say, "Look, I need some help.

11  We've got to work on this now.  You've got to find me three

12  other creditors or two other creditors and we've got to put

13  this in voluntary petition together really quickly."  And

14  had that been the testimony there would have been different

15  circumstances to evaluate, but the fact is that because of

16  the crystal clarity of her testimony, that was why it was

17  so unbelievable and that's what I'm -- I'm using my

18  judicial determination on.

19          So my ruling stands.  I appreciate your comment.

20  Thank you very much.  We'll prepare an order.  This case is

21  dismissed --

22          MR. BECK:  Very well.

23          THE COURT:  -- with an 880-day [*sic*] bar.

24          MR. BECK:  800 -- I think --

25          THE COURT:  One hundred and eighty-day bar.

Page                                                                    29

1          MR. BECK:  Right.

2          THE COURT:  Thank you.

3          MR. BECK:  Thank you.

4          THE COURT:  Court is in recess.

5  (End at 10:48 a.m.)

6                    *  *  *  *  *  *  *  *

7          I certify that the foregoing is a correct

8  transcript from the electronic sound recording of the

9  proceedings in the above-entitled matter.

10

11

12  _____        Date: February 20, 2015

13  RUTH ANN HAGER, C.E.T.**D-641

14

15

16

17

18

19

20

21

22

23

24

25

P 888.272.0022  F 818.343.7119      BENHYATT    www.benhyatt.com
                                    Certified Deposition Reporters

# EXHIBIT "D"



FILED & ENTERED

FEB 12 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY nbolte     DEPUTY CLERK

1
2
3
4
5
6
7

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – Santa Ana Division**

8

In re

9

Ocean View Medical Investors LLC,

10

    Debtor.

Case No. 8:15-bk-10624-SC

Chapter 7

**ORDER DISMISSING INVOLUNTARY
CHAPTER 7 CASE AND IMPOSING A
180-DAY BAR TO REFILING**

Date: February 12, 2015
Time: 10:00 a.m.
Courtroom 5C

11
12
13
14
15

    An involuntary Chapter 7 was filed against Alleged Debtor, Ocean View Medical

16

Investors, LLC ("Ocean View Medical"), on February 9, 2015, by petitioning creditors,

17

Nuray DePriest, Elizabeth Nghiem, and Susan Lora.  The Court issued an Order to

18

Show Cause Why Case Should Not Be Dismissed With a 180-Day Bar on 2/9/15 [Dk. 2]

19

("OSC"). The OSC specifically stated that "[a]ll petitioning creditors and their counsels

20

are required to appear at the OSC." [Dk. 2, lines 18-19]  A hearing on the OSC was

21

held on February 12, 2015 at 10:00 a.m. in Courtroom 5C of the United States

22

Bankruptcy Court, 411 West Fourth Street, Santa Ana, CA 92701.  Petitioning creditors,

23
24

1    Nuray DePriest and Susan Lora appeared. Petitioning creditor Susan Lora did not

2    appear.[1] Charles Beck, Esq., appeared on behalf of all petitioning creditors.

3        The Court issued the OSC in light of (1) the proximity of the filing of the

4    involuntary petition, on Monday, February 9, 2015, to the dismissal of Ocean View

5    Medical's prior Chapter 11 filing, Case No. 8:14-bk-16860, on the previous Friday,

6    February 6, 2015 (order entered 2/6/15 [Dk. 43]); and (2) the several allegations of bad

7    faith, forum shopping, and perjury asserted in connection with the motion to dismiss in

8    the prior Chapter 11 proceeding.

9        A.    Testimony at the OSC

10       The Court took testimony from both Ms. Lora and Ms. DePriest.  Ms. Lora

11   testified that Ms. DePriest called her and told her that the case was dismissed, that they

12   needed to get their money back and asked her if she would sign the involuntary petition.

13       Ms. DePriest testified that she spoke to John Bral on Friday (i.e., February 6,

14   2015), who confirmed that the case had been dismissed and told her she needed to do

15   whatever she thought was right. Ms. DePriest further testified that she was a banker,

16   that she asked her clients where to get the involuntary petition forms, that she obtained

17   the involuntary forms herself, and that she filed them herself, with no help from Mr. Bral

18   or Mr. Bral's attorney.  However, Ms. DePriest also testified that she had been

19   considering an involuntary proceeding for "several weeks."

20       The Court notes that Ms. DePriest was evasive and non-responsive to several of

21   the Court's questions, including the questions about why she had been considering an

22   involuntary for "several weeks."  During her testimony, the Court had to remind her that

23

24   _____

[1] Mr. Beck represented that Ms. Nghiem sent her brother in her stead, with a power of attorney.

2

1    she was under oath.  Ms. DePriest's responses regarding who she talked to and the

2    substance of her conversations were vague and evasive with one exception—Ms.

3    DePriest testified that she knew with certainty that she never discussed an involuntary

4    petition with Mr. Bral. The Court found Ms. DePriest's testimony to lack credibility.

5        Moreover, it is clear to the Court that Ms. Lora did not fully understand what she

6    signed and why she had signed it.  Ms. Lora was participating at the request of Ms.

7    DePriest.

8        B.     <u>Court Determines Credibility of Witnesses</u>

9        The Court is in the best position to judge the credibility of witnesses. <u>See</u> <u>In re</u>

10    <u>Thiara</u>, 285 B.R. 420, 427 (9th Cir. BAP 2002) ("On appeal, the reviewing court shall

11    give 'due regard . . . to the opportunity of the bankruptcy court to judge the credibility of

12    the witness.' Fed. R. Bankr. P. 8013. This deference is also given to inferences drawn

13    by the trial court.") (internal citations omitted).  Here, based upon Ms. DePriest's

14    demeanor, the difficulty the Court encountered in eliciting testimony from Ms. DePriest,

15    the manner in which she provided vague and evasive testimony in certain areas, as

16    opposed to the clarity and decisiveness in which she responded to others, and taking

17    into consideration that short time which has elapsed (the hearing occurred on February

18    12, 2015; the events about which she testified occurred between Friday, February 6 and

19    Monday, February 9, 2015), the Court found her testimony unbelievable.

20        C.     <u>Standards for Dismissal in an Involuntary</u>

21        "There is no single test for determining whether an involuntary petition should be

22    dismissed as having been filed in bad faith. It depends on the facts of each case." <u>In re</u>

23    <u>Mi La Sui</u>, 380 B.R. 546 (Bankr. C.D. Cal. 2007).  "Although there is a presumption of

24

good faith in favor of the petitioning creditor, this can be overcome when the court looks

at the totality of the circumstances." Id. The test is an objective test: "If a reasonable

person would believe that these actions constitute bad faith, then the court should find

they are bad faith." Id.

In the present case, Ocean View Medical's Chapter 11 case was dismissed by

an order entered less than two weeks ago, on Friday, February 6, 2015. The following

Monday, certain creditors, who were not active in the Chapter 11 case, filed this

involuntary petition.

In the context of the dismissal argument in the initial Chapter 11 case, evidence

was presented that perjury had been committed by Mr. Bral and that documents had

been fabricated. Moreover, the evidence submitted demonstrated a long pattern of Mr.

Bral filing pleadings in various courts in an effort to stave off a pending foreclosure, all of

which had been denied. The spear-heading petitioning creditor, Ms. DePriest, admitted

she spoke to Mr. Bral on Friday, February 6, 2015, the day the case was dismissed and

then, over that weekend, solicited other creditors and filed an involuntary petition on

Monday, February 9, 2015. Less than one week later, Ms. DePriest is unable (or

unwilling) to provide clear and direct testimony to this Court, and instead testifies in a

vague and evasive manner (except with respect to her denial of discussions of an

involuntary proceeding with Mr. Bral).

The Court finds that the timing of the filing, combined with all of the foregoing,

indicates bad faith.

1     **IT IS HEREBY ORDERED** that this case is DISMISSED with a 180-day bar to

2 refiling.

3                   ###

Date: February 12, 2015

Scott C. Clarkson
United States Bankruptcy Judge

| | |
|---|---|
| 1 | # NOTICE OF ENTERED ORDER AND SERVICE LIST |
| 2 | Notice is given by the court that a judgment or order entitled (*specify*) **ORDER DISMISSING INVOLUNTARY** |
| 3 | **CHAPTER 7 CASE** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below: |
| 4 | **I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **February 12, 2015**, the |
| 5 | following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below: |
| 6 | United States Trustee (SA)      ustpregion16.sa.ecf@usdoj.gov |
| 7 | ☐ Service information continued on attached page |

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

Nuray DePriest
5151 Walnut Ave #25
Irvine, CA 92604

Susan Lora
2555 Main St 2050
Irvine, CA 92614

Elizabeth Nghiem
11190 Warner Ave #301
Fountain Valley, CA 92708

Ocean View Medical Investors LLC
2601 Main St Suite 960
Irvine, CA 92614

Lewis R Landau
22287 Mulholland Hwy., # 318
Calabasas, CA 91302
888-822-4340
Fax : 888-822-4340
Email: Lew@Landaunet.com

Mark Hurwitz
Tom Tallas
Levy, Small & Lallas
815 Moraga Drive
Los Angeles, CA 90049-1633
Email: mhurwitz@lsl-la.com, dsmall@lsl-la.com

☒ Service information continued on attached page

Barry Beitler
825 S. Barrington Ave.
Los Angeles, CA 90049-6759

INTERNAL REVENUE SERVICE
PO BOX 7346
PHILADELPHIA, PA 19101-7346

Beck & Martin Architects
1400 Quail St. #120
Newport Beach, CA 92660-2775

Joe C. Bral
4757 Sierra Madre Rd.
Santa Barbara, CA 93110-1319

Charlin Family Trust
344 S. Bedford Dr
Beverly Hills, CA 90212-3725

John Bral
Bral Realty Advisors Inc
2601 Main Street, Suite 960
Irvine, CA 92614-4217

County of Orange
Attn: Treasurer-Tax Collector
P.O. Box 1438
Santa Ana, CA 92702-1438

Madison Harbor Law
17702 Mitchell North
Irvine, CA 92614-6013

County of Orange
P.O. Box 4515
Santa Ana, CA 92702-4515
Attn: Bankruptcy Unit

Merle S. Robboy, MD
Georgette Robboy
1119 Sunflower Ave
Costa Mesa, CA 92626-1629

David R. Reinstadler, M.D. Inc
Amy M. Reinstadler M.D. Inc.
C/o Adam J. Soibelman, Agent for
Service
23901 Calabasas Rd, # 2006
Calabasas, CA 91302-1592

Michael Meisenbach
3991 MacArthur Blvd. Ste 100
Newport Beach, CA 92660-3030

Michael Schafer
22129 Serenade Ridge
Murrieta, CA 92562-3056

Dr. Nghiem
11190 Warner Ave., # 301
Fountain Valley, CA 92708-4047

Nuray DePriest
5151 Walnut Ave #25
Irvine CA 92604-2473

Gutierrez Landscaping
432 S. Starboard St
Santa Ana, CA 92704-1065

Premier Business Bank
700 S. Flower St #2000
Los Angeles, CA 90017-4240

Hankey Capital, LLC
c/o Eugene M. Leydiker
4751 Wilshire Blvd., #110
Los Angeles, CA 90010-3838

RAMM Engineering
15216 S. Frailey Ave
Compton, CA 90221-3104

Richard Kevin Quick
Christina Lynne Quick
3470 S Crawford Glen
Santa Ana, CA 92704-7162

Ryan Huntsman
2179 Vista Entrada
Newport Beach, CA 92660-3937

Smoke Guard
1915 Mark Court #100
Concord, CA 94520-1296

Sonitrol
1334 Blue Oaks Blvd
Roseville, CA 95678-7014

Soo Mi Lee
14252 Culver Drive # A349
Irvine, CA 92604-0317

Special Default Services Inc.
17272 Redhill Ave
Irvine, CA 92614-5628

Susan Lora
2555 Main Street # 2050
Irvine, CA 92614-3217

Sydney Soffer
445 Newport Boulevard
Newport Beach, CA 92663

ThyssenKrupp
2455 E. Parleys Way #110
Salt Lake City, UT 84109-1244

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled: **DECLARATION OF KRIKOR J. MESHEFEJIAN AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT BARRY BEITLER'S OPPOSITION TO MOTION TO BIFURCATE ISSUES OF LIABILITY AND DISCHARGEABILITY IN ADVERSARY, OR TO STAY ADVERSARY UNTIL UNDERLYING LIABILITY ON CLAIMS IS DETERMINED IN ANOTHER PROCEEDING** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 5, 2017,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Beth Gaschen    bgaschen@wgllp.com,**
  **kadele@wgllp.com;lfisk@wgllp.com;lgauthier@lwgfllp.com;nlockwood@lwgfllp.com**
- **Mark D Hurwitz    mhurwitz@lsl-la.com, dsmall@lsl-la.com**
- **Gary E Klausner    gek@lnbyb.com**
- **William N Lobel    wlobel@lwgfllp.com,**
  **nlockwood@lwgfllp.com;jokeefe@lwgfllp.com;banavim@wgllp.com**
- **Krikor J Meshefejian    kjm@lnbrb.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

**2.  SERVED BY UNITED STATES MAIL**: On **October 5, 2017,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be <u>completed</u> no later than 24 hours after the document is filed.

☐ *Service information continued on attached page*

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):**  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 5, 2017,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

### ***Served via Overnight Mail***
Hon. Scott C. Clarkson
United States Bankruptcy Court
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 5, 2017 | Stephanie Reichert | */s/ Stephanie Reichert* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.