

William N. Lobel, State Bar No. 93202
wlobel@lwgfllp.com
Alan J. Friedman, State Bar No. 132580
afriedman@lwgfllp.com
Beth E. Gaschen, State Bar No. 245894
bgaschen@lwgfllp.com
**LOBEL WEILAND GOLDEN FRIEDMAN LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Telephone 714-966-1000
Facsimile 714-966-1002

Attorneys for Defendant and
Debtor and Debtor-in-Possession
John Jean Bral

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

In re

JOHN JEAN BRAL,

Debtor and Debtor-in-Possession.

---

BARRY BEITLER,

Plaintiff,

v.

JOHN JEAN BRAL,

Defendant.

Case No. 8:17-bk-10706-SC

Chapter 11

Adv. Case No. 8:17-ap-01092-SC

**DEFENDANT JOHN JEAN BRAL'S MOTION FOR ORDER DISMISSING WITH PREJUDICE ALL CLAIMS FOR RELIEF ASSERTED BY PLAINTIFF BARRY BEITLER PURSUANT TO F.R.C.P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF JOHN JEAN BRAL IN SUPPORT THEREOF**

**[COMPENDIUM OF EXHIBITS AND DECLARATION OF LORI GAUTHIER FILED CONCURRENTLY HEREWITH]**

**Hearing Date and Time:**

**DATE: December 7, 2017**
**TIME: 11:00 a.m.**
**PLACE: Courtroom 5C**
**411 West Fourth Street**
**Santa Ana, California 92701**

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT .......... 3

II. SUMMARY OF MATERIAL FACTS .......... 4

A. The SPEs .......... 4

B. Westcliff and Mission and Beitler's Contract, Member Benefit and Breach Claims .......... 6

1. Beitler's Claims Related to the LLCs .......... 7

C. The Management Entities and Beitler's Claims Regarding the Payment of Management Fees and Commissions .......... 9

III. THE BURDEN OF PROOF UNDER F.R.C.P. 12(B)(6) .......... 12

A. Beitler's Contract, Member Benefit and Breach Claims Are Barred by the Statute of Limitations, the Parol Evidence Rule and the Doctrines of Waiver and Estoppel .......... 13

B. Beitler's Claims Based on the Payment of Management Fees and Commissions are Barred by a Lack of Standing, the Statute of Limitations and the Doctrine of Laches .......... 16

1. Beitler's Claims Based on Management Fees and Commissions Do Not Satisfy the Standing Requirement .......... 16

C. Any Claim Based on the Operating Agreements Would Be Barred by the Statute of Limitations .......... 17

D. Any Claim Based on the Initial VREG Agreement is Untenable and Would in Any Event Be Barred by the Statutes of Limitations .......... 18

E. Any Claim Based on the VREG Management Agreement, the VREG Brokers Agreement and/or the VREG Deferral Agreement is Barred by the Statutes of Limitations .......... 19

F. Beitler's Claims are Barred by the Doctrine of Laches .......... 20

G. The Fiduciary Relationship Required For Relief Under 11 U.S.C. § 523(a)(4) Is Not Present On The Facts Alleged .......... 21

IV. CONCLUSION .......... 22

Westcliff and Mission and Beitler's Contract, Member Benefit and Breach Claims .......... 24

The Management Entities and Beitler's Claims Regarding the Payment of Management Fees and Commissions .......... 25

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Am. Master Lease LLC v. Idanta Partners, Ltd., 225 Cal. App. 4th 1451, 171 Cal. Rptr. 3d 548 (2014), *as modified* (May 27, 2014) ........ 19

Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) ........ 12

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1968-69 (2007) ........ 12

Benson v. Arizona State Bd. of Dental Examiners, 673 F.2d 272, 275-76 (9th Cir. 1982) ........ 12

Burch v. Premier Homes, LLC, 199 Cal. App.4th 730, 131 Cal. Rptr. 3d 855 (2011) ........ 14

Danjaq LLC v. Sony Corp., 263 F.3d 942 (9th Cir. 2001) ........ 20

Dura, supra, at 346; Asahi Glass Co. v. Pentech Pharmaceuticals, Inc., 289 F. Supp. 2d 986, 995 (ND Ill. 2003) ........ 12

Fuller v. First Franklin Financial Corp., 216 Cal.App.4th 955, 163 Cal.Rptr.3d 44 (2013) ........ 19

Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) ........ 12

In re Cantrell, 329 F.3d 1119, 1125 (9th Cir. 2003) ........ 21

Informix Software, Inc. v. Oracle Corp., 927 F.Supp. 1283, 1285 (N.D. Cal. 1996) ........ 12

Kay v. Kay, 188 Cal. App. 2d 214, 10 Cal. Rptr. 196 (1961) ........ 15

Khan v. CitiMortgage, Inc., 975 F. Supp. 2d 1127 (E.D. Cal. 2013) ........ 15

Latta v. Western Inv. Co., 173 F.2d 99 (1949) ........ 20

Lennar Mare Island, LLC v. Steadfast Ins. Co., 139 F. Supp. 3d 1141 (E.D. Cal. 2015) ........ 13, 18

Magic Kitchen LLC v. Good Things Int'l Ltd., 153 Cal. App. 4th 1144, 63 Cal. Rptr. 3d 713 (2007) ........ 20

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

Miller v. Glenn Miller Productions, Inc., 454 F.3d 975 (9th Cir.2006) .......... 20

N. Star Reins. Corp. v. Super. Ct., 10 Cal. App. 4th 1815, 13 Cal. Rptr. 2d 775 (1992) .......... 13, 18

Outboard Marine Corp. v. Super. Ct., 52 Cal. App. 3d 30, 124 Cal. Rptr. 852 (1975) .......... 15

*Papasan v. Allain*, 478 U. S. 265, 286 (1986) .......... 12

Saterbak v. Nat'l Default Servicing Corp., 2016 WL 4430922 (S.D. Cal. Aug. 22, 2016) .......... 13, 18

Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) .......... 17

Vinci v. Waste Management, Inc., 36 Cal.App.4th 1811 (1995) .......... 15

William L. Lyon & Associates, Inc. v. Superior Court, 204 Cal.App.4th 1294, 139 Cal.Rptr.3d 670 (2012) .......... 19

Youngman v. Nevada Irrigation, 70 Cal. 2d 240, 74 Cal. Rptr. 398, 449 P.2d 462 (1969) .......... 15

Zakaessian v. Zakaessian, 70 Cal. App. 2d 721 (1945) .......... 13, 18

**Statutes**

Sections 523(a)(2)(A), (4) and (6) .......... 3

11 U.S.C. § 523(a)(4). .......... 21

Cal. Civ. Code § 3527 .......... 20

Cal. Code Civ. Proc. § 339 .......... 18

Cal. Code. Civ. Proc. § 339 .......... 16

Cal. Code. Civ. Proc. § 1856(a) .......... 14

**Other Authorities**

2 Witkin, Cal. Evidence (5th Ed. 2012), Documentary Evidence, § 66, p. 207 .......... 14

4 Wright & Miller, Federal Practice and Procedure § 1357 .......... 13

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) .... 12

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, BARRY BEITLER, AND ALL OTHER INTERESTED PARTIES:**

John Jean Bral, the debtor and debtor-in-possession in the above-captioned chapter 11 case and the defendant herein (the "Debtor" or "Bral"), hereby moves the Court, pursuant to Federal Rule of Bankruptcy Procedure 7012, adopting Federal Rule of Civil Procedure 12, for an order dismissing that certain *Complaint to Determine Non-Dischargeability of Debt Under Bankruptcy Code Section 523* (the "Complaint"), filed by Barry Beitler ("Beitler"), commencing Adversary Proceeding No. 8:17-ap-01092 ("Adversary 92").[1]

The claims for relief in the Complaint are grounded in 11 U.S.C. §§ 523(a)(2)(A), (4) and (6). For the reasons set forth herein, such claims for relief are subject to dismissal with prejudice on the grounds, inter alia, that the underlying damage claims barred on the merits, and Beitler cannot satisfy the elements of the above statutory sections.

This Motion is based on the attached Memorandum of Points and Authorities and Declaration of John Jean Bral (the "Bral Declaration"), and the concurrently filed Compendium of Exhibits (the "COE") and Declaration of Lori Gauthier (the "Gauthier Decl.").

---

[1] There are three non-dischargeability proceedings pending against the Debtor that have been commenced by Beitler or Beitler-controlled entities: (1) *Barry Beitler v. John Jean Bral*, Adversary Proceeding No. 8:17-ap-01092 ("Adversary 92"); *Beitler & Associates, Inc. dba Beitler Commercial Realty Services v. John Jean Bral*, Adversary Proceeding No. 8:17-ap-01094 ("Adversary 94"); and *Steward Financial LLC v. John Jean Bral*, Adversary Proceeding No. 8:17-ap-01095 ("Adversary 95") (collectively, the "Adversary Proceedings"). Concurrently herewith, the Debtor has filed motions to dismiss each of the Adversary Proceedings.

**WHEREFORE**, the Debtor requests that the Court enter an Order (i) dismissing the Complaint in its entirety; and (ii) for such other and further relief as may be just and proper under the circumstances of this case.

Respectfully submitted,

Dated: November 9, 2017

LOBEL WEILAND GOLDEN FRIEDMAN LLP

By: */s/ William N. Lobel*
WILLIAM N. LOBEL
ALAN J. FRIEDMAN
BETH E. GASCHEN
Attorneys for Defendant and Debtor and Debtor-in-Possession
John Jean Bral

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

## I. PRELIMINARY STATEMENT

By the Complaint, Beitler asserts that the Debtor utilized his positions in, and his alleged control over, special purpose entities owned by Beitler and the Debtor (defined herein as the "SPEs" and, in certain contexts, the "LLCs") to enrich himself at the expense of Beitler (and his controlled entities). In this regard, Beitler asserts that the Debtor (a) did not properly account for Beitler's capital contributions and deprived Beitler of the additional membership interests, benefits and distributions that he was allegedly entitled to on account of these capital contributions, and (b) wrongly diverted payments from the SPEs to himself and to entities that the Debtor owned in the form of commissions and management fees. Based on these allegations, Beitler asserts an entitlement to damages against the Debtor in the amount of at least $1.5 million,[2] and asserts that such claims should be held non-dischargeable under Sections 523(a)(2)(A), (4) and (6) of the Bankruptcy Code. As set forth herein, Beitler's damage claims against the Debtor are barred as a matter of law[3] and he cannot satisfy the requisite elements for relief under the above sections of the bankruptcy code. Accordingly, the Complaint should be dismissed, with prejudice, in its entirety.[4]

---

[2] The Complaint also asserts damages in the amount of $1 million and $1.2 million.

[3] The Debtor disputes Beitler's allegations in the Complaint on the merits, but even assuming for the purposes of this Motion that such allegations are taken as true, for the reasons set forth herein, such claims are barred as a matter of law and subject to dismissal under FRCP 12(b)(6).

[4] On June 16, 2017, Beitler filed proofs of claim ("Claim No. 11" and "Claim No. 14") which mirror the claims asserted by Beitler in the instant Complaint (Adversary No. 92). On October 13, 2017, the Debtor filed objections to Claim No. 11 and Claim No. 14, raising substantially the same legal defects as to the underlying claims as those raised by this Motion (as well as objecting to the merits of the claims). [Main Case Dkt. No. 153 and 161]. True and correct copies of Claim No. 11, Claim No. 14, and the Debtor's objections to Claim No. 11 and Claim No. 14, and the Debtor's declaration in support of the objections, are attached as Exhibits "A," "B," "C," "D" and "E," respectively, to the RJN. Claim No. 14 also substantially mirrors the allegations in Claim No. 16 filed by Beitler's sister, Betsy Boyd (the holder of a 5% membership interest in one of the SPEs, Westcliff (as defined herein)) (the Debtor has also filed an objection to Claim No. 16 filed by Ms. Boyd). [Main Case Dkt. No. 155].

(Continued...)

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

## II. SUMMARY OF MATERIAL FACTS

### A. The SPEs

Prior to 2007, Beitler and the Debtor formed a series of limited liability companies to acquire and manage commercial real estate projects in Southern California. (Bral Declaration, ¶ 2; Complaint, ¶¶ 4, 5, 11 and 16).

These limited liability companies include Westcliff Investors, LLC ("Westcliff"), Mission Medical Investors, LLC ("Mission"), Ocean View Medical Investors, LLC ("Ocean View") and Harbor Medical Investors, LLC ("Harbor"). (Bral Declaration, ¶ 2; Complaint, ¶¶ 5, 11 and 16). The Operating Agreements of Westcliff, Mission, Ocean View and Harbor designated Beitler and the Debtor as the co-managers of these entities. (COE, Exhibits "1" through "4") (*see also* Complaint, ¶ 9 (as to Mission), ¶ 13 (as to Westcliff) and ¶ 18 (as to Mission and Westcliff)).

---

(...Continued)

In addition, on June 16, 2017, Beitler & Associates, Inc., dba Beitler Commercial Realty Services ("BCRS"), an entity wholly-owned by Beitler, filed a proof of claim ("Claim No. 9"), asserting substantially the same claims (with the exception of one claim for relief and asserting damages in the lower amount of $300,000) as asserted by Beitler in Claim No. 11 and in this Adversary No. 92. The issues raised by Claim No. 9 mirror the claims asserted by BCRS in Adversary No. 94. On October 13, 2017, the Debtor filed an objection to Claim No. 9. [Main Case Dkt. No. 151]. Concurrently herewith, the Debtor has filed a motion to dismiss Adversary No. 94. Such claims by BCRS fail for the reasons set forth in the Debtor's concurrently filed motion to dismiss Adversary No. 94, which is incorporated by this reference as though fully set forth herein.

The instant Complaint (Section D, ¶¶ 39-46) also contains a section asserting that Steward Financial LLC ("Steward") (an entity owned by Beitler) is entitled to a damage claim against the Debtor in the amount of at least $1.1 million – reflecting the differential between Steward's first and second credit bids that it made in connection with its acquisition of real property previously owned by one of the SPEs, Ocean View (as defined herein). These allegations form the basis for *Steward's* claims against the Debtor (in Adversary No. 95 and in Proof of Claim No. 19 filed by Steward on June 16, 2017 ("Claim No. 19")). On October 13, 2017, the Debtor filed an objection to Claim No. 19. [Main Case Dkt. No. 157]. Concurrently herewith, the Debtor has filed a motion to dismiss Adversary No. 95. To the extent the "factual background" related to the Steward claim set forth in the Complaint filed by Beitler in this Adversary No. 92 purports to assert a damage claim *by Beitler* against the Debtor, such claim fails on standing grounds and further fails for the reasons set forth in the Debtor's concurrently filed motion to dismiss Steward's Adversary No. 95, which is incorporated by this reference as though fully set forth herein.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

The Debtor also formed Javaher Investors, LLC ("Javaher") and Eyestreet Medical Investors, LLC ("Eyestreet"), which were entities that also owned and managed commercial real estate projects. (Bral Declaration, ¶ 3). The Debtor is the co-manager of Javaher. (Id.) The Debtor does not own an interest in Javaher, but Westcliff is a member. (Id.) The Debtor is the co-manager of Eyestreet and owns a small membership interest in this entity. (Id.) Contrary to the allegations in the Complaint (¶ 16), Beitler did not hold an interest in either Javaher or Eyestreet and is not a manager of either entity. (Id.)

Westcliff, Mission, Ocean View, Harbor, Javaher and Eyestreet are collectively referred to as the "SPEs" herein (and Westcliff and Mission, together, are referred to as the "LLCs"). True and correct copies of the Operating Agreements that govern the affairs of the SPEs are attached to the COE as Exhibits "1" through "6," as follows:

a. Exhibit "1" – Westcliff Operating Agreement;

b. Exhibit "2" – Mission Operating Agreement;

c. Exhibit "3" – Ocean View Operating Agreement;

d. Exhibit "4" – Harbor Operating Agreement;

e. Exhibit "5" – Javaher Agreement; and

f. Exhibit "6" – Eyestreet Operating Agreement.

Pursuant to their respective Operating Agreements, and as discussed in further detail below, the co-managers of Westcliff, Mission, Ocean View and Harbor – Beitler and the Debtor – were jointly responsible for managing the affairs of these entities, and jointly responsible for supervising the retention and maintenance of their books and records during their terms as co-managers. (Bral Declaration, ¶ 6; COE, Exhibits "1" through "4"). The Debtor was responsible for performing these duties for Javaher and Eyestreet. (Bral Declaration, ¶ 6; COE Exhibits "5" and "6"). The books and records of the SPEs were kept in the ordinary course of business on the "QuickBooks" software program, in a consistent and business-like manner. (Bral Declaration, ¶ 7).

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

**B. Westcliff and Mission and Beitler's Contract, Member Benefit and Breach Claims**[5]

In 2003, the Debtor and Beitler formed Westcliff and Mission (the "LLCs"). Westcliff's Operating Agreement (the "Westcliff OPA") (COE, Exhibit "1") is dated February 20, 2003 and Mission's Operating Agreement (the "Mission OPA") (COE, Exhibit "2") is dated June 10, 2004. Both Operating Agreements of the LLCs were signed by Beitler and the Debtor. (Id.)

The Westcliff OPA and the Mission OPA vest all managerial control in Beitler and the Debtor, as co-managers, and designate the two men as these entities' tax matters partners. (Bral Declaration, ¶ 10; COE, Exhibits "1" and "2").

After the LLCs were formed, Beitler set up the "Quickbooks" based accounting system that is still used by the LLCs today (Bral Declaration, ¶ 10) and, for approximately ten years, Beitler's personal accountant, Robert Sargent, prepared the LLCs' tax returns and investor K-1s accurately reflecting the ownership interests of the members. (Bral Declaration, ¶ 11-13; COE, Exhibit "8"). At no point in time during this period or thereafter did Beitler contend that the membership percentage listed in the tax returns and/or in his individual K-1 (prepared by his own accountant) was inaccurate. (Bral Declaration, ¶ 14). Moreover, unless Beitler has been operating as a tax scofflaw for the past decade, he has filed at least ten personal tax returns wherein he attested under penalty of perjury to the accuracy of the percentage he is now contesting by way of the Complaint.

Notwithstanding, by the Complaint, Beitler alleges that the Westcliff and Mission OPAs fail to accurately reflect his ownership interests, fail to give him credit for the contributions he made to these entities, and that funds have been diverted from the LLCs

---

[5] With the exception of the allegations related to the payment of management fees and leasing commissions by the SPEs (discussed below), the specific allegations in the Complaint related to the membership contribution and benefit issues relate solely to Mission and Westcliff. There are no specifics addressed as to the "other SPEs" with respect to such membership contribution and benefit issues and, thus, the discussion of these issues is limited to Mission and Westcliff.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

to his detriment. According to the allegations in the Complaint, the Debtor is responsible for these purported drafting and adjustment errors and alleged diversion of funds.

The Debtor disputes these contentions.[6] However, as discussed herein, the merits of these allegations are irrelevant, since the claims fail as a matter of law, for, *inter alia*, the following reasons. First, these claims are barred by the statute of limitations. Second, the allegations made in the Complaint are barred by the parol evidence rule. Third, such claims have been waived. Fourth, Beitler is estopped from making such claims.

**1. Beitler's Claims Related to the LLCs**

Beitler's Mission and Westcliff-related claims asserted by way of the Complaint can be placed into three categories. The first category of claims is premised upon the contention that the Mission and Westcliff OPAs fail to accurately reflect the agreement of the parties (the "Contract Claims"), and that these inaccuracies are attributable to the Debtor's supposedly fraudulent conduct.

With respect to the Mission-related Contract claims, the first of these alleged errors is the listing of Beitler's Class A membership interest, which appears as follows in the Mission OPA:

| Member | Address | Capital Percentage | Capital Contributed |
|---|---|---|---|
| Barry Beitler and John Bral Split 50/50 | 825 South Barrington Ave. Los Angeles, CA 90049 | 61.40% | $1,950,000.00 |

According to Beitler, this entry is in error as it purportedly fails to reflect Beitler's initial, adjusted or equalized capital contributions with respect to Mission.

With regard to the Westcliff-centric Contract Claims, Beitler alleges that Exhibit A to the Westcliff OPA is incomplete. Although it lists each member's ownership percentage, it

[6] Beitler is a sophisticated businessman. His *ex post facto* claims of lack of involvement, knowledge and/or understanding with respect to the LLCs and basic financial matters related thereto strain credulity.

does not list the member's capital contribution. This omission, accordingly to Beitler, is somehow the Debtor's fault.

With respect to the Contract Claims, the Complaint sets forth as follows:

> Beitler is informed and believes, and based on such information and belief, thereon alleges that Bral, among other things, (a) did not property account for Beitler's capital contributions to Mission and Westcliff, (b) did not properly account for Beitler's additional capital contributions to Mission and Westcliff, ... (d) conflated the Capital Membership in Mission to attribute Beitler's excess initial capital contribution in Mission relative to Bral's initial capital contribution in Mission so that Bral would maintain an equal Capital Membership in Mission relative to Beitler, ... and (f) manipulated the books and records of Mission and Westcliff (including the other SPEs) to not properly document and disclose capital contributions and percentage of Capital Membership, resulting in an increased Capital Membeship [*sic*] to which Bral was not entitled for his own benefit.

(Complaint, ¶ 21).

The second category contains the member benefit claims (the "Member Benefit Claims"). The claims in this category are also premised upon the contention that the LLCs, or more specifically, the Debtor as the LLCs' co-manager, failed to properly account for the capital contributions that Beitler made to these entities. This failure, according to Beitler, deprived him of the distribution and voting rights that he should have received based upon his greater level of contributions. In this regard, the Complaint sets forth as follows:

> Beitler is informed and believes, and based on such information and belief, thereon alleges that Bral, among other things, ... (c) did not accord Beitler the full compliment [*sic*] of Benefits entitled to Beitler under the operating agreements of Westcliff and Mission ....

(Complaint, ¶ 21).

The third category of claims are the breach of contract claims (the "Breach Claims") wherein Beitler alleges that the Debtor diverted money from Mission and Westcliff (and

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

the other SPEs) to entities under his control, such as VREG and BRAI (as such terms are defined below).[7] In this regard, the Complaint sets forth as follows:

> Beitler is informed and believes, and based on such information and belief, thereon alleges that Bral, among other things, ... (e) diverted payments from the SPEs, including Mission and Westcliff, to Bral and Bral Affiliates (defined in Paragraph 30 [*sic*] *infra*)[8] for the payment of commissions for real estate brokerage services and property management services ....

(Complaint, ¶ 21).

As discussed in detail hereinbelow, these claims are untenable even assuming the truth of the allegations in the Complaint.

### C. <u>The Management Entities and Beitler's Claims Regarding the Payment of Management Fees and Commissions</u>

Following their formation, the SPEs required management services and brokerage services, such as leasing and lease renewal. (Bral Declaration, ¶ 15). In 2006, the Debtor formed Venture RE Group, a California corporation ("<u>VREG</u>"), to perform these services. (Bral Declaration, ¶ 16). As evidenced by the K-1s issued to Beitler from VREG, VREG is owned 50% by the Debtor and 50% by Beitler. (Bral Declaration, ¶ 16; COE, Exhibit "7").

In October 2013, the Debtor formed Bral Realty Advisors, Inc., a California corporation ("<u>BRAI</u>"). (Bral Declaration, ¶ 17). Beitler & Associates is a California corporation owned by Beitler that operated under the dba Beitler Commercial Real Estate Services ("<u>BCRS</u>"). (Complaint, ¶ 22).

---

[7] It is not clear from the Complaint whether the funds at issue were corporate funds, in which case the claim would be held by the SPE, or whether the allegation is that the Debtor simply failed to give Beitler his alleged "share" of the payments. To the extent such claims belong to the SPE, the assertion of such claims by Beitler fails as a matter of law as he has no standing with respect to such claims.

[8] "Bral Affiliates" are defined in Paragraph 27 of the Complaint as VREG and/or BRAI.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

The Mission, Ocean View, Harbor and Javaher Operating Agreements state that BCRS is entitled to receive commissions for sales and leasing work performed for these entities. (COE, Exhibits "2," through "5;" Complaint, ¶ 22). The Westcliff Operating Agreement states that Beitler/BCRS and the Debtor will split sales and leasing commissions. (COE, Exhibit "1;" Complaint, ¶ 23). The Eyestreet Operating Agreement states that VREG will receive sales and leasing commissions. (COE, Exhibit "6," Complaint, ¶ 34).

In the Complaint (¶¶ 22-37), Beitler alleges that, with the exception of Eyestreet, there was no provision for VREG to be paid sale and leasing commissions in connection with the SPEs and, therefore, any such payments were in contravention of the terms of the Operating Agreements. Beitler further alleges in the Complaint that VREG's role as property manager was never approved as required by the Operating Agreements.

The foregoing allegations are not only false, they contradict admissions in the Complaint itself (see Complaint, ¶ 18),[9] and representations made in other court filings, such as Proof of Claim No. 11. (Gauthier Decl., Exhibit "A"). In the latter filing, which was made under the penalty of perjury, Beitler expressly acknowledges VREG's authorized role as the entity providing management and leasing services to the SPEs. Indeed, in the latter filing, BCRS states that Beitler and the Debtor entered into the following oral agreements[10] relating to the management of the SPEs' business:

---

[9] In paragraph 18 of the Complaint, Beitler states that the Debtor, either individually or through VREG and BRAI, managed and controlled the operations of the SPEs.

[10] The Debtor disputes these allegations as to the allocation and repayment of the fees and commissions, but even taking such allegations as true, as discussed herein, the underlying claims would still fail.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

A. Beitler and the Debtor agreed that Beitler would own fifty percent of VREG (the "Initial VREG Agreement");[11]

B. VREG would provide management services to the SPEs and the revenues from these services would be split equally between Beitler and the Debtor (the "VREG Management Agreement");

C. Beitler would place his real estate license with VREG to enable VREG to provide leasing services to the SPEs, and Beitler and the Debtor would then split the commissions equally (the "VREG Broker Agreement"); and

D. Beitler would allow the Debtor to take Beitler's share of the VREG's revenues for a period of time and then the Debtor would repay these deferred fees (the "VREG Deferral Agreement") (collectively, the "VREG Agreements").

According to Claim No. 11, Beitler asserts that the Debtor breached the Initial VREG Agreement by issuing one hundred percent of VREG's stock to himself, and he breached the VREG Management Agreement, the VREG Broker Agreement and the VREG Deferral Agreement by either appropriating or failing to repay Beitler's share of the management fees and commissions to him. To the extent that the Complaint asserts that that VREG was not authorized to receive commissions from the SPEs, this assertion is barred by the contrary statements in Claim No. 11.[12]

As discussed in further detail hereinbelow, even if the contrary allegations in Claim No. 11 are ignored, the allegations made in the Complaint are too vague, ambiguous and contradictory to state a viable claim for relief. In addition, Beitler has failed to demonstrate

[11] Beitler has asserted that, contrary to this oral agreement, the Debtor owned (or claimed ownership of) 100% of VREG. This is not the case and, in fact, Beitler received a 50% ownership interest of VREG as indicated in Exhibit "7" to the COE.

[12] In fact, in light of the fundamentally contrary allegations made by Beitler in this regard, the continued prosecution of the Complaint, as filed, should be denied as violative of Bankruptcy Rule 9011.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

that he has standing to bring the claims, and the claims are barred by the statute of limitations and by the doctrine of laches.

## III. THE BURDEN OF PROOF UNDER F.R.C.P. 12(B)(6)

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1968-69 (2007), the Supreme Court clarified the standard that should be applied in assessing the merits of a complaint that is challenged by a motion filed under Federal Rule of Civil Procedure 12(b)(6):

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain*, 478 U. S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). **Factual allegations must be enough to raise a right to relief above the speculative level**, *see* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")
>
> ...
>
> [W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "'**this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court**.'" 5 Wright & Miller Â§ 1216, at 233-234 . . . *see also Dura, supra*, at 346; *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc.*, 289 F. Supp. 2d 986, 995 (ND Ill. 2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").

Twombly, 127 S.Ct. at 1968-69 (emphasis added). *See also,* Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) ("Although we are obliged to presume that all factual allegations in appellants' complaint are true, ... we do not "have to accept every allegation in the complaint as true in considering its sufficiency; rather, ... [we] will examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff."); Benson v. Arizona State Bd. of Dental Examiners, 673 F.2d 272, 275-76 (9th Cir. 1982) (court need not accept conclusory legal assertions); Informix Software, Inc. v. Oracle Corp., 927 F.Supp. 1283, 1285 (N.D. Cal. 1996) ("Conclusory allegations, unsupported by the facts alleged, need not be accepted as true."); Aulson v. Blanchard, 83 F.3d 1, 3 (1st

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Cir. 1996) ("The court is not obliged to accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like."); 4 Wright & Miller, Federal Practice and Procedure § 1357 ("However, the court will not accept conclusory allegations concerning the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened, or if these allegations are contradicted by the description itself.").

**A. Beitler's Contract, Member Benefit and Breach Claims Are Barred by the Statute of Limitations, the Parol Evidence Rule and the Doctrines of Waiver and Estoppel**

In this case, even assuming the truth of the factual allegations in the Complaint as to the Contract, Member Benefit and Breach Claims, the relief sought by Beitler is unavailing as such allegations do not establish an underlying claim against the Debtor. Indeed, such claims are barred by the statute of limitations, the parol evidence rule and the doctrines of waiver and estoppel.

The Mission OPA was executed in 2004 and the Westcliff OPA was executed in 2003. Beitler's attempt to attack the content of these writings via the Contract Claims is barred by the statute of limitations. *See* Lennar Mare Island, LLC v. Steadfast Ins. Co., 139 F. Supp. 3d 1141, 1165 (E.D. Cal. 2015) ("The statute of limitations for a reformation claim is three years. Cal. Civ. Proc. Code § 338(d)"); N. Star Reins. Corp. v. Super. Ct., 10 Cal. App. 4th 1815, 1818, 13 Cal. Rptr. 2d 775 (1992); Saterbak v. Nat'l Default Servicing Corp., 2016 WL 4430922, at 8 (S.D. Cal. Aug. 22, 2016) (Four-year statute of limitations in Section 343 of the California Code of Civil Procedure requires applies to actions to set aside or avoid a contract); Zakaessian v. Zakaessian, 70 Cal. App. 2d 721, 725 (1945).

To the extent that Beitler contends that he should be accorded relief under the "date of discovery" exception to these statutes, this argument fails. Beitler signed both of the LLCs' Operating Agreements, his accountant prepared the corporate tax returns for the LLCs for almost ten years, he has received annual K-1 forms listing his membership interest for over ten years, and he presumably filed those K-1s with his personal return

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

and thereby attested to their accuracy under the penalty of perjury. In sum, Beitler has known exactly what was provided for in both of the Operating Agreements for the LLCs for more than ten years. He cannot seek to change a word in these documents at this late date. Such action is barred by the statute of limitations.

Beitler's assertion in the Complaint (¶ 57) that a series of early versions of the Mission OPA may contradict the content of the executed Mission OPA is irrelevant and precluded by California's parol evidence rule. Cal. Code. Civ. Proc. § 1856(a) ("Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms included therein may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement."). "Thus, if there has been a legally effective act ... the exclusionary aspect of the parol evidence rule comes into operation where the parties have adopted a writing or writings as a final and complete expression of their understanding." 2 Witkin, Cal. Evidence (5th Ed. 2012), Documentary Evidence, § 66, p. 207; Burch v. Premier Homes, LLC, 199 Cal. App.4th 730, 742, 131 Cal. Rptr. 3d 855 (2011).

Beitler's Member Benefit Claims are also barred by the statutes of limitations discussed above, at least as to contributions that were made and not accounted for before 2013. Likewise, the date of discovery rule is of no assistance to Beitler for the reasons stated above. If, as Beitler alleges, he made a capital contribution and did not see an adjustment in his K-1 membership percentage at the end of the year, then he was bound to take action. His failure to do so within the statute of limitations period is fatal to the claims asserted in the Complaint.

Beitler has also waived the Contract Claims and the Member Benefit Claims. As indicated in the Bral Declaration, Beitler set up the LLCs' accounting system and his personal accountant prepared the LLCs' tax returns for almost ten years. In each of these years, the LLCs filed tax returns, and K-1s were issued to their members reflecting the membership percentages that Beitler is now belatedly contending are in error. Beitler never objected to these filings and in fact received and filed his own K-1 each year without

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

objection. This course of conduct effectuated a knowing waiver of his right to contest the information listed in these returns and consequently in the Operating Agreements. *See generally* Kay v. Kay, 188 Cal. App. 2d 214, 218, 10 Cal. Rptr. 196, 198 (1961); Outboard Marine Corp. v. Super. Ct., 52 Cal. App. 3d 30, 41, 124 Cal. Rptr. 852 (1975) ("Waiver is the voluntary relinquishment of a known right.").

Beitler's Member Benefit Claims also ignore the proverbial "elephant in the room" – Beitler has been a co-equal manager of the LLCs along with the Debtor since the formation of the LLCs. If the Form 1065s and K-1s filed by the LLCs each year for over ten years were in error, a conclusion that is mandated if one accepts Beitler's Member Benefit Claims, then Beitler is attempting to breach a promise that he made to the other members. He promised, through those tax filings – filings that he had co-equal responsibility for – that the facts therein were true and hence they could rely upon the K-1s when they filed their own returns. Beitler cannot now contend that these promises were false. *See generally* Youngman v. Nevada Irrigation, 70 Cal. 2d 240, 249, 74 Cal. Rptr. 398, 449 P.2d 462 (1969); Khan v. CitiMortgage, Inc., 975 F. Supp. 2d 1127, 1137–38 (E.D. Cal. 2013) ("Promissory estoppel elements are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.").

In addition, Beitler's Breach of Contract claims are not assertable by him. To the extent that the allegedly diverted funds were the funds of the LLCs, claims as to such diverted funds (to the extent such claims existed), would belong to the LLCs, not to Beitler. *See* Vinci v. Waste Management, Inc., 36 Cal.App.4th 1811, 1815 (1995) (remedy for corporate claim lies with the corporation, not the shareholder). To the extent Beitler is contending that the Debtor deprived him of his share of funds that were properly payable to him, where is the contract? It is not attached to the Complaint. To the extent that the contract is oral, Beitler must prove its existence and terms, and prove that funds were taken in violation thereof within the applicable 2 year statute of limitations. Therefore, if

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

this alleged diversion occurred more than two years ago, it would be barred. Cal. Code. Civ. Proc. § 339. Additional grounds for the denial of the Breach of Contract Claims (*i.e.*, those related to the payment of management fees and commissions) are detailed below.

**B. Beitler's Claims Based on the Payment of Management Fees and Commissions are Barred by a Lack of Standing, the Statute of Limitations and the Doctrine of Laches**

Moreover, even assuming that such claims were properly assertable by Beitler (which, as discussed above, they are not), and further assuming the truth of the factual allegations in the Complaint (and/or Claim No. 11)[13] as to the payment of management fees and commissions, such claims do not establish an underlying claim against the Debtor. Indeed, such claims are also barred by a lack of standing, the statute of limitations and the doctrine of laches.

**1. Beitler's Claims Based on Management Fees and Commissions Do Not Satisfy the Standing Requirement**

In the Complaint, Beitler acknowledges that BCRS was the party entitled to receive the commissions under the terms of the Mission, Ocean View, Harbor and Javaher Operating Agreements. To the extent that the Debtor somehow deprived BCRS of these payments (which the Debtor disputes), then BCRS – not Beitler – holds those claims.[14] Since neither Beitler nor BCRS have alleged joint ownership of either claim, however, one of these parties is asserting a claim it does not hold. This gives rise to a fatal standing

---

[13] The Debtor also addresses herein the allegations as to these matters as set forth in Claim No. 11. While the Debtor disagrees with the description of the terms of the oral agreement as set forth by Beitler in Claim No. 11, and believes that all payments were duly authorized and paid in the normal course (as evidenced by the Debtor's declaration filed in support of the objection to Claim No. 11; Gauthier Decl. as Exhibit "E"), such statements in Claim No. 11 constitute admissions by Beitler as to the existence of an agreement as to VREG's management of the SPEs. Therefore, the Debtor will address such issues in this Motion in light of Beitler's statements in Claim No. 11, in addition to Beitler's contrary assertion in the Complaint that the terms of the Operating Agreements govern and VREG never served in an authorized management capacity.

[14] The Debtor disputes any liability to BCRS on this account. The Debtor has filed an objection to BCRS' Claim No. 9 and a motion to dismiss BCRS' Adversary No. 95.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

defect. *See* Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 474-75, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (holding that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). To the extent that Beitler and BCRS have a rational basis for allocating ownership of the damages alleged in these claims, it has not been set forth in either Adversary No. 92 (Beitler) or Adversary No. 94 (BCRS), which justifies the dismissal of both claims. *See* In re Campbell, 336 B.R. 430, 436 (B.A.P. 9th Cir. 2005).

**C. Any Claim Based on the Operating Agreements Would Be Barred by the Statute of Limitations**

In the Complaint, Beitler asserts that the payments to VREG (and/or BRAI)[15] were in violation of the terms of the Operating Agreements of the SPEs and unauthorized. As indicated above, these allegations are contrary to the statements that Beitler made under the penalty of perjury in Claim No. 11. In the latter filing, Beitler acknowledged and/or asserted the existence of oral agreements authorizing the payment of fees and commissions to VREG (*i.e.*, the Initial VREG Agreement, the Management Agreement, the Broker Agreement and the Deferral Agreement).[16]

In any event, any such claims – even if based on the written Operating Agreements (which they are not, as evidenced by Beitler's admissions that such terms were changed by his verbal approval and consent) – would be barred by the statute of limitations. The Mission OPA was executed in 2004 and the Westcliff OPA was executed in 2003. The other SPEs (and VREG) were all formed prior to 2007.[17] Any attempt to attack the payments by the SPEs to VREG at this point in time as being barred by the express terms

[15] VREG was formed in 2006. BRAI was formed in October 2013.

[16] These oral agreements are discussed below.

[17] Mission and Westcliff were formed in 2003. Javaher was formed in 2005. Ocean View, Harbor and Eyestreet were formed in 2006. VREG was also formed in 2006.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

of the Operating Agreements would be prohibited by the statute of limitations (which, as discussed above in connection with the capital contribution issues, provide for such claims to be asserted within 3 or 4 years). *See e.g.,* Lennar Mare Island, LLC v. Steadfast Ins. Co., 139 F. Supp. 3d at 1165; N. Star Reins. Corp. v. Super. Ct., 10 Cal. App. 4th at 1818; Saterbak v. Nat'l Default Servicing Corp., 2016 WL 4430922, at *8; Zakaessian v. Zakaessian, 70 Cal. App. 2d at 725. Any claim based on such written agreements would, therefore, be barred by the statute of limitations.

**D. Any Claim Based on the Initial VREG Agreement is Untenable and Would in Any Event Be Barred by the Statutes of Limitations**

Notwithstanding the claims in the Complaint, as set forth above, in Claim No. 11, Beitler admits that the issues with respect to the payment of management fees and commissions are not, in fact, governed by the express terms of the Operating Agreements – but are governed by the Initial VREG Agreement, the VREG Management Agreement, the VREG Broker Agreement and the VREG Deferral Agreement.[18]

As a preliminary matter, Beitler asserts that the Debtor breached the Initial VREG Agreement by failing to issue him a fifty percent (50%) ownership interest in VREG. As established by Exhibit "7" to the COE, however, such ownership interest was issued to, and is held by, Beitler. Such a "breach" therefore, does not exist.

Even assuming that this allegation was supportable, however, the Initial VREG Agreement was, at best, an oral contract. Even assuming for arguments' sake that the Debtor had breached this contract by failing to issue fifty percent of VREG's shares to Beitler (which the Debtor disputes as Beitler does own 50% of VREG), this breach would have occurred on May 10, 2006, the date VREG was formed, or shortly thereafter. This claim is now barred by the statute of limitations. Cal. Code Civ. Proc. § 339 (two-year

[18] The Debtor disputes Beitler's allegations as to the allocation and repayment of the fees and commissions under these oral agreements, but even taking such allegations as true, the underlying claims are still subject to dismissal as a matter of law.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

statute of limitations for claims based upon oral contracts). This claim would also be barred if it were based upon a writing. Cal. Code Civ. Proc. § 339 (four-year statute of limitations). To the extent that the foregoing breach is framed as a breach of fiduciary duty claim, it would still be time barred. Am. Master Lease LLC v. Idanta Partners, Ltd., 225 Cal. App. 4th 1451, 1479, 171 Cal. Rptr. 3d 548, 570 (2014), *as modified* (May 27, 2014) ("The statute of limitations for breach of fiduciary duty is three years or four years, depending on whether the breach is fraudulent or nonfraudulent."); Fuller v. First Franklin Financial Corp., 216 Cal.App.4th 955, 963, 163 Cal.Rptr.3d 44 (2013) ("[L]imitations period is three years ... for a cause of action for breach of fiduciary duty where the gravamen of the claim is deceit, rather than the catchall four-year limitations period that would otherwise apply"); William L. Lyon & Associates, Inc. v. Superior Court, 204 Cal.App.4th 1294, 1312, 139 Cal.Rptr.3d 670 (2012) ("Breach of fiduciary duty not amounting to fraud or constructive fraud is subject to the four-year 'catch-all statute' of Code of Civil Procedure section 343"). Any claim based on the Initial VREG Agreement therefore would be time barred.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

**E. Any Claim Based on the VREG Management Agreement, the VREG Brokers Agreement and/or the VREG Deferral Agreement is Barred by the Statutes of Limitations**

Beitler fails to specify in the Complaint (or Claim No. 11) what commissions or fees were not paid to him as allegedly agreed under the VREG Management, Brokers and Deferral Agreements or otherwise, or when even this breach supposedly occurred.[19] However, since all of the SPEs and VREG were formed before 2007, the statute of limitation would have run at least by the end of the first year during which these payments were not made, which was presumably 2007. Since the alleged VREG Management,

---

[19] For this reason alone, these claims are subject to dismissal under F.R.C.P. 12(b)(6) as they are so vague, ambiguous and unsupported by evidence that they fail to meet the standard of pleading required by Twombley and its progeny.

Brokers and Deferral Agreements were oral contracts, as discussed above, any claim thereunder is now barred by the two-year statute of limitations under Cal. Code Civ. Proc. § 339 (two-year statute of limitations). Likewise, as discussed above, to the extent the foregoing breach of contract claims were framed as breach of fiduciary duty claims, they would still be barred by the three or four-year statute of limitations applicable to such claims. Any claims under the VREG Management, Brokers and Deferral Agreements, therefore, are barred.

**F. Beitler's Claims are Barred by the Doctrine of Laches**

The defense of laches is derived from the maxim that "[t]he law helps the vigilant, before those who sleep on their rights." Cal. Civ. Code § 3527. Stated otherwise, "[e]quity frowns upon stale demands [and] declines to aid those who have slept on their rights." Latta v. Western Inv. Co., 173 F.2d 99, 107 (1949). A defendant must demonstrate three elements to successfully assert a laches defense: (1) delay in asserting a right or a claim; (2) the delay was not reasonable or excusable; and (3) the prejudice resulting from the delay. Magic Kitchen LLC v. Good Things Int'l Ltd., 153 Cal. App. 4th 1144, 1157, 63 Cal. Rptr. 3d 713, 723–24 (2007); Miller v. Glenn Miller Productions, Inc., 454 F.3d 975, 997 (9th Cir. 2006).

The first element of laches is delay, as measured by the period "from when the plaintiff knew (or should have known) of the allegedly infringing conduct, until the initiation of the lawsuit in which the defendant seeks to counterpose the laches defense." Magic Kitchen, 153 Cal. App. 4th 1144, 1157, *citing* Danjaq LLC v. Sony Corp., 263 F.3d 942, 952 (9th Cir. 2001). Since Beitler was the co-managing member of the SPEs (with the exception of Javaher and Eyestreet), and since his personal accountant prepared the tax returns for these entities for approximately 10 years, Beitler knew or should have known that commissions and management fees were being paid and whether or not he was receiving his appropriate share of these payments. Given this knowledge, the delay in this case was clearly not reasonable. Failing to file an action after one year might be "reasonable," but not after two or more years.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

The prejudice element is also satisfied. The Debtor was being paid for services that he, not Beitler performed, and he was being paid what he believed he was owed. Had Beitler raised his claim in a timely manner, the Debtor would have had the option of declining to perform the services for "half price" and instead could have allocated his resources to other more lucrative pursuits. (Bral Declaration, ¶ 18). He also would not be facing the substantial purported claim that Beitler is now asserting. On these facts, Beitler's claims should be deemed barred by the doctrine of laches.

In sum, the Complaint fails to state a claim for relief as each any every claim is barred as a matter of law. Because Beitler cannot establish an underlying claim against the Debtor, his claims of non-dischargeability made by way of the Complaint are unavailing, and the Complaint should be dismissed with prejudice.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

### G. **The Fiduciary Relationship Required For Relief Under 11 U.S.C. § 523(a)(4) Is Not Present On The Facts Alleged.**

Beitler's Second Claim for Relief is based upon 11 U.S.C. § 523(a)(4). The "fiduciary" relationship upon which this claim is grounded is set forth in paragraph 72 of the Complaint:

> 72. As manager of the SPEs with control of their funds, and as officer and director of Venture, Bral was acting in a fiduciary capacity with respect to the SPEs' funds and Venture's revenues, and owed BCRS fiduciary duties of loyalty and care, to account and disclose financial information, and duties of good faith and fair dealing, in dealing with the SPEs and their funds, as well as commissions and property management fees.

Beitler's contention that the Debtor owed Beitler a fiduciary duty under Section 523(a)(4) on account of his status as an officer of VREG, a California corporation, fails. A corporate officer is not deemed to be a fiduciary under Section 523(a)(4). In re Cantrell, 329 F.3d 1119, 1125 (9th Cir. 2003).

Beitler's contention that the Debtor owed him a fiduciary duty as the co-manager of the SPEs fails because it is clear from the Complaint and Claim No. 11 that the dispute between Beitler and the Debtor occurred within the confines of the Beitler/Debtor/VREG

relationship. It is at this corporate level that the commission split occurred, consensually between the parties, and as indicated above, the Debtor, as a corporate officer, is not deemed to be a fiduciary for the purpose of Section 523(a)(4). Accordingly, the second claim for relief in the Complaint fails.

## IV. CONCLUSION

For the reasons stated herein, the Debtor would respectfully submit the Complaint should be dismissed with prejudice.

Respectfully submitted,

Dated: November 9, 2017

LOBEL WEILAND GOLDEN FRIEDMAN LLP

By: */s/ William N. Lobel*
WILLIAM N. LOBEL
ALAN J. FRIEDMAN
BETH E. GASCHEN
Attorneys for Debtor and Debtor-in-Possession

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

## DECLARATION OF JOHN JEAN BRAL

I, John J. Bral, declare as follows:

1. I am the debtor and debtor-in-possession in the above-captioned case, and I am over the age of 18. The following is based upon my personal knowledge, except as otherwise noted, and if called as a witness herein, I could and would competently testify thereto. I make this declaration in support of the motion ("Motion") for an order dismissing that certain *Complaint to Determine Non-Dischargeability of Debt Under Bankruptcy Code Section 523* (the "Complaint"), filed by Barry Beitler ("Beitler"), commencing Adversary Proceeding No. 8:17-ap-01092 ("Adversary 92"), to which this declaration is attached. Any term not specifically defined herein shall have the meaning provided in the Motion.

**The SPEs**

2. Prior to 2007, Beitler and I formed a series of limited liability companies to acquire and manage commercial real estate projects in Southern California. These limited liability companies include Westcliff Investors, LLC ("Westcliff"), Mission Medical Investors, LLC ("Mission"), Ocean View Medical Investors, LLC ("Ocean View") and Harbor Medical Investors, LLC ("Harbor"). Pursuant to the Operating Agreements of Westcliff, Mission, Ocean View and Harbor, Beitler and I were designated as the co-managers of these entities.

3. I also formed Javaher Investors, LLC ("Javaher") and Eyestreet Medical Investors, LLC ("Eyestreet"), which were entities that also owned and managed commercial real estate projects. I am the co-manager of Javaher. I do not own an interest in Javaher, but Westcliff is a member. I am the co-manager of Eyestreet and own a small membership interest in this entity. Beitler did not hold an interest in either Javaher or Eyestreet and is not a manager of either entity.

4. Westcliff, Mission, Ocean View, Harbor, Javaher and Eyestreet are collectively referred to as the "SPEs" herein.

5. True and correct copies of the Operating Agreements that govern the affairs of the SPEs are attached to the Compendium of Exhibits filed concurrently herewith (the "COE") as Exhibits "1" through "6," as follows:[20]

a. Exhibit "1" – Westcliff Operating Agreement;

b. Exhibit "2" – Mission Operating Agreement;

c. Exhibit "3" – Ocean View Operating Agreement;

d. Exhibit "4" – Harbor Operating Agreement;

e. Exhibit "5" – Javaher Agreement; and

f. Exhibit "6" – Eyestreet Operating Agreement.

6. Pursuant to their respective Operating Agreements, the co-managers of Westcliff, Mission, Ocean View and Harbor – Beitler and I – were jointly responsible for managing the affairs of these entities, and jointly responsible for supervising the retention and maintenance of their books and records during our terms as co-managers. I was responsible for performing these duties for Javaher and Eyestreet.

7. The books and records of the SPEs were kept in the ordinary course of business on the "QuickBooks" software program, in a consistent and business-like manner.

**Westcliff and Mission**

**and Beitler's Contract, Member Benefit and Breach Claims**

8. In 2003, Beitler and I formed Westcliff and Mission (the "LLCs"). Westcliff's Operating Agreement (the "Westcliff OPA") (COE, Exhibit "1") is dated February 20, 2003 and Mission's Operating Agreement (the "Mission OPA") (COE, Exhibit "2") is dated June 10, 2004. Both Operating Agreements of the LLCs were signed by Beitler and me.

---

[20] Mission and Westcliff were formed in 2003. Javaher was formed in 2005. Ocean View, Harbor and Eyestreet were formed in 2006.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

9. The Westcliff OPA and the Mission OPA vest all managerial control in Beitler and me, as co-managers, and designate us as these entities' tax matters partners. (COE, Exhibits "1" and "2").

10. Beitler was initially responsible for setting up the "Quickbooks" based accounting system that is still used by the LLCs today.

11. For approximately ten years, Beitler's personal accountant, Robert Sargent, prepared the LLCs' tax returns and investor K-1s that were issued each year to the LLC members, including to Beitler and, in the case of Westcliff, to Beitler's sister, Betsy Boyd.

12. Attached as Exhibit "8" to the COE are true and correct copies of the K-1 Forms that were issued to Beitler for the 2011 through 2016 tax years by Westcliff (the "K-1s").

13. The K-1s accurately reflect the ownership interests in Westcliff that are owned by Beitler, and they accurately reflect the capital account for Beitler.

14. At no point in time did Beitler ever contact me and advise me that he considered these tax filings to be in error.

**The Management Entities and Beitler's Claims Regarding the Payment of Management Fees and Commissions**

15. After the formation of the SPEs, these entities required management services, and brokerage services such as leasing and lease renewal.

16. In 2006, I formed Venture RE Group, a California corporation ("VREG") which performed such services for the SPEs. Beitler owned a fifty percent (50%) interest in VREG. Attached as Exhibit "7" to the COE is a true and correct copy of a K-1 Form that was issued to Beitler confirming his interest in this corporation. He received a similar tax form every year, since VREG had made the "subchapter S" election under the Internal Revenue Code.

17. In October 8, 2013, I formed Bral Realty Advisors, Inc., a California corporation ("BRAI"), which performed management and brokerage services for the SPEs since January of 2014.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

18. With respect to the management fees and commissions being paid to me through VREG and/or BRAI, these amounts were paid for services that I – not Beitler – performed. The amounts paid were the amounts that I believed were owed pursuant to the applicable agreements. Had Beitler raised the claims he is asserting by way of the Complaint with respect to a disagreement as to these payments in a timely manner, I would have had the option of declining to perform the services for "half price" and instead could have allocated my resources to other more lucrative pursuits, and would have indeed done so.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of November 2017, in Orange County, California.

John Jean Bral

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
650 Town Center Drive, Suite 950, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*): **DEFENDANT JOHN JEAN BRAL'S MOTION FOR ORDER DISMISSING WITH PREJUDICE ALL CLAIMS FOR RELIEF ASSERTED BY PLAINTIFF BARRY BEITLER PURSUANT TO F.R.C.P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF JOHN JEAN BRAL IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On November 9, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) November 9, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) November 9, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

SERVED VIA PERSONAL DELIVERY/ATTORNEY SERVICE
The Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130/Courtesy Bin
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/9/2017 | Lori Gauthier | /s/ Lori Gauthier |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- **Beth Gaschen** bgaschen@wgllp.com, kadele@wgllp.com;lfisk@wgllp.com;lgauthier@lwgfllp.com;nlockwood@lwgfllp.com
- **Mark D Hurwitz** mhurwitz@lsl-la.com, dsmall@lsl-la.com
- **Gary E Klausner** gek@lnbyb.com
- **William N Lobel** wlobel@lwgfllp.com, nlockwood@lwgfllp.com;jokeefe@lwgfllp.com;banavim@wgllp.com
- **Krikor J Meshefejian** kjm@lnbrb.com
- **United States Trustee (SA)** ustpregion16.sa.ecf@usdoj.gov

**SERVED VIA FIRST-CLASS MAIL:**

Office of the United States Trustee
411 West Fourth Street, Suite 7160
Santa Ana, CA 92701